# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Surgret UraniaDoss**
Plaintiff, *Pro Se*

                              **CASE NO: 8:22cv129 CEH-AAS**
vs.                           **JURY TRIAL DEMANDED**

**GREGORY P. HOLDER**, As an Individual;
**MICHAEL R. VICTOR**, Individually and In His Official Capacity;
**PAT KENNEDY,** Individually and In His Official Capacity;
**JOHN WALTER MCDARBY**, Individually and His Official Capacity;
**JOHN DOES I-X**, individually and in their Official Capacities;
**THE CITY OF TAMPA**, a Municipal Corporation; AND
**SHERIFF CHAD CHRONISTER**, In his Official Capacity;
        Defendants.

## <u>PLAINTIFF'S THIRD AMENDED COMPLAINT</u>

Surgret UraniaDoss ("Doss"), *Pro Se*, files this Third Amended Complaint

and Demand for Jury Trial, suing the named parties of Defendant Gregory

P. Holder ("Holder"), Defendant Michael Victor ("Victor"), and Defendant

Pat Kennedy ("Kennedy"), Defendant John Walter McDarby ("McDarby"),

Defendant Chad Chronister as Sheriff of Hillsborough County ("Sheriff

Chronister"), Defendant The City of Tampa, and currently unknown

Defendants JOHN DOES I-X ("JDoes"), and Doss alleges the following in

support :

Doss is a Pro Se Litigant and prays this Court affords liberal construing of his complaint:

## INTRODUCTION

This action arises from a conspiracy by Defendants Holder, Victor, Kennedy, and McDarby to falsely arrest Doss without probable cause, have him falsely charged with felony perjury, maliciously prosecuted without probable cause, and confined to a Florida state prison while allowing undeserving parties to steal his properties. After acquiring properties from a bona fide purchaser of Home Owner Association properties, Doss discovered several discrepancies with the foreclosure processes in the 13th Judicial Circuit (The 13th).

Defendants Victor, McDarby, and Kennedy, operating under color of state law, independently, and absent probable cause, collaborated with Holder and concocted their scheme to perform a ruse investigation to justify a false perjury allegation against Doss. Ultimately, after wasting valuable taxpayer resources, Victor, bolstered by the approval of his immediate supervisor Kennedy, filed the falsified police report with the State Attorney's Office, and a warrant, without probable cause, was issued for Doss' arrest.

Doss brings state and federal claims against Holder, Victor, Kennedy, and McDarby for violating his well-established rights. The Defendants knowingly, willingly, and with malicious intent used their influence to falsely have an innocent man charged with felony perjury in an official proceeding.

Doss brings state and federal constitutional claims against Sheriff Chronister as the supervisory entity responsible for the conduct, training, and supervision of the Hillsborough County Sheriff's Office ("HCSO") Deputies under his charge, including McDarby. Sheriff Chronister failed to properly train McDarby and the currently unknown HCSO JDoes under his control in the appropriate methods, procedures, and protocols for investigating felony perjury claims. As a result, HCSO had policies, customs, or practices that constituted deliberate indifference to Doss' well-established federal constitutional rights, and those policies and customs deprived Doss of his rights under the Constitution and the laws of the State of Florida.

Doss brings federal constitutional claims against The City of Tampa ("Tampa") as the supervisory entity responsible for the conduct, training, and supervision of employees for the Tampa Police Department ("TPD")

and its Officers ("TPO"). Tampa is the municipal corporation that employed Victor, his immediate supervisor Kenndy and some of the currently unknown JDoe-TPOs who furthered the conspiracy against Doss. Additionally, each TPO, named or currently unnamed, in this Complaint participated as an agent or employee of Tampa when participating in the scheme ruse investigation and charging Doss without probable cause.

Under the doctrine of respondeat superior, Tampa assumes liability for all state torts committed by the TPD employees, including willfully assisting unknown parties with causing the civil theft of Doss' properties. Additionally, Tampa is responsible for the policies and practices of The TPD. Therefore, Tampa assumes liability for the violations of Doss' rights caused by the TPD's unconstitutional policies, customs, and patterns, including the actions of the named and currently unnamed TPD Defendants leading to the unsubstantiated claims against Doss. Accordingly, Doss sues each TPD employee individually unless otherwise noted.

Lastly, Tampa and the TPD supervisors failed to train TPD employees and TPOs in the appropriate methods properly, procedures, and protocols for investigating felony perjury claims. Tampa facilitated and

promulgated policies, customs, or practices that constituted deliberate indifference to Doss' constitutional rights. Furthermore, Tampa's policies, customs, and practices deprived Doss of his rights under the Constitution and the laws of the State of Florida, leading to a false perjury allegation, a malicious prosecution, and Doss unjustly losing his opportunity to defend his lawfully acquired properties.

## Preliminary Statements

1.     After legally acquiring properties and researching the court records in the 13th, Doss discovered several flaws with bank foreclosure cases, including that the foreclosure action for his property in Brandon came outside the statute of limitations and that attorneys from other firms substituted and made appearances without court orders permitting them.

2.     Furthermore, Doss learned that none of the courts in charge of the bank foreclosures affecting his acquired properties conducted evidentiary hearings and never addressed the discrepancies.

3.     Doss filed, and the Florida 2nd District Court of Appeals ("2nd DCA") granted a stay of the Writ of Possession ("WOP") for one of his houses.

4.   Shortly after the DCA stayed the WOP, Holder called Victor and formulated and executed a conspiracy to have Doss arrested on a false charge of perjury without probable cause.

5.   Utilizing Holder's influence, Victor recruited McDarby, Kennedy, and unknown JDoes I-X, and they all knowingly, willingly, and maliciously carried out the conspiracy to arrest Doss.

6.   On May 26, 2017, Victor filed a Criminal Report Affidavit ("CRA") falsely claiming that Doss perjured himself in an official proceeding and according to Florida Statute 837.02(1).

7.   When Victor filed the CRA, Doss had ongoing cases in this Court *(8:17-cv-00653-JDW-AEP)* and the 2nd DCA (2D17-0354).

8.   After discovering he had an active arrest warrant, Doss turned himself in at Orient Road Jail and began defending the false charges.

9.   Upon learning Holder was one of the state's witnesses against him and fearing he could not receive a fair trial, Doss filed several motions and disqualified nearly every 13th trial judge he appeared before, which caused several resettings of his arraignment date.

10. Eventually, Ronald Ficarrotta, the Chief Judge of the 13th, requested the Florida Supreme Court send an outside judge to preside over Doss' perjury case.

11. On January 16, 2018, nearly seven months after his arrest on a warrant without probable cause, that judge dismissed the perjury case against Doss.

12. Doss comes to this Honorable Court seeking relief under 42 U.S.C. § 1983 and §1985, the Constitution, and Florida state law, including compensatory damages, punitive damages, declaratory judgment, injunctive relief, and costs associated with bringing this action, up to and including attorney fees, if applicable.

## JURISDICTION AND VENUE

13. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343 as this action arises under the laws of the United States.

14. This Court has jurisdiction over federal questions arising from the United States Constitution, 42 U.S.C. §1983 (the Civil Rights Act of 1871 and the Civil Rights Act of 1964), and 42 U.S.C. §1985.

15. The Court has supplemental jurisdiction over Doss' state law claims pursuant to 28 U.S.C. §1367.

16. This Court has jurisdiction pursuant to 28 U.S.C. §1391 because the incidents leading to this action occurred within this district.

17. This Court has Personal jurisdiction over all parties because they all reside, committed the applicable torts, and all of the core facts took place in this Middle District of Florida.

18. All necessary prerequisites for bringing this action as outlined in Florida Statute §768.28 or other applicable laws were met or waived.

## THE PARTIES

19. At all times relevant to this complaint, Surgret Urania Doss was a United States citizen and a Hillsborough County, Florida, resident. Additionally, Doss is an Army veteran and African-American Man.

20. At all times relevant to this complaint, Gregory Holder was a Hillsborough County, Florida, resident. Holder knowingly and maliciously falsely alleged that Doss perjured himself and told the same to Victor. Accordingly, Doss sues Holder individually

21. Michael R. Victor and Pat Kennedy were TPD officers at all times relevant to this complaint. Both acted under color of state law and within the scope of their employment while in furtherance of a conspiracy against Doss and, at other times, operated individually. Based on belief, Victor and Kennedy were United States and Florida citizens. Accordingly, Doss sues Victor and Kennedy individually and officially.

22. At all times relevant to this complaint, John McDarby worked for Sheriff Chad Chronister as an HCSO Deputy. Based upon belief, McDarby was a citizen of the United States and Florida. Accordingly, Doss sues McDarby, individually and officially.

23. The identities of John Does I-X ("JDoes") are currently unknown and are fictitiously named defendants. However, information supports that JDoes helped further the conspiracy against Doss. Furthermore, based on information obtained from his lower court criminal case, Doss reasonably believes the JDoes are public officials or public officers, and discovery will reveal their names. Accordingly, Doss sues the JDoes individually and officially.

24. At all times material, The City of Tampa Police Department ("TPD") was the law enforcement agency for Defendant City of Tampa and the vehicle through which the City carries out its policing function. Under the doctrine of *respondent superior*, Tampa assumes liability for all state torts committed by its employees. Consequently, Tampa is responsible for the TPD's policies, customs, and practices that violate constitutional rights. Thus, Doss sues Tampa for its unconstitutional policies, customs, and practices under *Monell* and its progeny.

25. When the events leading to this action began, David Gee was the Sheriff and the final policymaker for HCSO. He appointed Defendant Sheriff Chronister to the position on September 30, 2017. Now, Sheriff Chronister is the elected constitutional officer responsible for HCSO employees. Accordingly, Doss sues Sheriff Chronister in his official capacity as the lead policy enforcer for Hillsborough County.

## COMMON FACTS AND BACKGROUND

26. In the course of its regular business activity, The Hillsborough County Clerk of Courts ("The Clerk") conducts Home Owner Associations ("HOA") and Bank foreclosures auctions via its website, and the public can bid on the auctioned properties.

27. In 2016, David Acevedo ("Acevedo"), after successfully bidding on four properties, paid The Clerk and received a Certificate of Sale and a Certificate of Title for each. **See Attachment, Exhibits 1 and 1-A.**

28. Acevedo bid on and purchased 517 Tuscanny St. ("Tuscanny"); 2534 Clareside Dr. ("Clareside"); 4336 Spinnaker Cove Lane ("Spinnaker"); and 12725 Bramfield Dr., Riverview ("Bramfield") ("The Properties").

29. After verifying the sales of each property, the Hillsborough County Property Appraiser ("The Appraiser") listed Acevedo as the owner in the public records.

30. In April 2016, Acevedo executed four Quit Claim Deeds ("Deeds"), transferring ownership of The Properties to Doss. **See attachment, Exhibit 2.**

31. The Appraiser's chain of custody for each of The Properties has Acevedo and Doss as successive owners. **See attachment Exhibits 3 and 3-A.**

32. After obtaining ownership of The Properties, Doss attempted intervention in the foreclosure actions associated with his houses.

33. In 2016, Doss made Spinnaker his residence; in February 2017, when he needed a replacement Identification card, the Department of

Motor Vehicles used the public records for address verification. **See attachment, Exhibit 4.**

**Albertelli Law Filed Tuscanny Foreclosure Outside of Florida's Statute of Limitations and Without an Evidentiary Hearing**

34. Albertelli Law ("ALBLAW") of Tampa filed the original Bank foreclosure complaint and Lis Pendens for lower court action 15-CA-8473 ("Case 8473") against DELFINO BARRIOS and other Defendants ("Delfino et al.") on behalf of DEUTSCHE BANK NTC, AS TRUSTEE O/B/O THE REGISTERED HOLDERS OF THE FIRST FRANKLIN MORT. LOAN TRUST SERIES 2006-FF1, MORT. P/T CERT., SERIES 2006-FF1 ("DBank").

35. ALBLAW claimed Delfino et al. owed $197,437.98 as of April 1, 2010, but filed the foreclosure on September 16, 2015.

36. Fla. Stat. § 95.11(2)(c) states foreclosure actions must begin within five years, and Fla. Stat. § 95.031(1) made April 1, 2010, the "starting clock date" for Case 8473. **See attachment, Exhibit 5.**

37. Florida courts hold that a foreclosure action is not time-barred where the plaintiff alleges and proves the existence of a continual default,

but there was no evidentiary hearing; thus, DBank never proved standing for Case 8473.

38. While presiding over the Tuscanny foreclosure, Judge Rex Barbas denied Doss's intervenor status, denying him the opportunity to defend his property and allowing cover for Tuscanny's theft.

**Doss Discovers Procedural Errors with Spinnaker's Bank Foreclosure**

39. On January 5, 2015, Kelly G. Sanchez, for Morris Schneider Wittstadt ("MSW"), filed case *15-CA-000071* ("Case 0071"), *The Bank of New York Mellon, as Trustees for CWALT Alt. Loan Trust 2005 v. Wior,* on behalf of Bank of New York Mellon. **See Attachment, Exhibit 6.**

40. By June 2016, Defendant Holder replaced Judge Mark Kiser and presided over Case 0071 until its conclusion, including falsely telling Victor that Doss perjured himself.

41. After researching The Clerk's docket and online sources, Doss learned MSW filed for Bankruptcy in July of 2015 after Nathan Hardwick embezzled roughly $30 million. See *U.S. Bankruptcy Court, Eastern District of Virginia (Richmond), Bankruptcy Petition 3:15-33370-KLP* ("MSWBK").

42. Additionally, Doss learned that Michael Wior ("MWior") filed for bankruptcy in the U.S. Bankruptcy Court, Middle District of Florida (*8:12-bk-10644-MGW*), as did Henry F. Wior and Darlene L. Wior ("The Wiors") *(8:13-bk-00153-MGW);* naming Bank of America ("BOA") as Spinnaker's creditor.

43. According to all filings, Rottlund Advantage, LLC ("Rottlund") was the original lender for Spinnaker. **See Attachment, Exhibit 6, pg. 8.**

44. Although Spinnaker's Title Chain never shows Rottlund transferring ownership to BNYM, it does show Wior, Acevedo, and Doss as successive owners. **See Attachment, Exhibit 6-A.**

45. When Doss filed an inquiry with the Consumer Financial Protection Bureau, he learned that BOA never loaned money to MWior or The Wiors and merely serviced Spinnaker's loan.

46. On February 2, 2015, Andrea Edwards Martin, Esq. ("AEM") filed a Motion for Substitution of Counsel, citing Florida rule 2.505(e)(2). And, Although Substitution of Counsel is an acceptable practice by rule, the language of Florida Rule of General Practice and Judicial Administration 2.505(f) states that an order of substitution or withdrawal of counsel must be entered prior to a change of counsel

when new counsel is not from the same law firm or company, or governmental agency as the replaced attorney.

47. AEM filed a notice of appearance for Busch White Norton, LLP ("BWN"), but the Case 0071 docket does not reflect an order allowing BWN to substitute for MSW. **See Attachment, Exhibit 7.**

48. On April 24, 2015, Attorney Bibin Mannattuparampil ("BM"), without an order permitting substitution as counsel, filed for Clerk's Default ("Default"), and on April 27, 2015, The Clerk granted it.

49. On July 8, 2015, BM filed a Notice of Designation of Lead Attorney per Florida Rule 2.516(b)(1)A without an order permitting counsel substitution.

50. Also, on July 8, 2015, Attorney Jonathan D. Peskin ("Peskin") filed an appearance on behalf of the Spinnaker HOA.

51. On October 28, 2015, Peskin demanded proof that BNYM's interest in Spinnaker was superior to the Spinnaker HOA; however, BNYM counsel never responded to Peskin's demand, and the lower court never conducted an evidentiary hearing on BNYM's legal interest.

52. On October 18, 2016, Gregory A. Wallach ("GAW") filed a notice of limited appearance on behalf of BNYM and ALDRIDGE PITE LLP ("APITE"), requesting a WOP.

53. On January 5, 2017, the lower court ordered a WOP without an order granting permission to proceed according to law. **See Attachment, Exhibit 8.**

54. After the MSW bankruptcy and withdrawal as counsel, every document filed by a BNYM attorney was without an order allowing substitution of counsel.

**Doss Files Motions To Intervene and
Deputies Post The First Writ of Possession for Spinnaker**

55. On January 6, 2017, Doss filed an Emergency Motion To Intervene in Case 0071, requesting relief and a hearing as an interested party; however, the lower court denied each motion.

56. On January 27, 2017, despite Doss being Spinnaker's owner, HSCO employees posted a WOP addressed to MWior and other tenants.

57. After the deputies posted the WOP, Doss filed an Emergency Motion challenging the WOP, but the court denied it without a hearing.

58. On January 31, 2017, Doss filed an Emergency Petition in the 2nd DCA, and on February 3, 2017, that court issued an Order "Staying" the lower court's WOP, classifying it as a "motion to review."

## Holder Makes a Call to Michael Victor

59. On February 9, 2017, the 2nd DCA issued an "Acknowledgement of New Case" for Spinnaker, notifying each BNYM attorney of record.

60. According to Victor's General Offense Report ("Victor's GOR"), Holder called him **on February 9, 2017,** and "*HOLDER believing a fraud was being committed, researched the Hillsborough County Property Appraiser's website and located real property owned by the suspect (Doss) and request this fraud (perjury) be investigated by law enforcement.*" **See Attachment, Exhibit 9, Pg. 2.**

## Doss Attempts Intervention For Tuscanny

61. On February 14, 2017, Doss, attempting intervention in Case 8473, appeared before Judge Rex M. Barbas ("Judge Barbas"). Also in attendance were multiple attorneys, court personnel, and Holder.

62. When Doss questioned the DBank attorney, Judge Barbas intervened and obstructed further questioning.

63.    Judge Barbas' interference prevented the attorney from answering questions about how DBank became a party to the action.

64.    Furthermore, a Bailiff escorted Doss from the chambers, and he lost Tuscanny without an evidentiary hearing.

65.    On that same day, Holder set a Case Management Conference ("CMC") for February 27, 2017, stating, "*Any party claiming [an] interest in the matter **must** be present*." **See Attachment, Exhibit 10.**

66.    Holder ordered that the BNYM attorney serve the order on all Defendants **and parties claiming an interest in the property**, with Doss receiving a copy of said order in his mailbox at Spinnaker.

67.    Although Doss thought the order for a CMC strange because of the 2nd DCA's **stay** order, he attended to protect his interest in Spinnaker.

**The Case Management Conference was An Investigatory Hearing**

68.    On February 27, 2017, Doss arrived at the CMC a few minutes late, unaware that Holder had begun the meeting without him.

69.    Based on the official transcript, Doss learned that before his arrival, Defendant Holder told attorneys Roberta Kohn ("Kohn') and Debbie Satyal ("Satyal") that he checked the 2nd DCA docket "*repeatedly*

*throughout the day to see what, if anything, had been done by our appellate court as it relates to the – what they have been treating as a motion to review, whatever that is.* (referring to the February 3 stay issued by the 2nd DCA). *And in any event, there's been no definitive action, and as such, we're pretty much stayed.*" **See Attachment, Exhibit 11, Pg. 5.**

70. During the CMC, Defendant Holder accused Doss of having a "*sworn filing where you indicate you own no property in this county, this state, or this nation.*" **See Attachment, Exhibit 11, Pg. 6.**

71. As for Holder's comments on the "sworn filing," Doss never submitted a filing stating (I) "*…did not own property in this country, in this state, or this nation*" while under oath or otherwise. But, as to Case *0071* and *State of Florida v Doss 2017-CF-9089* ("Case 9089"), Doss never made that statement, and there is no proof he did!

72. Holder tellsDoss during the CMC, "*Arguably, you've committed perjury. I've referred the matter to the Tampa Police Department.*" **See Attachment, Exhibit 11, Pg. 8, Ln. 17-19.**

73. During the CMC, Holder revealed to Doss that he spoke with Victor, stating, "*I can tell you Detective Michael Victor is actively investigating this case.*" **See Attachment, Exhibit 11, Pg. 8, Ln. 21-22.**

74. Holder did not ask probative questions of Kohn or Satyal. Instead, he ended the CMC abruptly, saying, *"this action is, for all intent and purposes, stayed until we receive word from the Second DCA."*

75. Holder only allowed Doss to ask preliminary questions of Kohn and Satyal. Holder ended the CMC before Doss could ask probative questions. **See Attachment, Exhibit 11, Pg. 11, Ln. 18-23.**

76. After limiting the scope of Doss' questioning, Holder admitted that the CMC was an investigatory proceeding. **See Attachment, Exhibit 11, Pg. 11, Ln. 24-25. Pg. 12, Ln. 1-7.**

77. The CMC record details that Holder was overtalking, belittling, attempting to intimidate, and interrogating Doss during the CMC.

78. Doss was unaware of Victor's involvement and did not know that the CMC was an investigative hearing until after being told by Holder.

## Doss Reaches Out To Victor

79. Sometime after the CMC, Doss learned that Victor went to Tuscanny to engage with the tenants and unsuccessfully reached out to Victor through LinkedIn.

80. After a conversation with the tenants, Doss tried reaching Victor using the business card he had left. **See Attachment, Exhibit 13.**

81. Sometime in March 2017, Doss went to The TPD to speak with Internal Affairs ("IA") about the "investigation" and Victor. Doss used the desk phone to call IA; however, no one offered meaningful assistance or came outside to speak with him.

82. After leaving TPD Headquarters, Doss went to Tampa City Hall looking for Victor. An assistant Fire Chief informed Doss that Victor worked on the security detail for then-Mayor Robert F. Buckhorn.

83. Doss left a message with the receptionist for Victor to call him but received a call from his supervisor Kennedy instead.

84. After Victor and McDarby went to Tuscanny and interviewed the tenants,  the tenants stopped communicating with Doss altogether. And, fearing further retaliation, Doss never returned to Tuscanny after learning about Victor and McDarby's antics with the tenants.

85. Doss never interacted with Victor, nor did Victor attend any of the perjury proceedings. Furthermore, Victor never interviewed or personally reached out to Doss ever!

**Doss Loses Ownership Of Spinnaker Without Having His Day in Court**

86.    On March 17, 2017, HCSO deputies forcibly descended on Spinnaker and removed Doss from his home with a WOP bearing MWior's name. **See attachment, Exhibit 14.**

87.    After checking the 2nd DCA docket and learning that the court lifted the writ, Doss opened the garage door at Spinnaker, anticipating the deputies would repost the WOP.

88.    However, upon hearing the sound of multiple cars, Doss opened the door leading to the garage. Surprisingly, several HSCO deputies entered the garage, some positioning their hands on their weapons.

89.    When Doss asked if they came to post another WOP, a JDoe deputy responded, "NO, we came to take you out of here!"

90.    Doss showed the HCSO deputy proof that he lived at and owned Spinnaker and that no proceeding legally divested him of it.

91.    Doss believes that (2994-BROCK, JACKIE) ("DEPJB") was in charge of the task force charged with removing him from Spinnaker.

92.    As he gathered his belongings, Doss thought DEPJB asked if he had any "**CATS** in the freezer?" However, one of the other deputies clarified her statements, saying DEPJB asked, "Do you have any **cash**

in the freezer?" Although Doss thought it was a strange question, he responded, "No."

93.    Doss embarrassedly surrendered the keys, the gate remotes, and the garage door opener while some community residents looked on.

94.    The remarks section of the posted WOP reads, among other things, **"Executed EVICTION on Def.** (Present/Removed) and Plaintiff took possession of premises JB 2994."**. See Attachment, Exhibit 14.**

## Doss Files A Lawsuit in The Middle District and Appeals in the 2nd DCA

95.    On March 20, 2017, Doss filed *Case 8:17-cv-00653-JDW-AEP* ("Case 00653"), naming several defendants, including Holder, in this Court.

96.    On April 7, 2017, Doss filed a Motion for an Extension of Time in the 2nd DCA, which they granted, allowing Doss time to file his Initial Brief on the Merits, which he did on May 10, 2017.

### The State Charges Doss with Perjury In an Offical Proceeding (*State of Florida vs.Doss: 2017-CF-9089*)

97.    On May 26, 2017, Victor knowingly and willingly continued the conspiracy against Doss by filing a false CRA filled with misleading information to have him falsely arrested and without probable cause.

98. On June 16, 2017, the State Attorney's Office ("SAO"), influenced by Victor's CRA and with Holder as a witness, knowingly and without probable cause charged Doss with Perjury in an Official Proceeding under Florida Statute 837.02(1).

99. The Perjury in an Official Proceeding statute reads as follows:

837.021   Perjury by contradictory statements.—

(1)   Except as provided in subsection (2), whoever, in one or more official proceedings, *willfully makes two or more material statements under oath which contradict each other*, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

100.   If convicted, Doss faced up to 5 years in Florida State prison and precious years away from his family.

101. The charging document claimed Doss made a false statement under oath in an official proceeding regarding the material matter: "I am indigent and Do not own property. . **See Attachment, Exhibit 15.**

102. On June 27, 2017, Doss executed a self-arrest turn-in at Orient Road and filed his first Discovery request on July 3, 2017.

103. Doss' first arraignment was on August 8, 2017, before Judge Mark Keiser ("Judge Keiser").

104. Doss orally moved for Judge Kiser's recusal because he presided over a case involving one of The Properties.

105. Judge Keiser conducted a Faretta Inquiry, determined Doss competent to self-represent, and entered a recusal without objection.

106. Judge Keiser's recusal reset Doss' arraignment for August 28, 2017, before Judge Mark Wolfe ("Judge Wolfe").

107. During the arraignment, Judge Wolfe stated it would be difficult for any judge around the 13th not to know Holder.

108. However, despite Judge Wolfe claiming he and Holder knew each other for 20 years, Judge Wolfe held the case in his courtroom.

109. Judge Wolfe conducted a Faretta Hearing and ordered a Competency Evaluation, resetting the arraignment for September 25, 2017.

110. Judge Wolfe tolled the arraignment, citing that an arraignment is incomplete until he completes the Faretta inquiry.

111. Although claiming to move with "the abundance of caution," Judge Wolfe never informed Doss that he and Holder made appearances as part of the *Five Judges*.

112. During the proceedings before Judge Wolfe, Doss learned the state's witnesses were Holder, Victor, and the former Tuscanny tenants (the state added McDarby sometime later).

113. On September 12, 2017, Doss filed a Motion to Disqualify ("MOD") Judge Mark Wolfe, and on September 21, 2017, Doss filed a Writ of Prohibition with the Florida 2nd District Court of Appeals.

114. On September 25, 2017, Judge Wolfe granted Doss' MOD, placing him into another "blind" rotation.

115. ASA ISABEL shipped The General Offense Hardcopy TPD Report, Number 17-194123 ("The Report"), dated August 28, 2017, and Doss received a shorter version after September 25, 2017.

116. The Report outlines some ways and times that Victor, McDarby, Kennedy, and Holder communicated about Doss. Additionally, The Reports included names and roles of other potential conspirators involved in fabricating the perjury case against Doss.

117. After gaining more clarity about Holder and Victor's collusion, Doss filed several motions, sought information about their professional backgrounds and discipline records, and moved to dismiss the criminal case.

118. Doss never received the information about Holder and Victor's professional backgrounds from the SAO, and he had to solicit the information from other resources.

119. On September 28, Judge Wolfe filed an Order of Disqualification ("OOD"), sending Doss to Judge Christopher Nash ("Judge Nash"), the third judge for Case 0089, for arraignment on November 8, 2017.

120. Before the arraignment with Judge Nash, Doss filed a Motion to Reconsider ("MOR") Judg Wolfe's Orders.

121. Assistant State Attorney Ricardo Martinez ("ASA Martinez") attended as Judge Nash granted Doss' MOR, vacating Judge Wolfe's previous orders, including the competency evaluation with Dr. Katz.

122. Doss asked Judge Nash if he knew Holder. Judge Nash alluded to having minimal association with Holder, but because of The Report, Doss requested Judge Nash recuse himself.

123. Judge Nash denied Doss' first request, and Doss reappeared before Judge Nash on November 29, 2017, for a Motions hearing.

124. At the hearing, Doss requested discovery about Victor and Holder's communication and the SAO's failure to provide discovery.

125. Sometime later, Doss learned that 13th Judges Mark Wolfe, Gregory Holder, Darren Farfarte, Mark Kiser, and Ronald Ficarrotta lectured in the area as *The Five Judges*. **See Attachment, Exhibit 16.**

126. On December 5, 2017, fully aware that some 13th officials' were involved in the conspiracy against him, Doss filed a MOD on Holder.

127. In his Response to Defendant's Motion For Particulars, ASA Martinez admitted the state could not supply proof of the statement forming the basis for the perjury charge! **See Attachment, Exhibit 17.**

128. On December 15, 2017, Doss filed a MOD on Judge Nash, which he denied. However, on December 22, 2017, Doss received, via mail, an OOD from Judge Nash, placing Doss into another "blind" rotation.

129. Prompted by Judge Nash, Chief Judge Ficarrotta, per Florida Rule of Judicial Administration 2.215(b)(4), to seek an out-of-circuit judge.

130. Judge Ficarrotta's request came more than six months after the state falsely charged Doss with perjury. **See Attachment, Exhibit 18.**

131. On January 2, 2018, Chief Judge Ficarrotta requested that (then) Florida Supreme Court Chief Justice Jorge Labarga assign an out-of-circuit judge to the case. **See Attachment, Exhibit 19.**

132. Doss received a notice of hearing for January 9, 2018, before Judge Barber while awaiting the arrival of Judge McGrady, but the lower court, once again, reset arraignment for January 16, 2018.

133. On January 11, 2018, Florida Supreme Court Chief Justice Jorge Labarga assigned The Honorable Thomas McGrady ("Judge McGrady") to Case 9089. **See Attachment, Exhibit 20.**

134. On January 16, 2018, Judge McGrady determined Doss competent to self-represent after conducting a Faretta Inquiry.

135. Judge McGrady asked ASA Martinez about Doss' charges, including the official proceeding he purportedly perjured himself and when exactly he took an oath. **See Attachment, Exhibit 21, Pg. 44.**

136. ASA Martinez said the state was "combining" actions to charge Doss. **See Attachment, Exhibit 21, Pg. 51, Ln. 3; Pg. 55, Ln. 16.**

137. After hearing ASA Martinez's admission, Judge McGrady dismissed Case 9089. **See Attachment, Exhibit 22.**

## Doss' Damages

138. Doss was the victim of a nefarious plot, agreed to by each of the following Defendants: Holder, Victor, McDarby, Kennedy, and John Does I-X.

139. These Defendants, operating under the shield of their official titles and the official policies, customs, and practices, of their state municipality employers, and individual motivations, violated Doss' rights under the Fourth Amendment to the U.S. Constitution and Florida state tort laws.

140. When Doss acquired The Properties for Acevedo, he did so legally and following the rule of law. Furthermore, he researched reputable sources for information about foreclosure proceedings, including consulting several attorneys.

141. Moreover, The Clerk of the Court and the Appraiser recognized Doss as the legitimate owner of The Properties. The combined market value of The Properties exceeded $1,000,000 in 2017.

142. Victor, Holder, McDarby, Kennedy, and the unknown John Does I-X created obstacles and used the influence of their official capacities to deny Doss a fair civil and criminal process, thereby allowing undeserving entities to steal his homes and depriving him of fundamental due process of law.

143. Sometime after his initial calls from Holder, Defendant Victor colluded with the other named and unnamed Defendants to further

the conspiracy to accuse falsely, initiate a criminal proceeding against, arrest, prosecute, and imprison Doss without an iota of probable cause.

144. Holder, Victor, Kennedy, McDarby, and the unknown John Does I-X conspired and executed their plan to falsely charge Doss because he is an African-American Man exercising his constitutional rights.

145. The named and unnamed Defendants colluded and subjected Doss to losing his properties and their associated potential future value, his primary home, and the intentional infliction of emotional distress associated with facing five years in Florida prison if convicted.

146. Without one hearing allowing him to defend the properties the state charged him for owning, and the lower court refused him intervenor status, Doss lost possession of four legally acquired properties.

147. The Florida Department of Revenue assessed liens against him for doc-stamp taxes for Spinnaker and Tuscanny, and The Spinnaker HOA placed a judgment lien on Doss for unpaid assessments and HOA fees, and those liens remain to this day.

148. Doss brings this suit against named and unknown individuals who conspired while operating independently, cohesively, or under color

of law to knowingly violate his well-established constitutional rights and his rights under Florida state law. Thus, Doss seeks damages from these individuals for subjecting him to the intentional infliction of emotional distress.

149.   Doss seeks declaratory relief because this suit involves a legitimate controversy within this Court's jurisdiction. Thus, this Court has the inherent power to declare Doss' rights under the Constitution and laws of the United States, including those applicable to Florida through the Fourteenth Amendment.

150.   Doss seeks declaratory relief through a judgment that Defendant Tampa and Defendant Chronister's policies, the pattern of practices, customs, lack of supervision, failure to train, acts, and omissions described herein violate *Monell* and the Fourth Amendment to the U.S. Constitution.

151.   Furthermore, Defendant Tampa and Defendant Chronister's supervisory failures constituted and promoted the atmosphere that allowed for the Malicious Prosecution of Doss in violation of federal law and Florida state law.

152. At all times relevant, Doss had the right to be free from False Arrest and arrest without probable cause, and he had a right not to be Maliciously Prosecuted under the laws of the United States and Florida State Law.

**COUNT ONE:**
**42 U.S.C. § 1985 –**
**Conspiracy to Commit False Arrest Against**
**Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X**

153. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

154. As outlined in The Introduction, paragraphs 1-18, and paragraphs 26-152, Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted, and each of these Defendants named in Count One participated in furthering the conspiracy efforts while under Color of Law.

155. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

156. As a result of their conspiracy, the Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X created the pretense of probable cause by conducting a ruse investigation unrelated to the allegation of perjury in an official proceeding and subsequentially deprived Doss of his right not to be arrested without probable cause as protected by the Fourth Amendment to the United States Constitution.

157. As a direct and proximate result of the conspiracy and conduct of Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X agreement to deprive him of his constitutional right not to be arrested without probable cause and their collective efforts and contributions to further said conspiracy, Doss suffered the physical and financial loss of his property interests in Spinnaker and Tuscanny and loss of

his liberty, his freedom, his dignity and still suffers from mental anguish.

158.  As to Count One, the Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X, conspired and carried out their plan to falsely accuse Doss of the felony crime of Perjury in an Official Proceeding, maliciously and without probable cause. Their misconduct and disregard for the truth were unreasonable and undertaken maliciously, intentionally, and with reckless indifference to his civil rights, human rights, and innocence.

**WHEREFORE**, **AS TO COUNT ONE**, Doss prays this Court grants the following relief against the Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X individually and collectively for **Conspiring To Commit False Arrest**;

a.  Judgment(s) for compensatory damages above $1,000,000.00 from each of the Individual Defendants: Holder, Victor, Kennedy, McDarby, and John Does I-X;

b.  Judgment for punitive damages up to the maximum allowed under the law against each of the Defendants: Holder, Victor, Kennedy, McDarby, and John Does I-X ;

c.  Cost of suit from the Individual Defendants: Holder, Victor, Kennedy, McDarby, and John Does I-X;

d.  Declaratory Judgements as this Court determines just and appropriate;

e.  All other relief as this Honorable Court deems appropriate,

f.  Trial by jury as to all issues so triable.

### COUNT TWO:
**42 U.S.C. § 1985 –**
**Conspiracy to Commit False Arrest Against**
**Defendant Gregory P. Holder**

159. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

160. As outlined in The Introduction, paragraphs 1-18, and paragraphs 26-152, Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted, and each of these Defendants named

in Count One participated in furthering the conspiracy efforts while under Color of Law.

161. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

162. As a result of their conspiracy, the Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X created the pretense of probable cause by conducting a ruse investigation unrelated to the allegation of perjury in an official proceeding and subsequentially deprived Doss of his right not to be arrested without probable cause as protected by the Fourth Amendment to the United States Constitution.

163. As a direct and proximate result of the conspiracy and conduct of Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X agreement to deprive him of his constitutional right not to be arrested without probable cause and their collective efforts and contributions

to further said conspiracy, Doss suffered the physical and financial loss of his property interests in Spinnaker and Tuscanny and loss of his liberty, his freedom, his dignity and still suffers from mental anguish.

164.    As to Count Two, Defendants Holder conspired with Defendants Victor, Kennedy, McDarby, and John Does I-X and carried out their plan to falsely accuse Doss of the felony crime of Perjury in an Official Proceeding, maliciously and without probable cause.

165.    Holder's misconduct and disregard for the truth were unreasonable and undertaken maliciously, intentionally, and with reckless indifference to Doss' civil rights, human rights, and innocence.

166.    Furthermore, Holder and Defendants Victor, McDarby, Kennedy, and John Does I-X acted in concert to accomplish the unlawful purpose of depriving Doss of his constitutional right to be free from arrest without probable cause and his right not to be subjected to malicious prosecution.

**WHEREFORE**, **AS TO COUNT TWO**, Doss prays this Court grants the following relief against the Defendant Holder for **Conspiring To Commit False Arrest**;

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

### COUNT THREE:
**42 U.S.C. § 1985 –**
**Conspiracy to Commit False Arrest Against**
**Defendant Michael R. Victor**

167. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

168. As outlined in The Introduction, paragraphs 1-18, and paragraphs 26-152, Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned

for up to five years if convicted, and each of these Defendants named in Count One participated in furthering the conspiracy efforts while under Color of Law.

169. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

170. As a result of their conspiracy, the Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X created the pretense of probable cause by conducting a ruse investigation unrelated to the allegation of perjury in an official proceeding and subsequentially deprived Doss of his right not to be arrested without probable cause as protected by the Fourth Amendment to the United States Constitution.

171. As a direct and proximate result of the conspiracy and conduct of Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X agreement to deprive him of his constitutional right not to be arrested

without probable cause and their collective efforts and contributions to further said conspiracy, Doss suffered the physical and financial loss of his property interests in Spinnaker and Tuscanny and loss of his liberty, his freedom, his dignity and still suffers from mental anguish.

172.   As to Count Three, Defendant Victor conspired with Defendants Holder, Kennedy, McDarby, and John Does I-X and carried out their plan to falsely accuse Doss of the felony crime of Perjury in an Official Proceeding, maliciously and without probable cause.

173.   Victor's misconduct and disregard for the truth were unreasonable and undertaken maliciously, intentionally, and with reckless indifference to Doss' civil rights, human rights, and innocence.

174.   Furthermore, Victor and Defendants Holder, McDarby, Kennedy, and John Does I-X acted in concert to accomplish the unlawful purpose of depriving Doss of his constitutional right to be free from arrest without probable cause and his right not to be subjected to malicious prosecution.

**WHEREFORE**, **AS TO COUNT THREE**, Doss prays this Court grants the following relief against Defendant Victor for **Conspiring To Commit False Arrest**;

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

<u>**COUNT FOUR:**</u>
**42 U.S.C. § 1985 –**
**Conspiracy to Commit False Arrest Against**
**Defendant Pat Kennedy**

175. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

176. As outlined in The Introduction, paragraphs 1-18, and paragraphs 26-152, Defendants Holder, Victor, Kennedy, McDarby, and John Does I-

X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted, and each of these Defendants named in Count One participated in furthering the conspiracy efforts while under Color of Law.

177. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

178. As a result of their conspiracy, the Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X created the pretense of probable cause by conducting a ruse investigation unrelated to the allegation of perjury in an official proceeding and subsequentially deprived Doss of his right not to be arrested without probable cause as protected by the Fourth Amendment to the United States Constitution.

179. As a direct and proximate result of the conspiracy and conduct of Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X agreement to deprive him of his constitutional right not to be arrested without probable cause and their collective efforts and contributions to further said conspiracy, Doss suffered the physical and financial loss of his property interests in Spinnaker and Tuscanny and loss of his liberty, his freedom, his dignity and still suffers from mental anguish.

180. As to Count Four, Defendant Kennedy conspired with Defendants Holder, Victor, McDarby, and John Does I-X and carried out their plan to falsely accuse Doss of the felony crime of Perjury in an Official Proceeding, maliciously and without probable cause.

181. Kennedy's misconduct and disregard for the truth were unreasonable and undertaken maliciously, intentionally, and with reckless indifference to Doss' civil rights, human rights, and innocence.

182. Furthermore, Kenndy and Defendants Holder, McDarby, Victor, and John Does I-X acted in concert to accomplish the unlawful purpose of depriving Doss of his constitutional right to be free from arrest

without probable cause and his right not to be subjected to malicious prosecution.

**WHEREFORE**, **AS TO COUNT FOUR**, Doss prays this Court grants the following relief against Defendant Kennedy for **Conspiring To Commit False Arrest**;

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

<u>**COUNT FIVE:**</u>
**42 U.S.C. § 1985 –**
**Conspiracy to Commit False Arrest Against**
**Defendant John Walter McDarby**

183. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

184. As outlined in The Introduction, paragraphs 1-18, and paragraphs 26-152, Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted, and each of these Defendants named in Count One participated in furthering the conspiracy efforts while under Color of Law.

185. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

186. As a result of their conspiracy, the Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X created the pretense of probable cause by conducting a ruse investigation unrelated to the allegation of perjury in an official proceeding and subsequentially deprived Doss of his right not to be arrested without probable cause

as protected by the Fourth Amendment to the United States Constitution.

187. As a direct and proximate result of the conspiracy and conduct of Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X agreement to deprive him of his constitutional right not to be arrested without probable cause and their collective efforts and contributions to further said conspiracy, Doss suffered the physical and financial loss of his property interests in Spinnaker and Tuscanny and loss of his liberty, his freedom, his dignity and still suffers from mental anguish.

188. As to Count Five, Defendant McDarby conspired with Defendants Holder, Kennedy, Victor, and John Does I-X and carried out their plan to falsely accuse Doss of the felony crime of Perjury in an Official Proceeding, maliciously and without probable cause.

189. McDarby's misconduct and disregard for the truth were unreasonable and undertaken maliciously, intentionally, and with reckless indifference to Doss' civil rights, human rights, and innocence.

190. Furthermore, McDarby and Defendants Holder, Victor, Kennedy, and John Does I-X acted in concert to accomplish the unlawful purpose of depriving Doss of his constitutional right to be free from arrest without probable cause and his right not to be subjected to malicious prosecution.

**WHEREFORE**, **AS TO COUNT FIVE**, Doss prays this Court grants the following relief against Defendant McDarby for **Conspiring To Commit False Arrest**;

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

<u>**COUNT SIX:**</u>
**42 U.S.C. § 1985 –**
**Conspiracy to Commit False Arrest Against**

## Defendant John Walter McDarby

191. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

192. As outlined in The Introduction, paragraphs 1-18, and paragraphs 26-152, Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted, and each of these Defendants named in Count One participated in furthering the conspiracy efforts while under Color of Law.

193. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

194. As a result of their conspiracy, the Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X created the pretense of probable cause by conducting a ruse investigation unrelated to the allegation of perjury in an official proceeding and subsequentially deprived Doss of his right not to be arrested without probable cause as protected by the Fourth Amendment to the United States Constitution.

195. As a direct and proximate result of the conspiracy and conduct of Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X agreement to deprive him of his constitutional right not to be arrested without probable cause and their collective efforts and contributions to further said conspiracy, Doss suffered the physical and financial loss of his property interests in Spinnaker and Tuscanny and loss of his liberty, his freedom, his dignity and still suffers from mental anguish.

196. As to Count Six, Defendants John Does I-X, although currently unknown, conspired with Defendants Holder, Kennedy, Victor, and McDarby and carried out their plan to falsely accuse Doss of the

felony crime of Perjury in an Official Proceeding, maliciously and without probable cause.

197. Defendants John Does I-X's collective misconduct and disregard for the truth were unreasonable and undertaken maliciously, intentionally, and with reckless indifference to Doss' civil rights, human rights, and innocence.

198. Furthermore, Defendants John Does I-X and Defendants Holder, Victor, Kennedy, and McDarby acted in concert to accomplish the unlawful purpose of depriving Doss of his constitutional right to be free from arrest without probable cause and his right not to be subjected to malicious prosecution.

**WHEREFORE**, **AS TO COUNT SIX**, Doss prays this Court grants the following relief against Defendants John Does I-X for **Conspiring To Commit False Arrest**;

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

## COUNT SEVEN:
### 42 U.S.C. § 1983 – False Arrest (4th Amendment Violation) Against Defendants Gregory P. Holder, Michael R. Victor, and Pat Kennedy

199. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

200. As outlined in The Introduction, paragraphs 1-18, and paragraphs 26-152, and Count One, Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, falsely accused Doss of making a false statement in an Offical Proceeding, solely to have him unjustly arrested without probable cause, and maliciously prosecuted under Case 2017-CA-9089. If convicted, Doss faced up to five years in Florida State Prison because of the false allegation against him.

201. Each Defendant participated under Color of Law, and none of the named and unknown John Does I-X have immunity for participation in a false arrest. *E.J. Strickland Construction, Inc. v. Department of*

*Agriculture & Consumer Services of Florida*, 515 So. 2d 1331, 1336 (Fla. Dist. Ct. App. 1987) ("At common law, neither judicial officers nor police officers have an absolute and unqualified immunity from liability for false arrest.")

202. As a result of the collective efforts of the Defendants named in Count Seven, Doss sustained a loss of his liberty, mental anguish, humiliation, and degradation and continues suffering from emotional stresses and other financial damages as outlined in this complaint.

203. Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X used a ruse investigation as a pretext to prove Doss committed the crime of Perjury in an Official Proceeding without having an ounce of proof demonstrating he perjured himself.

204. Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X collectively constructed the GOR provided as part of Discovery in Case 9089.

205. On May 26, 2017, Victor wrote a CRA filled with misleading information and lies, specifically that Doss filed sworn documents under penalty of perjury and that he owned the house ever since, and his immediate supervisor, Kennedy, approved it, knowing as much.

206. ASA Martinez admitted as much when questioned by Judge McGrady and in the Statement of Particulars filed on December 14, 2017. **See Exhibit 17**.

207. None of the information provided explains when and where Doss perjured himself, but the CRA, written by Victor, and approved by Kennedy, led to the SAO filing a Direct File Capias for Doss despite not having probable cause.

208. Kennedy and Victor participating with Holder, knowingly, willingly, and maliciously committed the acts necessary to have Doss arrested without probable cause or reasonable suspicion and under color of law.

209. As a direct and proximate result of the misconduct by Defendants Holder, Victor, and Kennedy, Doss suffered the physical and financial loss of his property interests in Spinnaker and Tuscanny and the loss of his liberty, his freedom, his dignity and still suffers from mental anguish.

**WHEREFORE, AS TO COUNT SEVEN,** Doss prays this Court grants the following relief against Defendants Michael R. Victor and Pat Kenndy for False Arrest in Violation of the Fourth Amendment and United States laws:

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

## COUNT EIGHT
### 42 U.S.C. § 1983 – Monell Claims Against The City Tampa
### for Violations of Federal Law, Failure to Train, and Failure to Intervene

221. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

203. Doss' damages and the violations of his constitutional rights, as alleged in this complaint, resulted from Tampa's policies, customs, and practices. Tampa employed Defendants Victor and Kennedy in a supervisory capacity individually. Tampa promoted and promulgated written and unwritten policies that caused the fabricated allegation, fabricated charge, and unlawful capias, causing Doss' arrest and prosecution.

204. Moreover, Doss' damages and the violations of his constitutional rights, as alleged herein, directly result from the actions of policymaking officials for Tampa.

205. In the manner described within this Complaint during the constitutional violations described above, Defendant Tampa, Tampa JDoe employees, and one or more of the other Defendants stood by without intervening to prevent the misconduct described above and perpetrated against Doss by Defendants Victor, Kennedy, and Tampa JDoe employees aware of the misconduct.

206. Defendant Tampa's leadership knew or should have known of the Constitutional violations and the conduct of Defendants Victor, Kennedy, and JDoes Tampa employees in furthering the conspiracy against Doss.

207. At all times relevant to the events described throughout this Complaint, Tampa had inadequate rules, regulations, policies, and effective internal audit procedural safeguards or failed to promote good practices, rules, and guidelines for adequately conducting investigations for allegations of perjury in an official proceeding, and then correctly using that information in a CRA.

208. At all times relevant to the events described throughout this Complaint, and before and after the months of 2017 covered within this complaint, Tampa had inadequate rules, regulations, policies, or effective internal audits for procedural safeguards or failed to promote good practices, regulations, and procedures for adequately conducting investigations into allegations of perjury in an official proceeding.

209. Moreover, Tampa lacked adequate procedural safeguards for writing a CRA using the information gathered from the perjury investigation, knowing that information could lead to the arrest, prosecution, conviction, and potential imprisonment of an innocent person.

210. At all times relevant to the events described throughout this Complaint, and before and after the months of 2017 as outlined herein, Tampa either had inadequate rules, regulations, and policies or Tampa lacked adequate internal procedural safeguards for adequately conducting investigations into allegations of perjury in an official proceeding, or Tampa failed to promote good rules, regulations, policies, and procedural safeguards for conducting other types of criminal investigations, including but not limited to

analyzing property ownership documentation, properly articulating the facts of an investigation into the ownership of real property, writing truthful CRAs, obtaining documented or recorded evidence of statements by an alleged suspect a perjury case, the writing of police reports and taking of investigative notes and how to disclose materially exculpatory evidence upon request to all affected parties adequately.

211. At all times relevant to the events described throughout this Complaint, and before and after the months of 2017, Tampa either had inadequate rules, regulations, policies, or effective internal audit procedural safeguards, or Tampa lacked proper procedural safeguards or failed to promote good rules, regulations, policies, or guidelines for adequately training and supervising officers and agents of the TPD concerning disclosing materially exculpatory evidence. Additionally, Tampa and the TPD lacked proper rules, procedures, policies, and rules on whether those officers should incorporate blind reliance on statements by influential figures, including a local judge, without providing unbiased scrutiny of the information, statement, and/or data.

212. At all times relevant to the events described throughout this Complaint, Tampa had inadequate rules, regulations, policies, or effective internal audit procedural safeguards, or it failed to promote the good rules, practices, regulations, and procedures for conducting perjury investigations. Additionally, Tampa lacked proper investigation procedural safeguards.

213. Tampa's policymakers, Mayors, officers, and agents failed to promulgate proper or adequate rules, regulations, policies, and procedures. They showed indifference to the need to change their current positions, notwithstanding the apparent need for such rules, regulations, policies, and procedures despite being on notice of the multitude of offenses by TPD Officers.

214. Based upon the information obtained from Defendant Victor's GOR, the lack of genuine supervision by Pat Kennedy, and TPD's history of officers filing false and fabricated reports, there was no training on disclosure obligations or how to handle and/or document interactions when Judicial Officers report an alleged crime involving someone appearing before them.

215. Disclosure of exculpatory information is critical when their investigation leads to a dead end or is unsupported by substantial evidence. How police officers document their interactions with an informant, even if they are a judge, becomes essential because the prosecutor has an inherent duty to disclose exculpatory information with a criminal defendant, which is what Doss was during Case 9089. *Brady v. Maryland*, 373 U.S. 83 (1963).

216. Disclosure obligation training was evident based on the well-documented history of fabricated reports by TPD Officers and how, in this instance, none of the Tampa conspirators relayed to the prosecutor that Doss never made the alleged statements leading to his ordeals regarding Case 9089.

217. Moreover, because police officers do not come to their jobs trained in the law, a municipality's failure to train them on how to handle exculpatory evidence has the apparent consequence of leading to constitutional violations.

218. Thus, when the Supreme Court held that the need to train prosecutors about their disclosure obligations was not evident given

their legal background, it distinguished prosecutors from police, *Connick v. Thompson*, 563 U.S. 51 (2011).

219. Tampa's policymakers, Mayors, officers, and agents might have prevented violations of Doss' constitutional rights had they promoted and instituted appropriate policies, rules, customs, practices, and procedures and because Tampa had notice of past officer misconduct related to falsified reports, an obligation to implement policies was evident. *Connick v. Thompson*, 563 U.S. 51, 62 (2011)

220. At all times relevant to the events described throughout this Complaint, and before and after the months of 2017, the City of Tampa had notice of practices and customs of officers and agents of the TPD that included one or more of the following: (1) officers fabricated and/or falsified the evidence created or used in their GORs and CRAs; (2) officers embellished and/or misrepresented statements from selfishly motivated individuals; and/or (3) officers failed to disclose exculpatory evidence during criminal trials.

221. At all times relevant to the events described throughout this Complaint, Tampa's mayors, supervisors, and policymakers for

Tampa were the moving force allowing the policies, practices, and customs, individually and/or together, because they directly encouraged the very type of misconduct described herein.

222. The sweeping misconduct is attributable to these officials because, by failing to adequately train, supervise, and control their officers, agents, and employees on proper investigative techniques and by failing to punish and discipline prior instances of similar misconduct adequately, thus directly encouraging future abuses like those affecting Doss.

223. On information and belief, Tampa had such notice through the supervision of officers, successful motions, and reported and unreported cases that policies, customs, and practices described above constitute the de facto policies for Tampa.

224. Moreover, these policies, customs, and practices exist and thrive, individually and/or together, because policymakers with authority over them and who possess the ability to change these behaviors exhibited deliberate indifference to the many problems, thereby effectively ratifying them.

225. Tampa has a long history of police misconduct, often related to unethical and unprofessional acts by TPD officers operating with impunity and blatant disregard for their oaths.

226. In 1973, for example, a grand jury found that TPD detectives engaged in misconduct that was "shocking beyond words," such as detectives committing perjury and falsifying information. Testimony during those grand jury proceedings revealed that TPD supervising officers, including the Chief of Police, knew of this misconduct but did nothing to correct it. In that seventeen-page report, the grand jury found that police on "numerous occasions" provided false information to secure search warrants.

227. Additionally, this 1973 report included evidence of a supervisor knowing about a detective's misconduct but not issuing discipline. Further, the grand jury recommended that the City increase its officers' training so that their conduct conformed to the legal requirements and work more closely with prosecutors to ensure that officers fulfill their constitutional duties when investigating cases.

228. In conclusion, the recommendations made in the 1973 grand jury report were for the Department to better monitor officers' use of confidential informants.

229. In the mid-1980s, a Tampa police officer named Francisco Pijuan was removed from the force and criminally prosecuted for conspiracy and attempted official misconduct after a tape recording captured Pijuan coaching a confidential informant to lie.

230. In 1983, Robert DuBoise (" RB") was just 18 when four TPD officers wrongly accused, arrested, prosecuted, and had him convicted after he allegedly conspired with a doctor to falsify evidence against him for the murder and rape of a woman, resulting in him spending the next 37 years of his life in prison. RB was absolved of the false allegation recently.

231. On July 4, 2020, TPD arrested Jamie Bullock ("Ms. Bullock") as she exercised one of her First Amendment to peaceably assemble as she paid homage to those killed by police, including her brother! In addition, TPD exacerbated her misery by leaving her crying uncontrollably in the back of their squad car for at least ten minutes.

232. During the trial, the SAO filed a motion in limine, attempting to silence any talk of the constitutional right to free speech, the right to assemble, and the unprofessional TPD behavior the day they arrested Ms. Bullock. Finally, because Ms. Bullock stood her ground and fought off the unsubstantiated claims against her, the state dropped the charges against her, citing a lack of evidence to prosecute.

233. Oddly, the SAO also rode Doss' *Case 9089* as far as they could, knowing they lacked probable cause or evidence supporting Doss, said, "… ( He is/I am) indigent… and… do not own property."

234. The misconduct described in this complaint is not the only time Doss had an incident involving a TPD officer knowingly filing a falsified CRA as a means of cloaking a malicious intent, reckless purpose, and wanton disregard for Doss' human rights, safety, and property while under color of law. **See Attachment, Exhibit 25.**

235. On July 16, 2014, TPD Officer Salvatore Cicolelleo ("SC") knowingly, willingly, with malicious intent and wanton disregard for human rights and safety, stopped and seized Doss without a legally justifiable reason.

236. SC claimed the vehicle occupied by Doss was unregistered and uninsured; however, SC knew both allegations and charges weren't true.

237. In addition, Bern Berry, his supervisor, verified that the Driver and Vehicle Identification Database (DAVID) System gives an update on vehicle information, and that information, although redacted in his report, was available after Doss demanded it in discovery. **See Attachment, Exhibit 25-B.**

238.  After several appearances in the lower court without SC attending any of the proceedings, it became clear that SC avoided having to answer for the illegal stop. As a result, the case ended in Doss's favor, with the SAO dropping the charges. **See Attachment, Exhibit 25-A.**

239. The Tampa final policymakers knew of the illegal policies and practices, but they also knew that their unwillingness and failure to reform these policies and provide their TPD officers with adequate training could lead to constitutional violations.

240. Despite needing acceptable policies and renewed training for their officers, Tampa leadership exhibited a cavalier attitude towards those failures by not enacting policies and conducting training for them,

thereby demonstrating indifference to the constitutional violations that occurred regarding Doss.

241. The misconduct alleged in this Count, fabricating information, withholding exculpatory information, colluding with an informant (Holder) to make a false allegation, and maliciously pursuing that action without probable cause or justification, places a highlight on what Tampa and The TPD apply as their policies, customs, and practices and this behavior is more common than uncommon.

242. The Officers, agents, and employees of Tampa, including but not limited to the Defendants named herein, engaged in the misconduct described in this Complaint and were the proximate cause of Doss' injuries and the violations of his constitutional rights as a direct result of one or more of the policies, procedures, and customs set forth above.

**WHEREFORE, AS TO COUNT EIGHT**, Doss prays this Court grants the following relief against The City of Tampa (A Municipality) for violations under 42 U.S.C. §1983, the United States Constitution and Monell Claims for its Policies, Customs, and Practices, and for Failing to Train.

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

## COUNT NINE
**42 U.S.C. § 1983 – 4th, 5th, and 14th Amendment Violations for Failure to Adequately Train and Failure to Intervene Against Defendant Sheriff Chad Chronister**

212. As outlined and described above, each paragraph of this Complaint is incorporated as if restated herein.

213. In the manner described within this Complaint and during the constitutional violations described in the incorporated paragraphs of this Complaint, Defendant Sheriff Chand Chronister, HCSO JDoes employees, and one or more of the other Defendants stood by without intervening to prevent the above-described misconduct by Defendant McDarby, the duly sworn deputy and employee of HCSO perpetrated against Doss.

214. Defendant Sheriff Chronister knew or should have known of the Constitutional violations and the conduct of Defendant McDarby, and the HCSO JDoes employees under his charge in furthering the conspiracy against Doss.

215. Over the past few years, during interaction with HSCO employees, several deputies of Defendant Chad Chronister violated Doss' constitutional rights due to policies, customs, and practices. For example, on September 16, 2015, Deputy James Malieo accused and arrested Doss.

216. However, after several lower court appearances, listening to testimony, and evaluating the facts, the judge dismissed the charges against Doss.

217. Another example of policies, customs, and practices allowing HCSO deputies to violate constitutional rights happened on September 6, 2017, when Deputy V DeJesus Miranda, without probable cause or reasonable suspicion of a crime, arrested Doss.

218. According to the CRA, Deputy Miranda thought the vehicle's driver might be sick because he moved from the center lane to the right lane

before turning right. Once again, that incident concluded with the SAO nolle prosequi(ed) the action.

219. Finally, as outlined above, several HCSO deputies arrived, in force, with several officers and a K-9 vehicle to remove Doss from his lawfully possessed property with a WOP bearing Michael Wior's name.

220. However, the HCSO deputies removed Doss from his legally owned property instead of demanding a corrected WOP.

221. Additionally, as the final policy enforcer for Hillsborough County, Sheriff Chronister had a duty to Doss to ensure the employees under his charge received adequate training on evictions and all they entail.

222. Defendant Sheriff Chronister and the JDoes employed by the HCSO did nothing to remediate the ongoing unlawful conduct and unlawful activity outlined in this complaint.

223. Defendant Sheriff Chronister and the HCSO had direct and/or imputed knowledge of the actions perpetrated collectively by The Conspirators, the JDoe Defendants, and Defendant McDarby, under color of law, to deprive Doss of his rights and privileges under the U.S. Constitution.

224. The malicious activity and unlawful conduct described within this Complaint and in this Count was objectively unreasonable and undertaken intentionally, with willful indifference or blindness on the part of Defendant Sheriff Chronister as to the multiple violations of Doss' Constitutional rights and in utter disregard of the HCSO and the supervisory responsibilities.

**WHEREFORE, AS TO COUNT NINE**, Doss prays this Court grants the following relief under 42 U.S.C. § 1983 per the Federal Constitution's 4th, 5th, and 14th Amendments for Failure to Adequately Train and Failure to Intervene Against Defendant Sheriff Chad Chronister.

    a. Judgment(s) for compensatory damages above $1,000,000.00;

    b. Judgment for punitive damages up to the maximum allowed under the law;

    c. Cost of suit;

    d. Declaratory Judgements as this Court determines just and appropriate;

    e. All other relief as this Honorable Court deems appropriate,

    f. Trial by jury as to all issues so triable.

## COUNT TEN:
### 4TH Amendment Claim for Malicious Prosecution
### Against Defendant Michael Victor

222. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

223. Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted, and each of these Defendants named in Count One participated in furthering the conspiracy efforts while under Color of Law.

210. Each Defendant participated under Color of Law, and none of the named and unknown John Does I-X have immunity for participation in a false arrest. *E.J. Strickland Construction, Inc. v. Department of Agriculture & Consumer Services of Florida*, 515 So. 2d 1331, 1336 (Fla. Dist. Ct. App. 1987) ("At common law, neither judicial officers nor police officers have an absolute and unqualified immunity from liability for false arrest.")

224. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

225. As outlined above, Defendant Victor, while operating in concert with Defendants Holder, Kennedy, McDarby, and John Does I-X, wrongfully caused the institution of criminal proceedings against Doss with malice and absent probable cause or arguable probable cause by submitting a Criminal Report Affidavit to The State Attorney's Office containing false statements and/or material omissions. Accordingly, defendant Victor participated in the Malicious Prosecution willfully and under color of law.

226. The police reports prepared by Defendant Victor with help from Holder, Kennedy, McDarby, and John Does I-X went to prosecuting authorities and contained false statements and/or material omissions and a  fabricated chain of events flowing from collusion between him and the other individuals involved in the conspiracy against Doss.

227. Based on the information from Michael Victor, Holder, Kennedy, McDarby, and John Does I-X, the State Attorney's Office charged Doss with one Count of Perjury in an Official Proceeding under Florida Statute 837.02(1). If convicted, under F.S. 837.02(1), Doss faced a maximum sentence of five years in Florida State prison.

228. The Honorable Thomas McGrady, on assignment from then-Chief Justice of the Florida Supreme Court, Jorge Laraba, after hearing and considering all facts and ASA Matinez admitting the SAO was "combining" separate incidents to "create" the perjury charge, dismissed the case and fully exonerated Doss.

229. Defendant Victor, during the course of the "investigation," spoke with JDoes about the properties Doss owned without relaying exculpatory information to the SAO.

230. Instead, Defendant Victor penned the false narrative GOR and CRA to advance the conspiracy to have Doss arrested without probable cause.

231. As a direct and proximate result of Defendant Victor's misconduct with the cooperation from Holder, Kennedy, McDarby, and John Does I-X, Doss suffered the financial loss of his property interest in

Spinnaker and Tuscanny, loss of his liberty, loss of his freedom, and severe mental anguish.

232. Furthermore, Defendant Victor's involvement in the underlying conspiracy violated Doss' right to a fair trial and due process of law. These losses are either continuing or permanent, and Doss will suffer these losses in the future, violating his civil rights.

**WHEREFORE**, **AS TO COUNT TEN**, Doss prays this Court grants the following relief against Defendant Michael Victor for a **4ᵀᴴ Amendment Claim for Malicious Prosecution**:

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

## COUNT ELEVEN:
## 4TH Amendment Claim for Malicious Prosecution
## Against Pat Kennedy

233. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

234. Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted, and each of these Defendants named in Count One participated in furthering the conspiracy efforts while under Color of Law.

235. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

211. Each Defendant participated under Color of Law, and none of the named and unknown John Does I-X have immunity for participation in a false arrest. *E.J. Strickland Construction, Inc. v. Department of Agriculture & Consumer Services of Florida*, 515 So. 2d 1331, 1336 (Fla. Dist. Ct. App. 1987) ("At common law, neither judicial officers nor police officers have an absolute and unqualified immunity from liability for false arrest.")

236. As outlined above, Defendant Kenndy, while operating in concert with Defendants Holder, Victor, McDarby, and John Does I-X, wrongfully caused the institution of criminal proceedings against Doss with malice and absent probable cause or arguable probable cause by submitting a Criminal Report Affidavit to The State Attorney's Office containing false statements and/or material omissions. Accordingly, defendant Victor participated in the Malicious Prosecution willfully and under color of law.

237. The police reports prepared by Defendant Victor with help from Holder, Kennedy, McDarby, and John Does I-X went to prosecuting authorities and contained false statements and/or material omissions and a  fabricated chain of events flowing from collusion between him

and the other individuals involved in the conspiracy against Doss only because Kennedy, as Victor's immediate supervisor co-signed it.

238. Based on the information from Michael Victor, Holder, Kennedy, McDarby, and John Does I-X, the State Attorney's Office charged Doss with one Count of Perjury in an Official Proceeding under Florida Statute 837.02(1). If convicted, under F.S. 837.02(1), Doss faced a maximum sentence of five years in Florida State prison.

239. The Honorable Thomas McGrady, on assignment from then-Chief Justice of the Florida Supreme Court, Jorge Laraba, after hearing and considering all facts and ASA Matinez admitting the SAO was "combining" separate incidents to "create" the perjury charge, dismissed the case and fully exonerated Doss.

240. Defendant Kennedy, during the course of the "investigation," spoke with Doss via phone but never addressed the alleged statements leading to Holder's allegation against Doss.

241. Instead, Defendant Kenndy watched Victor pen a bogus GOR and CRA to advance the conspiracy to have Doss arrested without probable cause.

242. As a direct and proximate result of Defendant Kennedy's misconduct and supported by cooperation from Holder, Victor, McDarby, and John Does I-X, Doss suffered the financial loss of his property interest in Spinnaker and Tuscanny, loss of his liberty, loss of his freedom, and severe mental anguish.

243. Furthermore, Defendant Kennedy's involvement in the underlying conspiracy violated Doss' right to a fair trial and due process of law. These losses are either continuing or permanent, and Doss will suffer these losses in the future, violating his civil rights.

**WHEREFORE**, **AS TO COUNT ELEVEN**, Doss prays this Court grants the following relief against Defendant Pat Kennedy for a **4TH Amendment Claim for Malicious Prosecution**:

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

### COUNT TWELVE:
### 4TH Amendment Claim for Malicious Prosecution
### Against John Walter McDarby

244. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

245. Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X acting in concert, reached an agreement to falsely accuse Doss of making a false statement, solely to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted, and each of these Defendants named in Count One participated in furthering the conspiracy efforts while under Color of Law.

246. The Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X furthered their conspiracy to deprive Doss of his right not to be arrested by creating the pretense of probable cause, thereby causing Doss' illegal seizure and malicious prosecution without an iota of evidence that he committed the crime charged- Perjury in an Official Proceeding.

247. The police report(s) prepared by Defendant McDarby and forwarded to prosecuting authorities flowed from the collusion between him and the other individuals involved in the conspiracy against Doss. When Defendant Victor called him for an Assist from Agency forage, Defendant McDarby knowingly, willingly, and in utter disregard for Doss' life, liberty, and property, furthered the conspiracy when he sent his report to the SAO.

248. Because Defendant McDarby willfully conspired with and participated in the conspiracy against Doss, the State Attorney's Office charged Doss with one Count of Perjury in an Official Proceeding under Florida Statute 837.02(1). Doss faced a maximum sentence of five years in Florida State prison.

249. The Honorable Thomas McGrady, on assignment from then-Chief Justice of the Florida Supreme Court, Jorge Laraba, after hearing and considering all facts and ASA Matinez admitting the SAO was "combining" separate incidents to "create" the perjury charge, dismissed the case and fully exonerated Doss.

250. As a direct and proximate result of the conduct of Defendant McDarby's participation with the Conspirators, Doss suffered the

financial loss of his property interest in Spinnaker and Tuscanny, loss of his liberty, loss of his freedom, and severe mental anguish. Furthermore, Defendant McDarby's involvement in the underlying conspiracy violated Doss' right to a fair trial and due process of law. These losses are either continuing or permanent, and Doss will suffer these losses in the future, violating his civil rights.

212. Each Defendant participated under Color of Law, and none of the named and unknown John Does I-X have immunity for participation in a false arrest. *E.J. Strickland Construction, Inc. v. Department of Agriculture & Consumer Services of Florida*, 515 So. 2d 1331, 1336 (Fla. Dist. Ct. App. 1987) ("At common law, neither judicial officers nor police officers have an absolute and unqualified immunity from liability for false arrest.")

**WHEREFORE**, **AS TO COUNT TWELVE,** Doss prays this Court grants the following relief against Defendant John Walter McDarby for the **4TH Amendment Claim for Malicious Prosecution**:

a. Judgment(s) for compensatory damages above $1,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c.  Cost of suit;

d.  Declaratory Judgements as this Court determines just and appropriate;

e.  All other relief as this Honorable Court deems appropriate,

f.  Trial by jury as to all issues so triable.

**COUNT THIRTEEN:**
**4TH Amendment Claim for Malicious Prosecution**
**Against John Does I-X**

251.  The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

252.  As outlined in The Introduction, paragraphs 1-18, 23, and 26-166, the currently Unknown Defendants John Does I-X, after conspiring with The Conspirators, wrongfully caused the institution of criminal proceedings against Doss with malice and absent probable cause or arguable probable cause by submitting a Criminal Report Affidavit to The State Attorney's Office containing false statements and/or material omissions.

253. Accordingly, the John Does I-X Defendants participated in the Malicious Prosecution willfully and under color of law, except for Defendant Holder.

254. Based on knowledge and belief, The HCSO JDoes and Tampa JDoes furthered The Conspirator's conspiracy against Doss by providing resources and information, including pictures, subpoenas, and cover.

255. Because these currently unknown John Does I-X willfully conspired with and participated in the conspiracy against Doss, the State Attorney's Office charged Doss with one Count of Perjury in an Official Proceeding under Florida Statute 837.02(1). Doss faced a maximum sentence of five years in Florida State prison.

256. After considering the facts, including ASA Matinez admitting the SAO was "combining" separate incidents to "create" the perjury charge, the Honorable Thomas McGrady, assigned by then-Chief Justice of the Florida Supreme Court, Jorge Laraba, dismissed the case and fully exonerated Doss.

257. As a direct and proximate result of the conduct of the currently Unknown JDoes participation with the Conspirators, Doss suffered

the financial loss of his property interest in Spinnaker and Tuscanny, loss of his liberty, loss of his freedom, and severe mental anguish.

258. Furthermore, the currently Unknown John Does I-X's involvement in the underlying conspiracy violated Doss' right to a fair trial and due process of law. These losses are either continuing or permanent, and Doss will suffer these losses in the future, violating his civil rights.

213. No one has immunity for participation in a false arrest. *E.J. Strickland Construction, Inc. v. Department of Agriculture & Consumer Services of Florida*, 515 So. 2d 1331, 1336 (Fla. Dist. Ct. App. 1987) ("At common law, neither judicial officers nor police officers have an absolute and unqualified immunity from liability for false arrest.")

**WHEREFORE**, **AS TO COUNT THIRTEEN**, Doss prays this Court grants the following relief against the Currently Unknown John Does I-X FOR the **4TH Amendment Claim for Malicious Prosecution:**

   a. Judgment(s) for compensatory damages above $1,000,000.00;

   b. Judgment for punitive damages up to the maximum allowed under the law;

   c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

## COUNT FOURTEEN:
### 4TH Amendment and Claim for Malicious Prosecution
### Against Gregory P. Holder

259. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

260. As outlined in The Introduction, paragraphs 1-18, 23, and 26-166, Defendant Gregory P. Holder, for actions outside his role as a judge, who knowingly, willingly, maliciously, and wrongfully caused the institution of criminal proceedings against Doss.

261. Based upon the GOR presented in Case 9089, Defendant Holder began researching the Property Appraiser records to see if Doss owned property after the 2nd DCA placed Case 0071 on *Stay of Proceedings* because he suspected fraud (for currently unknown reasons).

262. Afterward, according to the same GOR, because he suspected fraud from Doss (but no one else) during a "regarding a pending bankruptcy hearing involving SUSPECTDoss," he called Defendant Victor to initiate an investigation.

263. Based on knowledge and belief, Defendant Holder told Defendant Victor that bankruptcy proceedings are in the jurisdiction of state courts. Moreover, based on information in the Victor GOR, Holder phoned him after Doss successfully blocked the first WOP.

264. Furthermore, Defendant Holder knowingly placed his finger on the scales of justice when he allowed attorneys without proper standing or making a legal appearance to steal Spinnaker from Doss.

265. Defendant Holder participated in furthering and allowing the constitutional violations of Doss' rights by The Conspirators. He did so with malice, absent probable cause or arguable probable cause, and with wanton disregard for Doss's constitutionally protected rights and property. Moreover, Defendant Holder utterly disregarded his duties to the public he served when he lied, directed, conspired, and did not intervene to stop Victor from sending a false narrative CRA to The SAO.

266. Because Defendant Holder led and participated in the conspiracy against Doss, the State Attorney's Office charged Doss with one Count of Perjury in an Official Proceeding under Florida Statute 837.02(1).

267. Defendant Holder's malicious and unprovoked lie had Doss facing a maximum sentence of five years in Florida State prison and time away from his family.

268. As a direct and proximate result of the conduct of Defendant Holder, firmly placing his hands on the scales of justice negatively, Doss suffered the loss of his property interest in Spinnaker and Tuscanny, loss of his liberty, loss of his freedom, and severe mental anguish.

269. Furthermore, Defendant Holder's involvement in the underlying conspiracy violated Doss' right to a fair trial and due process of law. Defendant Holder remained as the presiding judge in Case 0071 despite being an active participant as an investigator and future witness for the state's criminal action against Doss.

270. Moreover, Defendant Holder's heinous actions allowed currently unknown entities to steal his lawfully acquired properties. These

losses are either continuing or permanent, and Doss will suffer these losses in the future, violating his civil rights.

271. After considering the facts, including ASA Matinez admitting the SAO was "combining" separate incidents to "create" the perjury charge, the Honorable Thomas McGrady, assigned by then-Chief Justice of the Florida Supreme Court, Jorge Laraba, dismissed the case and fully exonerated Doss.

214. No one has immunity for participation in a false arrest. *E.J. Strickland Construction, Inc. v. Department of Agriculture & Consumer Services of Florida*, 515 So. 2d 1331, 1336 (Fla. Dist. Ct. App. 1987) ("At common law, neither judicial officers nor police officers have an absolute and unqualified immunity from liability for false arrest.")

**WHEREFORE**, **AS TO COUNT FOURTEEN**, Doss prays this Court grants the following relief against Defendant Holder for **4TH Amendment and Claim for Malicious Prosecution** :

a. Judgment(s) for compensatory damages above $3,000,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

## COUNT FIFTEEN:
**State Law Claim for Intentional Infliction of Emotional Distress Against Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X**

272. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

255. The actions, omissions, and conduct of Defendants Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X were extreme and outrageous.

256. Moreover, the cumulative participation by Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X in furthering the conspiracy, Doss' false arrest, and malicious prosecution demonstrated abuse of power and authority, beginning with Defendant Holder and flowing through the other conspirators.

257. As described in this complaint, Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X knowingly and willingly utilized their

authority with reckless disregard for the probability that their conduct would cause severe emotional distress to Doss.

258. Defendants Holder, The Conspirators, and Unknown JDoes misconduct and the brazenness shown by orchestrating a ruse investigation, fabricating evidence to convict, and suppressing exculpatory evidence to secure the arrest, prosecution, and possible conviction of Doss goes beyond all possible bounds of decency.

259. Additionally, because Doss exerted most of his energy proving his innocence and maintaining his freedom, he could not adequately defend his lawfully acquired property, making the actions of these Defendants more akin to barbaric, savage, and otherwise intolerable.

260. As a result of the Defendants' misconduct as described within this Complaint and described in this COUNT, Doss experienced severe suffering, including loss of liberty, property, great mental anguish, humiliation, degradation, psychological and emotional pain and suffering, and other grievous and continuing damages.

215. Each Defendant participated under Color of Law, or individually, and none of the named and unknown John Does I-X have immunity for participation in a false arrest. *E.J. Strickland Construction, Inc. v.*

*Department of Agriculture & Consumer Services of Florida*, 515 So. 2d 1331, 1336 (Fla. Dist. Ct. App. 1987) ("At common law, neither judicial officers nor police officers have an absolute and unqualified immunity from liability for false arrest.")

**WHEREFORE**, **AS TO COUNT FIFTEEN**, Doss prays this Court grants the following relief against Defendants Defendants Holder, Victor, Kennedy, McDarby, and John Does I-X for the **State Law Claim for Intentional Infliction of Emotional Distress**:

a.  Judgment for compensatory damages above $1,000,000.00;

b.  Judgment for punitive damages of $5,000,000, as Defendants' conduct and abuse of power and authority, was beyond decent in a civilized society;

c.  Cost of suit;

d.  Declaratory Judgements as this Court determines just and appropriate;

e.  All other relief as this Honorable Court deems appropriate,

f.  Trial by jury as to all issues so triable.

## COUNT SIXTEEN:
**State Law Claim for Negligent Supervision Against Defendant Chronister As Sheriff of Hillsborough County**

273. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

261. As alleged in this complaint, Defendant Chronister had notice of widespread patterns, practices, and customs of officers within the HCSO, including Deputies James Malieo and V DeJesus Miranda, Defendant McDarby, and currently unknown JDoes, for violating Doss' constitutional rights by 1) causing his arrest without sufficient probable cause or sufficient evidence support his seizure; 2) fabricating information to justify arresting Doss; and 3) failing to disclose exculpatory information.

262. As alleged in this Complaint, Defendant Chronister failed to train and/or effectively discipline HCSO employees adequately regarding truthfully representing the facts of an interaction with an arrestee, disclosure of evidence, including materially exculpatory evidence, and impeachment evidence; reliance on statements by incentivized informants, even if they are TPD Officers.

263. The failure to train or discipline HCSO adequately includes the named Deputies McDarby, Malieo, Miranda, and unknown JDoes,

entering into agreements and conspiracies to violate an innocent person's rights or other inducements for their cooperation; writing of police reports, properly taking investigative notes; and properly disclosing information during criminal proceedings.

264. As the final policymaker, Defendant Chronister knew or should have known that Defendant McDarby and unknown JDoes were unfit or, at minimum, incompetent regarding perjury investigations.

265. At all times relevant to this complaint, and specifically, Count Three, Defendant Chronister failed to adequately supervise his HCSO employees who engaged in perjury investigations, which permitted those employees, including Defendants McDarby and currently unknown HCSO JDoes, to engage in the misconduct causing the violations of Doss rights.

266. As a result of Defendant McDarby's misconduct and that of unknown JDoes, as described in this Count and Count Three, Doss experienced severe suffering, including loss of liberty, loss of his financial and physical interest in his property, great mental anguish, humiliation, degradation, psychological and emotional pain, and suffering, and other damages as set forth above.

**WHEREFORE**, **AS TO COUNT SIXTEEN**, Doss prays this Court grants the following relief Against Defendant Chronister As Sheriff of Hillsborough County:

a. Judgment for compensatory damages above $100,000.00;

b. Judgment for punitive damages of $100,000;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

## COUNT SEVENTEEN:
### State Law Claim for Respondent Superior Against Defendant Chronister As Sheriff of Hillsborough County

274. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

273. While committing the misconduct alleged in this Complaint, TPD Officer Defendants Victor, Kennedy, and unknown Tampa JDoes were employees, members, and agents of the City of Tampa, acting at all relevant times within the scope of their employment, and Defendant Tampa is liable as principal for all torts committed by its agents.

**WHEREFORE**, **AS TO COUNT SEVENTEEN**, Doss prays this Court grants the following relief Against Defendant Chronister As Sheriff of Hillsborough County:

a. Judgment for compensatory damages above $100,000.00;

b. Judgment for punitive damages of $100,000;

c. Cost of suit;

d. Declaratory Judgements as this Court determines just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

### COUNT EIGHTEEN:
### State Law Claim for Negligent Supervision Against Tampa
### As A Municipality

275. The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

275. As alleged throughout this Complaint, Defendant Tampa had notice of widespread patterns, practices, and customs within the TPD of police officers, including Defendants Victor, Kennedy, and known and unknown JDoes who routinely 1) created false reports relating to criminal investigations; 2) gathered statements from informants,

including when the informant is a public official, and other incentivized informants without corroborating the truthfulness of the statement; 3) failed to disclose their conspiracies, agreements, and other incentives used to place innocent people into the criminal justice system using false information; 4) failed to provide, maintain, and/or preserve evidence, including physical evidence that supports a claim of probable cause; and (5) failed to disclose exculpatory evidence to concerned parties during criminal proceedings.

276.  As alleged more fully above in Count Two, Defendant Tampa failed to adequately train or discipline TPD officers, including Defendants Victor, Kennedy, and known and unknown JDoes, regarding methods for conducting perjury in official proceedings investigations, including but not limited to properly collecting, documenting, and disclosing relevant evidence, including materially exculpatory evidence, and impeachment evidence.

277.  Defendant Tampa failed to adequately train or discipline TPD officers, including Defendants Victor, Kennedy, and known and unknown JDoes, on whether they should blindly rely on statements by incentivized informants, including public officials, judges, or

other police officers.

278. Defendant Tampa failed to adequately train or discipline TPD officers, including Defendants Victor, Kennedy, and known and unknown JDoes, on writing police reports with an honest accounting of events associated with their investigation, preserving investigative notes, and providing all associated discovery information for criminal proceedings.

279. The City of Tampa, acting through its agents and policymakers, knew or should have known that the Defendant Police Officers Victor, Kennedy, and the unknown JDoes who helped further their bogus investigation were unfit and incompetent at conducting investigations related to real estate, mortgages, and perjury investigations.

280. At all times relevant to this complaint, Defendant Tampa failed to adequately supervise its employees involved in criminal investigations about perjury in an official proceeding when the witness is a judge, which permitted those employees, including the individual Defendants Victor, Kennedy, and the unknown

JDoes, to engage in the misconduct that violated Doss' fundamental rights.

281. As a result of the TPD Defendants' misconduct described in this Count, D o s s experienced the loss of his liberty a n d extreme mental anguish associated with being hunted by rogue Officers operating under an agreement to arrest, prosecute, and convict him without probable cause, with malicious intent, and wanton disregard for his rights, property, and life.

282. In addition to the losses articulated above, Doss suffered the humiliation of having to explain why TPD Officers would file a false CRA against him if he did not engage in criminal activity, degradation, emotional pains and suffering, loss of his financial property interest in Spinnaker and Tuscanny, and other damages as set forth above.

**WHEREFORE**, **AS TO COUNT EIGHTEEN**, Doss prays this Court grants the following relief Against Defendant Tampa for Negligent Supervision:

a. Judgment for compensatory damages above $100,000.00;

b. Judgment for punitive damages of $100,000;

c. Cost of suit;

d.  Declaratory Judgements as this Court determines just and appropriate;

e.  All other relief as this Honorable Court deems appropriate,

f.  Trial by jury as to all issues so triable.

## COUNT NINETEEN:
### State Law Claim for Respondent Superior Against Tampa
### As A Municipality

276.  The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

283.  While committing the misconduct alleged in this Complaint, TPD Defendants Victor, Kennedy, and the unknown JDoes were employees, members, and agents of Tampa, operating within the scope of their employment. Thus, Defendant Tampa is liable as principal for all torts committed by its agents.

**WHEREFORE**, **AS TO COUNT NINETEEN**, Doss prays this Court grants the following relief Against Defendant Tampa under Respondent Superior:

a.  Judgment for compensatory damages above $1,000,000.00;

b.  Judgment for punitive damages of $1,000,000;

c.  Cost of suit;

d.  Declaratory Judgements as this Court determines just and appropriate;

e.   All other relief as this Honorable Court deems appropriate,

f.   Trial by jury as to all issues so triable.

## COUNT TWENTY:
### State Law Claim for Indemnification

277.   The Introduction, paragraphs 1-18, and paragraphs 26-152, and all applicable paragraphs are incorporated herein by reference as though fully set forth.

287.   Defendant Tampa is lawfully obligated to pay any tort judgment against its employees or agents.

288.   The Police Officer Defendants were employees, members, and agents of the City of Tampa, acting at all relevant times within the scope of their employment in committing the misconduct described in this Complaint. Accordingly, the City of Tampa is responsible for paying any judgment entered against the Police Officer Defendants.

**WHEREFORE**, **AS TO COUNT TWENTY**, Doss seeks a judgment against Defendant City of Tampa in the amounts awarded to Doss against the Police Officer Defendants as damages, costs, and interest, up to the maximum allowable by law.

## Local Rule 3.01(g) Certification

The undersigned certifies that she conferred with Defendants' counsels regarding the relief sought by this motion, and none of The listed Defendants' Counsel opposed this Second Amended Complaint.

## Demand for a Jury Trial

Plaintiff Surgret UraniaDoss hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

Respectfully Submitted,

s/Surgret UraniaDoss
Surgret UraniaDoss
3612 North 55th Street
Tampa, Florida 33619
surgretdoss@gmail.com
813-570-9617

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 17, 2022, the foregoing motion was electronically filed with the Clerk of the Court using the CM/ECF system. Accordingly, a copy of this filing will be sent to the following Attorneys:

## SERVICE LIST

Ivy Rollins at: Ivy.Rollins@myfloridalegal.com for Gregory Holder;

Christopher E. Brown at: chrisbro@teamhcso.com for Sheriff Chad

Chronister; and Ursula Richardson at: Ursula.Richardson@tampagov.net

for the City of Tampa

Respectfully Submitted,

<u>s/Surgret UraniaDoss</u>
Surgret UraniaDoss
