# EXHIBIT A

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## SECOND DISTRICT, POST OFFICE BOX 327, LAKELAND, FL 33802-0327

February 3, 2017

**CASE NO.: 2D17-354**
L.T. No. : 15-CA-000071

Surgret Urania Doss, Intervenor/Interested   v.        Bank Of New York Mellon
Party

| | |
|---|---|
| Appellant / Petitioner(s), | Appellee / Respondent(s). |

## BY ORDER OF THE COURT:

The appellant's "emergency petition for stay of writ of possession and writ of certiorari" is treated as a motion to review that portion of the order on appeal that denies the appellant's motion to stay writ of possession.  <u>See</u> Fla. R. App. P. 9.310(f).

Within 10 days of this order, the appellee shall respond to the motion to review. Execution of the writ of possession, to the extent that execution has not already occurred, is hereby stayed pending this court's review of the motion to review or until further order of this court, whichever is sooner.  It is the responsibility of the appellant to ensure that the entity executing the writ of possession receives notice of this order.

I HEREBY CERTIFY that the foregoing is a true copy of the original court order.

Served:

Kelly Grace  Sanchez, Esq.     Gregory Adam Wallach, Esq.     Bibin Tom Mannattuparampil, Esq.
Andrea Edwards Martin, Esq.  Bank Of New York Mellon        Surgret Urania Doss
Pat Frank, Clerk

td

Mary Elizabeth Kuenzel
Clerk



# EXHIBIT B

# EXHIBIT
# 9


## Related Text Page(s)

Document: **CASE SUMMARY**

Author: **35865 - VICTOR, MICHAEL R**

Related date/time: **Feb-09-2017 (Thu.) 1145**

During the month of February, 2017, I was contacted by the Honorable Judge Greg Holder, who has a civil case, in his courtroom, regarding a pending bankruptcy hearing, involving the suspect (Doss). Judge Holder related that the suspect (Doss) filed sworn document filings with the Clerk of the Court advising that he was indigent, did not own any real property and had no source of income. Judge Holder believing that a fraud was being committed researched the Hillsborough County Property Appraiser's website and located real property owned by the suspect (Doss) and request that this fraud (perjury) be investigated by law enforcement.

The investigation revealed that Doss does own real property and is currently deriving profit by renting it out to the tenants (witnesses). This case is being direct filed with the Hillsborough County State Attorney's Office, for review and prosecution.


## Related Text Page(s)

Document: **INITIAL REPORT**
Author: 35865 - VICTOR, MICHAEL R
Related date/time: **Feb-09-2017 (Thu.) 1145**

On February 9, 2017, at approx. 1145 hrs., I was contacted by the Honorable Judge Greg Holder, who has a civil case, in his courtroom, regarding a pending bankruptcy hearing, involving the suspect (Doss). Judge Holder related that the suspect (Doss) filed sworn document filings with the Clerk of the court advising that he was indigent, did not own any real property and had no source of income. Judge Holder believing that a fraud was being committed researched the Hillsborough County Property Appraiser's website and located real property owned by the suspect (Doss) and request that this fraud (perjury) be investigated by law enforcement.

Based on the offense occurring at the courthouse, I contacted Detective McDarby, Hillsborough County Sheriffs Office and requested his assistance with this investigation. Detective McDarby was currently involved in another investigation and requested that we work it together.

On February 28, 2017, I received an email message through Linkedin, from Greg Doss advising that we needed to talk about the criminal investigation.

On March 21, 2017, I received an email from the Honorable Judge Gregory P. Holder, which contained the transcripts from the February 27, 2017, court hearing involving Sergret Doss.. During this hearing Judge Holder questions Surgret Doss regarding his ownership of the property. Doss explained that he thought his name was taken off in August, however documents filed after that time frame which were signed by Surgret Doss still list him as the owner. Judge Holder asked Doss if he would like to review the documents he (Doss) submitted to the court and Doss declined stating that it wouldn't be necessary.

It should be noted that the Honorable Judge Holder referenced me, by name, in the court hearing as conducting a perjury investigation of Doss and that's where he obtained my name in an attempt to contact me on Linkedin (see attached copy of transcripts).

I conducted a computer search, via the Hillsborough County Property Appraiser's Office website and noted that Surgret Doss currently owned a house, located at 517 Tuscany Street Brandon, Florida..

I contacted Tampa Electric to obtain subscriber information for 717 Tuscany Street Brandon, Florida and was advised that the electrical service was in the name of Becky Jo Hawkins, phone number 724-902-9162.

On April 5, 2017, at approx. 1000 hrs.,Detective J.McDarby, Hillsborough County Sheriffs Office responded to 517 Tuscany Street in an attempt to make contact with the tenant and interview them. Detective McDarby came in contact with Stephon E. King and obtained his statement (see attached report from the Hillsborough County Sheriffs Office).



**TAMPA PD**
**GENERAL OFFENSE HARDCOPY**
REPORT FOR PROSECUTION
GO# 2017-194123 NOT APPROVED          900Z-74 PERJURY IN OFFICIAL PROCEEDING

During Detective McDarby's interview with Stephon King, he related that he (King) rented the property from Greg Doss. Mr. King advised that he recently paid Greg Doss the rent on April 1, 2017, by check. At this time Stephon King related that he could identify Greg Doss by a photograph. Detective McDarby contacted me, via cell phone and advised me of King's statements.

Based on this information, I contacted Detective Vince Leto and requested that he assist me with a photo line up for this investigation.

On April 11, 2017, at approx. 1515 hrs., Sergeant Pat Kennedy and I respond to 517 Tuscany Drive, where Sergeant Kennedy and I could show the tenant (Stephon King) a Tampa Police Department Photo Line Up. Upon arrival, we came in contact with King in the driveway and he invited us into his residence to talk. While inside the residence, I obtained his brief interview (see attached).

At this time, Sergeant Kennedy and I explained the Tampa Police Department Photo Line Up process to him and Sergeant Kennedy, who had no investigative knowledge of this investigation read the form to Stephon King, which he said he understood and signed it (see attached copy).

Sergeant Kennedy had six ( 6 ) file folders, each one contained a single image / photograph. Mr. King reviewed them one at a time, he identified the photograph from folder number four (4) as the person he knew as Greg Doss ( Surgret Doss),who was his landlord. Mr. King advised that he was 100 percent sure that this was a person known to him as Greg Doss. At this time, I asked Mr. King to sign the image / photograph, which he did and requested that he indicate in writing how he knew the subject in the picture. The subject identified in this photograph was in fact Doss (see copy). At this time, the interview was terminated and we left the residence.

On April 12, 2017, at approx. 0900 hrs.,Surgret Doss responded to the Tampa Police Department attempting to make a complaint on this writer for contacting his tenant.

At approx. 1300 hrs, Sergeant P. Kennedy, my direct supervisor, called Surgret Doss via a cell phone number that Doss left at city hall. During this phone call Sergeant Kennedy obtained a non custodial interview, via telephone, with Doss.. A copy of this phone call was downloaded to a disc and entered into the property room, as evidence.

On April 12, 2017, at approx. 1429 hrs, I contacted Becky Jo Hawkins,via telephone, who is the tenant residing at 517 Tuscany Street and obtained her statement (see attached).

On April 13, 2017, at approx. 0900 hrs., I responded to the Hillsborough County Property Appraiser's Office, where I met with Will Sheppard, Attorney for the Hillsborough County Property Appraiser, and Merary Gomez, his legal assistant. At our meeting, Will Sheppard advised me that Doss obtains properties from David Acevedo, who has a connection with Home Owner's Associations. Will Sheppard related that Acevedo purchases these foreclosed properties from Home Owner's Associations, sells the property to Doss, via Quit Claim Deed, while the bank starts foreclosure proceedings against the legal home owner.

# EXHIBIT C

**In the Matter Of:**

THE BANK OF NEW YORK MELLON vs. MICHAEL B. WIOR, et al.

---

## HEARING BEFORE

## THE HONORABLE GREGORY P. HOLDER

*February 27, 2017*

---



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150

```
 1    IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
       OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
 2                         CIVIL DIVISION

 3
      THE BANK OF NEW YORK MELLON f/k/a THE
 4    BANK OF NEW YORK, AS TRUSTEE FOR THE
      CERTIFICATEHOLDERS OF THE CWALT, INC.,
 5    ALTERNATIVE LOAN TRUST 2005-44 MORTGAGE
      PASS-THROUGH CERTIFICATES, SERIES          Case No.
 6    2005-44,                                   2015-CA-000071

 7                         Plaintiff,

 8    vs.

 9    MICHAEL B. WIOR, et al.,

10                         Defendants.
      _ _ _ _ _ _ _ _ _ _ _ _ _  /
11

12
                      CASE MANAGEMENT CONFERENCE
13

14       BEFORE:           THE HONORABLE GREGORY P. HOLDER
                           Circuit Court Judge
15

16       DATE:             February 27, 2017

17
         TIME:             2:34 p.m. to 2:42 p.m.
18

19       PLACE:            HILLSBOROUGH COUNTY COURTHOUSE
                           800 East Twiggs Street
20                         Tampa, Florida

21
         REPORTED BY:      DAWN M. DANTSCHISCH, RMR, CRR
22                         Notary Public, State of
                           Florida at Large
23

24                         Pages 1 to 12

25
```



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

```
 1                    APPEARANCES:

 2


 3       DEBBIE SATYAL, ESQUIRE
         Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
 4       100 Southeast Third Avenue, Suite 1620
         Fort Lauderdale, Florida 33394
 5       (954) 768-1619

 6       - and -

 7       ROBERTA KOHN, ESQUIRE
         Law Offices of Roberta Kohn, P.A.
 8       2404 Creel Lane, Suite 101
         Wesley Chapel, Florida 33544
 9       (813) 909-0506
                 Attorneys for Plaintiff
10
     ALSO PRESENT:
11
         Surgret Urania Doss
12       4336 Spinnaker Cove Lane
         Tampa, Florida 33615
13


14

15                         INDEX

16                                              PAGE

     PROCEEDINGS                                  3
17
     REPORTER'S CERTIFICATE                      12
18

19

20

21

22

23

24

25
```



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

```
 1              P R O C E E D I N G S
 2       THE COURT:  All right.  Well, go ahead and
 3  announce your names for the record, and we'll
 4  proceed with the case management.
 5       MS. KOHN:  Thank you.  Roberta Kohn for the
 6  plaintiff.  And to my right --
 7       MS. SATYAL:  Debbie Satyal, also for the
 8  plaintiff.
 9       THE COURT:  Good.  Thank you.  I went ahead,
10  even though I checked the Second District Court of
11  Appeal website this morning and again this
12  afternoon and repeatedly throughout the day to see
13  what, if anything, had been done by our appellate
14  court as it relates to the -- what they have been
15  treating as a motion to review, whatever that is.
16  And in any event, there's been no definitive
17  action, and as such, we're pretty much stayed.
18       Oh.  Very good.
19       THE BAILIFF:  Come on down, sir.  Take a seat
20  right there for me, sir.
21       (Mr. Doss and an unidentified female entered
22  the hearing room.)
23       MR. DOSS:  Good afternoon, people.
24       MS. KOHN:  Good afternoon.
25       THE COURT:  Ma'am, you can join us at the
```



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

THE BANK OF NEW YORK MELLON vs. MICHAEL B. WIOR, et al.
THE HONORABLE GREGORY P. HOLDER  on 02/27/2017

HEARING BEFORE
Page 4

1  table.  All are welcome.  It's up to you.

2       UNIDENTIFIED FEMALE:  I'm fine.  Thank you.

3       THE COURT:  Mr. Doss, although you have not

4  yet been granted intervenor status by this Court,

5  and while we're still awaiting a ruling from the

6  Second District Court of Appeal, I felt it might

7  be productive to have a case management

8  conference, given the status of this case as well

9  as other cases in which you are an attempted

10  intervenor.

11       Because, indeed, sir, I note that in your

12  filings within this case, you have indicated that

13  you are indigent and own no property; and yet in

14  your own affidavit filed in this case, you swear

15  that you are the owner of this property, having

16  received title from one each Mr. David Acevedo.

17       Obviously, those two representations are in

18  direct conflict.  And so, sir, I thought at least

19  today I would question you as it relates to your

20  sworn filing where you indicate you own no

21  property in this county, this state, or this

22  nation.

23       MR. DOSS:  When I filed the affidavit relative

24  to this action, they had already removed me from

25  the ownership for the --



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

1    THE COURT:  Negative.  Final action has not

2  been taken.  And, indeed, in this case, as the

3  Second District Court of Appeal as pointed out, we

4  do not have finality at this point.

5    You filed this application for determination

6  on the 31st of January, 2017.  I have one in this

7  case.  I'm assuming that there are other documents

8  within the appellate courts and within these other

9  cases.  And if you'd like, I can give you the case

10  numbers:  16-CA-6505 before Judge Foster,

11  15-CA-6133 before Judge Cook, and 15-CA-8473

12  before Judge Barbas, where, in fact, I witnessed

13  your representation.

14    MR. DOSS:  8473?

15    THE COURT:  That would be correct.  I'm

16  assuming you know the names of these cases and the

17  numbers.

18    MR. DOSS:  No, I'm familiar with the cases.

19  I'm familiar with the cases.

20    THE COURT:  In each of those cases, you are

21  claiming to be an owner of those real properties;

22  again, in direct contravention of your sworn

23  statement January 31, 2017.

24    Sir, could you explain that discrepancy?

25    MR. DOSS:  At the time, the properties had



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

1  already been removed from my name.  So at the time

2  that I filed the affidavit -- I think this

3  property was removed sometime in August, and I

4  actually think I attached everything in my notice

5  for appeal.  The property was removed prior to me

6  doing the affidavit.

7     THE COURT:  Well, it was after that that you

8  filed your motion to intervene claiming that you

9  owned this property.  I can go back to the court

10  filings and actually show you the documents you've

11  filed, but I don't think that's necessary.

12     MR. DOSS:  I can -- no, I don't think it would

13  be necessary, either.  But whatever has to be done

14  in order for me to be able to make my lawful

15  position -- take my lawful position.  My issue of

16  standing is --

17     THE COURT:  Arguably, you've committed

18  perjury.  I've referred this matter to the Tampa

19  Police Department.

20     MR. DOSS:  Okay.

21     THE COURT:  I can tell you Detective Michael

22  Victor is actively investigating this case.

23     MR. DOSS:  Okay.

24     THE COURT:  What do you have to say?

25     MR. DOSS:  There is no willful intent to



DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

1  perjure myself.  At the time that that affidavit

2  was filed --

3     THE COURT:  This is a sworn document.

4     MR. DOSS:  No, I understand the legality of

5  it, Judge Holder, quite clearly.

6     THE COURT:  Okay.

7     MR. DOSS:  I've taken oaths before.

8     THE COURT:  And the illegality.

9     MR. DOSS:  Well, the -- I don't think there's

10  any illegality relative to me.  The illegality is

11  somebody filing an action where they didn't have

12  standing.

13     THE COURT:  Who is David Acevedo?

14     MR. DOSS:  He was the owner of --

15     THE COURT:  You've claimed to have received

16  property from him in two separate cases.  I'd like

17  to know who he is.

18     MR. DOSS:  Four separate cases.

19     THE COURT:  Well, at least two that I've been

20  able to locate.

21     MR. DOSS:  Okay.  Well, there's been four.  He

22  bought the property from the auction that was

23  conducted by Pat Frank.  David Acevedo was the

24  prior owner of the property.

25     THE COURT:  What is your relationship with



DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

 1  Mr. Acevedo?

 2      MR. DOSS:  I just know him.

 3      THE COURT:  And do you live -- which property

 4  do you live in?

 5      MR. DOSS:  I live?

 6      THE COURT:  Reside.

 7      MR. DOSS:  Okay.  4336 Spinnaker Cove.

 8      THE COURT:  Okay.  The property the subject of

 9  this action.  Okay.  So, these other properties,

10  do you lease those out?

11      MR. DOSS:  I was.

12      THE COURT:  You were?

13      MR. DOSS:  I lease out 517 Tuscany.

14      THE COURT:  I see.  Well, at this point,

15  again, this action is, for all intent and

16  purposes, stayed until we receive word from the

17  Second DCA.

18      Did you have anything to add, ma'am?  I know

19  that I've monopolized this conversation.

20      MS. KOHN:  You're doing just fine, Your Honor.

21      THE COURT:  Thank you.

22      MR. DOSS:  To whom -- who can -- and they are?

23      THE COURT:  Counsel representing the

24  plaintiff.

25      MR. DOSS:  Well, for Bank of New York Mellon?



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

1    Can we have that on the record?

2        And are you for me?  Are you the one that I

3    requested, the court reporter?

4        THE REPORTER:  I was hired through Discovery

5    Litigation.

6        THE COURT:  So, who's responsible --

7        MS. KOHN:  I believe we hired her.

8        MS. SATYAL:  I hired her.

9        THE COURT:  Okay.

10       MR. DOSS:  Because I requested one as well.

11       THE COURT:  Very well.

12       MR. DOSS:  Okay.

13       THE COURT:  All right.  Mr. Doss, anything

14   else to add before we adjourn for today, sir?

15       MR. DOSS:  Is that it?  So they -- can I have

16   their names, as well as any documentation that

17   would show --

18       THE COURT:  Documentation, no.  There's no

19   documentation that's been provided to this Court

20   today.  The purpose of this hearing was to at

21   least investigate some of these allegations that

22   relate to this case.  No further action is being

23   taken.

24       It was important to have a court reporter here

25   to have your responses recorded so that there was



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

THE BANK OF NEW YORK MELLON vs. MICHAEL B. WIOR, et al.
THE HONORABLE GREGORY P. HOLDER  on 02/27/2017

HEARING BEFORE
Page 10

1    a record of your responses as it relates to the

2    Court's questions.

3         MR. DOSS:  Understood.

4         THE COURT:  And I would like the copy of the

5    transcript --

6         MS. KOHN:  Yes, Your Honor.

7         THE COURT:  -- filed in the court file.

8         MS. KOHN:  No problem.

9         THE COURT:  We will await word from the Second

10   District Court of Appeal.  And immediately upon

11   receiving that final ruling, we'll obviously set

12   another either case management or some other

13   hearing related to this property.  I'd like to

14   thank you all for coming today and participating

15   in this hearing.

16        MS. KOHN:  Thank you, Your Honor.

17        MS. SATYAL:  Thank you, Your Honor.

18        MR. DOSS:  Am I not going to be able to get

19   any information related to these two individuals?

20   I assume their status or standing for the bank --

21   and which bank are we talking about?

22        MS. SATYAL:  My notice of appearance is

23   recorded in the court of appeals case and was also

24   mailed to you --

25        MR. DOSS:  And you are?



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

THE BANK OF NEW YORK MELLON vs. MICHAEL B. WIOR, et al.
THE HONORABLE GREGORY P. HOLDER   on 02/27/2017

HEARING BEFORE
Page 11

1        MS. SATYAL:  -- at the property.

2        Debbie Satyal.

3        MR. DOSS:  Okay.  I think I remember that.

4        THE COURT:  Thank you all very much.

5        MS. KOHN:  Thank you, Your Honor.

6        THE COURT:  Have a nice day.

7        MS. KOHN:  Yes, sir.

8        MR. DOSS:  And you are?

9        MS. KOHN:  I'm local counsel for the plaintiff

10  in this matter.  My name is Roberta Kohn.

11        MR. DOSS:  You're both local counsel at the

12  same time?

13        MS. KOHN:  No.  She's doing the appeal, and

14  I'm in the circuit court case.

15        MR. DOSS:  And you are?

16        MS. KOHN:  I just told you.  It's Roberta --

17        THE COURT:  Thank you.  We're done.

18        MS. KOHN:  Thank you, Your Honor.

19        (Proceedings concluded at 2:42 p.m.)

20

21

22

23

24

25



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

THE BANK OF NEW YORK MELLON vs. MICHAEL B. WIOR, et al.
THE HONORABLE GREGORY P. HOLDER  on 02/27/2017

HEARING BEFORE
Page 12

1                    REPORTER'S CERTIFICATE

2

3    STATE OF FLORIDA

4    COUNTY OF HILLSBOROUGH

5

6           I, Dawn M. Dantschisch, Registered Merit

7    Reporter, Certified Realtime Reporter, certify that I

8    was authorized to and did stenographically report the
     foregoing proceedings and that the transcript is a true
9    and complete record of my stenographic notes.

10

          I further certify that I am not a relative,
11   employee, attorney, or counsel of any of the parties,
     nor am I a relative or employee of any of the parties'
12   attorney or counsel connected with the action, nor am I
     financially interested in the action.

13

14          Dated this 7th day of March, 2017.

15

16          _Dawn m. Dantschisch_

17

18          Dawn M. Dantschisch, RMR, CRR

19

20

21

22

23

24

25



37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

**1**

15-CA-6133
5:11

15-CA-8473
5:11

16-CA-6505
5:10

**2**

**2017**  5:6,23

**2:42**  11:19

**3**

**31**  5:23

**31st**  5:6

**4**

**4336**  8:7

**5**

**517**  8:13

**8**

**8473**  5:14

**A**

able  6:14 7:20
10:18

about  10:21

Acevedo  4:16
7:13,23 8:1

action  3:17
4:24 5:1 7:11

8:9,15 9:22

actively  6:22

actually  6:4,10

add  8:18 9:14

adjourn  9:14

affidavit  4:14,
23 6:2,6 7:1

after  6:7

afternoon  3:12,
23,24

again  3:11 5:22
8:15

ahead  3:2,9

all  3:2 4:1 8:15
9:13 10:14
11:4

allegations
9:21

already  4:24
6:1

also  3:7 10:23

although  4:3

Am  10:18

announce  3:3

another  10:12

anything  3:13
8:18 9:13

appeal  3:11 4:6
5:3 6:5 10:10
11:13

appeals  10:23

appearance
10:22

appellate  3:13
5:8

application  5:5

Arguably  6:17

assume  10:20

assuming  5:7,
16

attached  6:4

attempted  4:9

auction  7:22

August  6:3

await  10:9

awaiting  4:5

**B**

back  6:9

BAILIFF  3:19

bank  8:25
10:20,21

Barbas  5:12

Because  4:11
9:10

before  5:10,11,
12 7:7 9:14

being  9:22

believe  9:7

both  11:11

bought  7:22

**C**

case  3:4 4:7,8,
12,14 5:2,7,9
6:22 9:22
10:12,23 11:14

cases  4:9 5:9,
16,18,19,20

7:16,18

checked  3:10

circuit  11:14

claimed  7:15

claiming  5:21
6:8

clearly  7:5

Come  3:19

coming  10:14

committed  6:17

concluded
11:19

conducted  7:23

conference  4:8

conflict  4:18

contravention
5:22

conversation
8:19

Cook  5:11

copy  10:4

correct  5:15

could  5:24

counsel  8:23
11:9,11

county  4:21

court  3:2,9,10,
14,25 4:3,4,6
5:1,3,15,20
6:7,9,17,21,24
7:3,6,8,13,15,
19,25 8:3,6,8,
12,14,21,23
9:3,6,9,11,13,
18,19,24 10:4,

7,9,10,23 11:4,
6,14,17

Court's  10:2

courts  5:8

Cove  8:7

**D**

David  4:16
7:13,23

day  3:12 11:6

DCA  8:17

Debbie  3:7 11:2

definitive  3:16

Department
6:19

Detective  6:21

determination
5:5

didn't  7:11

direct  4:18 5:22

Discovery  9:4

discrepancy
5:24

District  3:10
4:6 5:3 10:10

document  7:3

documentation
9:16,18,19

documents  5:7
6:10

doing  6:6 8:20
11:13

done  3:13 6:13
11:17



**DISCOVERY**
**LITIGATION SERVICES**
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

THE BANK OF NEW YORK MELLON vs. MICHAEL B. WIOR, et al.
THE HONORABLE GREGORY P. HOLDER   on 02/27/2017

HEARING BEFORE
Index: Doss..obviously

**Doss**  3:21,23
4:3,23  5:14,18,
25  6:12,20,23,
25  7:4,7,9,14,
18,21  8:2,5,7,
11,13,22,25
9:10,12,13,15
10:3,18,25
11:3,8,11,15

**down**  3:19

---

**E**

**each**  4:16  5:20

**either**  6:13
10:12

**else**  9:14

**entered**  3:21

**even**  3:10

**event**  3:16

**everything**  6:4

**explain**  5:24

---

**F**

**fact**  5:12

**familiar**  5:18,19

**felt**  4:6

**female**  3:21  4:2

**file**  10:7

**filed**  4:14,23
5:5  6:2,8,11
7:2  10:7

**filing**  4:20  7:11

**filings**  4:12
6:10

**final**  5:1  10:11

**finality**  5:4

**fine**  4:2  8:20

**Foster**  5:10

**four**  7:18,21

**Frank**  7:23

**further**  9:22

---

**G**

**give**  5:9

**given**  4:8

**going**  10:18

**good**  3:9,18,
23,24

**granted**  4:4

---

**H**

**having**  4:15

**hearing**  3:22
9:20  10:13,15

**here**  9:24

**hired**  9:4,7,8

**Holder**  7:5

**Honor**  8:20
10:6,16,17
11:5,18

---

**I**

**I'd**  7:16  10:13

**I'm**  4:2  5:7,15,
18,19  11:9,14

**I've**  6:18  7:7,19
8:19

**illegality**  7:8,10

**immediately**
10:10

**important**  9:24

**indeed**  4:11  5:2

**indicate**  4:20

**indicated**  4:12

**indigent**  4:13

**individuals**
10:19

**information**
10:19

**intent**  6:25  8:15

**intervene**  6:8

**intervenor**  4:4,
10

**investigate**
9:21

**investigating**
6:22

**issue**  6:15

**It's**  4:1  11:16

---

**J**

**January**  5:6,23

**join**  3:25

**Judge**  5:10,11,
12  7:5

**just**  8:2,20
11:16

---

**K**

**know**  5:16  7:17
8:2,18

**Kohn**  3:5,24

**8:20  9:7  10:6,
8,16  11:5,7,9,
10,13,16,18

---

**L**

**lawful**  6:14,15

**lease**  8:10,13

**least**  4:18  7:19
9:21

**legality**  7:4

**like**  5:9  7:16
10:4,13

**Litigation**  9:5

**live**  8:3,4,5

**local**  11:9,11

**locate**  7:20

---

**M**

**ma'am**  3:25
8:18

**mailed**  10:24

**make**  6:14

**management**
3:4  4:7  10:12

**matter**  6:18
11:10

**Mellon**  8:25

**Michael**  6:21

**might**  4:6

**monopolized**
8:19

**morning**  3:11

**motion**  3:15  6:8

**mr**  3:21,23  4:3,

16,23  5:14,18,
25  6:12,20,23,
25  7:4,7,9,14,
18,21  8:1,2,5,
7,11,13,22,25
9:10,12,13,15
10:3,18,25
11:3,8,11,15

**MS**  3:5,7,24
8:20  9:7,8
10:6,8,16,17,
22  11:1,5,7,9,
13,16,18

**much**  3:17  11:4

**myself**  7:1

---

**N**

**name**  6:1  11:10

**names**  3:3  5:16
9:16

**nation**  4:22

**necessary**
6:11,13

**Negative**  5:1

**New**  8:25

**nice**  11:6

**note**  4:11

**notice**  6:4
10:22

**numbers**  5:10,
17

---

**O**

**oaths**  7:7

**obviously**  4:17
10:11



**DISCOVERY LITIGATION SERVICES**
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

THE BANK OF NEW YORK MELLON vs. MICHAEL B. WIOR, et al.
THE HONORABLE GREGORY P. HOLDER   on 02/27/2017

HEARING BEFORE
Index: Oh..told

**Oh** 3:18

**Okay** 6:20,23
7:6,21 8:7,8,9
9:9,12 11:3

**one** 4:16 5:6
9:2,10

**order** 6:14

**other** 4:9 5:7,8
8:9 10:12

**our** 3:13

**out** 5:3 8:10,13

**own** 4:13,14,20

**owned** 6:9

**owner** 4:15
5:21 7:14,24

**ownership** 4:25

---

**P**

**p.m.** 11:19

**participating**
10:14

**Pat** 7:23

**people** 3:23

**perjure** 7:1

**perjury** 6:18

**plaintiff** 3:6,8
8:24 11:9

**point** 5:4 8:14

**pointed** 5:3

**Police** 6:19

**position** 6:15

**pretty** 3:17

**prior** 6:5 7:24

**problem** 10:8

**proceed** 3:4

**proceedings**
11:19

**productive** 4:7

**properties**
5:21,25 8:9

**property** 4:13,
15,21 6:3,5,9
7:16,22,24 8:3,
8 10:13 11:1

**provided** 9:19

**purpose** 9:20

**purposes** 8:16

---

**Q**

**question** 4:19

**questions** 10:2

**quite** 7:5

---

**R**

**real** 5:21

**receive** 8:16

**received** 4:16
7:15

**receiving** 10:11

**record** 3:3 9:1
10:1

**recorded** 9:25
10:23

**referred** 6:18

**relate** 9:22

**related** 10:13,
19

**relates** 3:14
4:19 10:1

**relationship**
7:25

**relative** 4:23
7:10

**remember** 11:3

**removed** 4:24
6:1,3,5

**repeatedly** 3:12

**reporter** 9:3,4,
24

**representation**
5:13

**representations**
4:17

**representing**
8:23

**requested** 9:3,
10

**Reside** 8:6

**responses** 9:25
10:1

**responsible** 9:6

**review** 3:15

**right** 3:2,6,20
9:13

**Roberta** 3:5
11:10,16

**room** 3:22

**ruling** 4:5
10:11

---

**S**

**same** 11:12

**Satyal** 3:7 9:8
10:17,22 11:1,
2

**seat** 3:19

**Second** 3:10
4:6 5:3 8:17
10:9

**see** 3:12 8:14

**separate** 7:16,
18

**set** 10:11

**She's** 11:13

**show** 6:10 9:17

**sir** 3:19,20
4:11,18 5:24
9:14 11:7

**some** 9:21
10:12

**somebody** 7:11

**sometime** 6:3

**Spinnaker** 8:7

**standing** 6:16
7:12 10:20

**state** 4:21

**statement** 5:23

**status** 4:4,8
10:20

**stayed** 3:17
8:16

**still** 4:5

**subject** 8:8

**such** 3:17

**swear** 4:14

**sworn** 4:20
5:22 7:3

---

**T**

**table** 4:1

**take** 3:19 6:15

**taken** 5:2 7:7
9:23

**talking** 10:21

**Tampa** 6:18

**tell** 6:21

**thank** 3:5,9 4:2
8:21 10:14,16,
17 11:4,5,17,
18

**that's** 6:11 9:19

**their** 9:16
10:20

**there's** 3:16
7:9,21 9:18

**these** 5:8,16
8:9 9:21 10:19

**think** 6:2,4,11,
12 7:9 11:3

**those** 4:17
5:20,21 8:10

**though** 3:10

**thought** 4:18

**through** 9:4

**throughout**
3:12

**time** 5:25 6:1
7:1 11:12

**title** 4:16

**today** 4:19
9:14,20 10:14

**told** 11:16



DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

37 North Orange Avenue
Suite 500
Orlando, Florida 32801
321.710.2150
www.DiscoveryLit.com

# EXHIBIT D

DIRECT FILE  ~~ID~~  2108861

## CRIMINAL REPORT AFFIDAVIT / NOTICE TO APPEAR

COURT CASE/ J.F. ID # ___ SAO # 215685 OBTS # ___ GRID # 141

AGENCY REPORT # 17-194123 AGENCY NAME TAMPA PD ORI # 02902

ARREST
- ☐ Probable Cause ☒ Adult
- ☐ Capias ☐ Juvenile
- ☐ Fugitive Warrant ☐ Delinquency
- ☐ VOP/VOCC ☐ Dependency
- ☐ Warrant ☒ Felony
- ☐ Juvenile Pickup ☐ Misdemeanor
- ☐ Traffic MISD
- ☐ Traffic FEL
- ☐ Ordinance
- ☐ Pickup
- ☐ Other

LOCATION OF OFFENSE 800 TWIGGS ST DATE OF OFFENSE 1/31/17 TIME OF OFFENSE 0800-1700

WITHIN:
TAMPA ☐ PLANT CITY ☐ TEMPLE TERRACE ☐ UNINCORPORATED AREA ☐ SUPPLEMENTAL CRA ATTACHED ☐

COURT:
TAMPA COURT ☒ PLANT CITY CT ☐    17-27111

REQUEST FOR:
☒ Direct File/SAO Review
☐ Warrant
☐ Summons
☐ Juvenile Pickup

LOCATION OF ARREST ___ DATE OF ARREST ___ TIME OF ARREST ___

BOOKING # ___ SOID # ___ WEAPON TYPE ___ WEAPON SEIZED Yes ☐ No ☐

NOTICE TO APPEAR:
☐ Arresting officer
☐ Booking supervising officer

NAME DOSS, SURGRET ___ ALIAS GREG DOSS

RACE:
W-White I-American Indian/Alaskan Native HW-Hispanic White HB-Hispanic Black B-Black O-Oriental/Asian
Race B SEX M D.O.B. 25 5 1968 APPROXIMATE AGE ___

COMPLEXION DK BUILD MED
HEIGHT 5'8 WEIGHT ___
COLOR: EYES BR HAIR BK

LOCAL ADDRESS (Street, Apt. #, City, State, Zip) 3612 55th ST TAMPA, FL 33__ Ph # 813-387-9350

Permanent Address (Street, Apt. #, City, State, Zip) ___ Ph #: ___

Business Address (Street, Apt. #, City, State, Zip) ___ Ph #: ___

Drivers License No. D200798650850 State FL SS # 593 26 3239 PLACE OF BIRTH GA DOC # ___

Gang Member: Yes ☐ No ☒ Gang Name ___

SCARS, MARKS, TATOOS, UNIQUE FEATURES (Loc., Type, Desc.) ___

IF JUVENILE:
School Name ___
Mother/Guardian ___ Address ___ Ph #: ___
Father/Guardian ___ Address ___ Ph #: ___
Released To: JAC ☐ Parent ☐ Guardian ☐ Other Relationship ☐ ___ ☐ Other

Co-Defendant (Last, First, Middle) ___
Arrested ☐ At Large ☐ Capias/Warrant Requested ☐ Felony ☐ Sex: ___ Race: ___ DOB ___ Misdemeanor ☐ Juvenile ☐

Co-Defendant (Last, First, Middle) ___
Arrested ☐ At Large ☐ Capias/Warrant Requested ☐ Felony ☐ Sex: ___ Race: ___ DOB ___ Misdemeanor ☐ Juvenile ☐

| STATUTE (subsec.) / ORD | DV | CP | CHARGE STATUS | BOND SET | CHARGE | TRAFFIC CITATION # | DRUG ACT/TYPE |
|---|---|---|---|---|---|---|---|
| 837.02 (1) | | | F | | FALSE OFFICIAL STATEMENTS (PERJURY) IN OFFICIAL PROCEEDING | | |
| | | | | | | | |
| | | | | | | | |

CHARGE STATUS: F-Felony M-Misdemeanor T-Traffic O-Ordinance FT-Felony Traffic DV-Domestic Violence CP-Child Present
ACTIVITY: N-N/A P-Possess S-Sell B-Buy T-Traffic R-Smuggle D-Deliver E-Use K-Dispense/Distribute M-Manufacture/Produce/Cultivate Z-Other
Type: N-N/A A-Amphetamine B-Barbiturate C-Cocaine E-Heroin H-Hallucinogen M-Marijuana O-Opium/Deriv. P-Paraphernalia/Equipment S-Synthetic U-Unknown Z-Other

A LIST OF TANGIBLE EVIDENCE (If none, write "None") (Evidence List must be provided for all NOTICES TO APPEAR)

| DESCRIPTION/AMOUNT PER UNIT | RECOVERED BY | GIVEN TO | PRESENT LOCATION |
|---|---|---|---|
| DOCUMENTS, PHOTO LINE UP, RECORDED PH COLL | AFFIANT | → | TAMPA PD |

Mandatory Appearance in Court ☐    You need not appear in Court, but must comply with instructions on Reverse Side. ☐

COURT INFORMATION: You must appear in County Court at the:
COURTHOUSE TOWER ANNEX, 801 E. TWIGGS STREET ☐     COUNTY OFFICE BUILDING, MICHIGAN & REYNOLDS STREET ☐
(Corner of Jefferson & Twiggs Street), TAMPA, FLORIDA 33602     PLANT CITY 33566

Division ___ COURTROOM ___ ON ___ ,20 ___ , AT ___ a.m. ☐ p.m. ☐

I agree to appear at the time and place designated above to answer for the offense(s) charged or to pay the fine subscribed. I understand that if I willfully fail to appear before the Court as required by the Notice to Appear, I may be held in contempt of Court and a warrant for my arrest shall be issued. You may also be charged with the crime of Failure to Appear, F.S. 843.15. I certify that my address as listed above is correct and I further understand that I have a continuing duty to advise the Court of any changes in my address as set forth above.

Signature of Defendant/Juvenile ___ Parent or Guardian (If Juvenile) ___

White - Clerk of Court     Green - State Attorney     Canary - Arresting Agency     Pink - Central Booking/Detention Center     Goldenrod - Defendant

Use Ballpoint Pen Press Firmly

ADMINISTRATION

DEFENDANT/DEPENDENT

CO-DEFENDANT(S)

CHARGE(S)

EVIDENCE LIST

NOTICE TO APPEAR

AGENCY NAME

REPORT # 17-194123

# SUPPLEMENTAL CRIMINAL
# REPORT AFFIDAVIT

ORIGINAL CRA # 2108861

COURT CASE /
J.F. ID # _____ SAO # _____ OBTS # _____

PAGE **2** OF **2**

AGENCY REPORT # **17-194123** AGENCY NAME **TAMPA PD** ORI # **02902**

LOCATION OF OFFENSE **800 E TWIGGS ST**  DATE OF OFFENSE **1/31/17**  TIME OF OFFENSE **0800-1700**

WITHIN:
TAMPA ☑ PLANT CITY ☐ TEMPLE TERRACE ☐ UNINCORPORATED AREA ☐

COURT:
TAMPA COURT ☑ PLANT CITY CT ☐ BOOKING # _____ SOID # _____ ARREST DATE _____

NAME **DOSS, SURGRET U** ALIAS **GREG DOSS**
Last / First / Middle

RACE:
W-White I-American Indian/Alaskan Native HW-Hispanic White HB-Hispanic Black B-Black O-Oriental/Asian
Race **B** SEX **M** D.O.B. ____ MO / DAY / YEAR APPROXIMATE AGE

| STATUTE (subsec.) / ORD # | DV | CP | CHARGE STATUS | BOND SET | CHARGE | TRAFFIC CITATION # | DRUG ACT/TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**CHARGE STATUS:** F-Felony M-Misdemeanor T-Traffic O-Ordinance FT-Felony Traffic DV-Domestic Violence CP-Child Present
**ACTIVITY:** N-N/A P-Possess S-Sell B-Buy T-Traffic R-Smuggle D-Deliver E-Use K-Dispense/Distribute M-Manufacture/Produce/Cultivate Z-Other
**TYPE:** N-N/A A-Amphetamine B-Barbiturate C-Cocaine E-Heroin H-Hallucinogen M-Marijuana O-Opium/Deriv. P-Paraphernalia/Equipment S-Synthetic U-Unknown Z-Other

Co-Defendant (Last, First, Middle) _____ Sex: ___ Race: ___ DOB ___
Arrested ☐ At Large ☐ Caplas/Warrant Requested ☐ Felony ☐ Misdemeanor ☐ Juvenile ☐

Co-Defendant (Last, First, Middle) _____ Sex: ___ Race: ___ DOB ___
Arrested ☐ At Large ☐ Caplas/Warrant Requested ☐ Felony ☐ Misdemeanor ☐ Juvenile ☐

A LIST OF TANGIBLE EVIDENCE (If none, write "None") (Evidence List must be provided for all NOTICES TO APPEAR)

| DESCRIPTION/AMOUNT PER UNIT | RECOVERED BY | GIVEN TO | PRESENT LOCATION |
|---|---|---|---|
| A. COPIE OF CLERK. 2) LEASES, RENTAL RECEIPTS (SIGNED) MONSP CROSE) | AFFIANT | | TAMPA POLICE PROPERTY ROOM |

Additional facts to establish probable cause that a crime was committed by the defendant or that the child is dependent  THE DEF'S
WILLFUL ACTIONS by COMPLETING THIS SWORN DOCUMENT
WITH FALSE INFORMATION & FILING IT WITH THE HILLSBOROUGH
COUNTY CLERK OF COURT CLEARLY CONFIRM THAT HE
KNOWINGLY COMMITTED PERJURY

THE DEF ALSO FILED COURT MOTIONS WITH THE CLERK OF
COURT CONFIRMING OWNERSHIP IN LEGAL PROCESS (BANKRUPTCY)
YOUR AFFIANT CAN POSITIVELY IDENTIFY DEF. DEF IO VIA D.A.V.I.D
TAMPA PD RECORDS

The above additional facts were sworn to on the second page of the original Criminal Report Affidavit.

White - Clerk of Court   Green - State Attorney   Canary - Arresting Agency   Pink - Central Booking/Detention Center   Goldenrod - Defendant

**State facts to establish probable cause that a crime was committed by the defendant or that the child is dependent:**

THE DEF WILL FULLY & KNOWINGLY FILED A SWORN DOCUMENT (APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS), USING FALSE / FRAUDULENT INFORMATION TO ATTEST TO HIS FACT HE WAS INDIGENT AND DID NOT OWN REAL PROPERTY OR HAVE A SOURCE OF INCOME. THE DEF KNOWINGLY FILED THIS SWORN DOCUMENT, WHICH HE SIGNED UNDER PENALTY OF PERJURY WITH THE CLERK OF THE COURT (HILLSBROUGH COUNTY). DURING THIS INVESTIGATION AND COURT ROOM TESTIMONY HIS DEF. DID OWN REAL PROPERTY AND DID HAVE A SOURCE OF INCOME BY COLLECTING RENT FROM HIS TENANTS. THE DEF PURCHASED THIS RESIDENCE VIA QUIT CLAIM DEED ON 3/4/2016 FROM DAVID ACEVEDO AND HAS OWNED THE PROPERTY SINCE.

Judgement requested against defendant for agency investigative cost per Florida Statute 938.27: $

OFFICER _____

I.D. # _____ Dist. & Squad _____

SWORN TO AND SUBSCRIBED BEFORE ME THIS

26th DAY OF MAY, 20 17

NAME/Title of Person Authorized to Administer Oath: 43915/LEO

POLICE REPORT WRITTEN: Yes X No

OFFICER M.R. VICTOR #3586 Dist. & Squad CIB

I SWEAR THAT THE ABOVE STATEMENTS ARE CORRECT TO THE BEST OF MY KNOWLEDGE. FOR NOTICES TO APPEAR, I ALSO CERTIFY THAT A COMPLETE LIST OF WITNESSES AND EVIDENCE KNOWN TO ME IS ATTACHED.

AFFIANT, Signature

AFFIANT, Print/Type Name: M.R. VICTOR

---

**NOTE: The WHITE COPY of VICTIM'S / WITNESSES goes to the Clerk's Office ONLY on Notices To Appear. In all other cases, it should be removed. The Jail or JAC personnel will determine this for all defendants turned over to them. In all Notices To Appear issued by the Arresting Officer, the Arresting Officer should leave the WHITE copy of VICTIM'S / WITNESSES attached.**

---

CLERK OF COURT

SAO FORM-425, 10/03

2108861

WITNESS STATUS: ☐ V-VICTIM ☐ C-Complainant ☐ W-All Other Witnesses ☐ Check If Witness Was Sworn

| STATUS | Last | First | Middle | Race | Sex | Date of Birth |
|---|---|---|---|---|---|---|
| V | STATE OF FLORIDA | | | | | |

Home Address: 419 N PIERCE ST, TAMPA, FL 33602, 272-5400

| STATUS | Last | First | Middle | Race | Sex | Date of Birth |
|---|---|---|---|---|---|---|
| C/W | HOLDER, | GREGORY | (JUDGE) | W | M | |

Business Address: RESTRICTED

| STATUS | Last | First | Middle | Race | Sex | Date of Birth |
|---|---|---|---|---|---|---|
| W | HAWKINS, | BECKY | JO | W | F | 7/12/83 |

Home Address: 517 TUSCANNY ST, BRANDON, FL 33511, 724-902842

| STATUS | Last | First | Middle | Race | Sex | Date of Birth |
|---|---|---|---|---|---|---|
| W | KING, | STEPHON | EUGENE | B | M | 3-5-70 |

Home Address: 517 TUSCANNY ST, BRANDON, FL 33511, 724-902812

AGENCY REPORT #   REPORT #   AGENCY NAME   VICTIM NOTIFICATION   WITNESSES   PROBABLE CAUSE STATEMENT

# EXHIBIT

# E



**City of Tampa**

*Jane Castor, Mayor*

Delivery Via Certified Mail:

7020 2450 0001 8710 2205

August 1, 2023

Surgret Urania Doss
3612 North 55th St.
Tampa, FL 33619

RE: PUBLIC RECORDS REQUEST of March 24, 2023, Reference # R048146-032723.

Dear Surgret Doss, this communication is in response to your statements made at recent Tampa City Council meetings during public comment. Your original request for records was received on March 24, 2023. An invoice was provided to you on April 13th, 2023. This invoice stated, "if your payment is not received within 30 business days of the invoice date your request will be automatically closed." You did not submit payment; therefore, the request has been closed since May 26, 2023.

Prior to invoicing, the City of Tampa Public Records Center staff assessed your request and the estimated clerical time required to locate, review, and provide the responsive records A breakdown of the estimate, by page of your request, is as follows:

- Page 3: The estimate is 4 clerical hours

- Page 4: The estimate is 2.5 clerical hours

- Page 5: During a cursory search there are over 7,000 emails that will need to be reviewed for confidential or exempt information prior to release. The estimate for this portion of the request is 445 clerical hours.

- Page 6: The estimate is 10 clerical hours.

The total clerical time estimated to fulfill your request from March 24, 2023, is 461.5 hours at a rate of $23.00 an hour, for a total cost of: $10,614.50. If you wish to

narrow the scope of your request in order to reduce the cost, please contact us within 30 days of receipt of this letter to do so and we will be happy to provide a new invoice to you. You may make such a request through our online request center, via phone, or in person. Thank you for your assistance in this matter.

Sincerely,

City of Tampa Police Public Records Center

Enclosure:

Copy of initial request

# EXHIBIT

# F

# EXHIBIT 21

IN THE CIRCUIT COURT OF THE 13TH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIRCUIT CRIMINAL DIVISION


STATE OF FLORIDA

                CASE NO.:  17-CF-009089

vs.

                DIVISION:  D

SURGRET DOSS
_____/


TRANSCRIPT OF:     PROCEEDINGS

BEFORE:           Honorable J. Thomas McGrady, III

DATE:             January 16, 2018



RICHARD LEE REPORTING
rlr@richardleereporting.com

1      THE COURT:  I apologize for being late.  I

2  had traffic and trying to get a parking spot

3  over here.

4      So you all can sit for a moment and let me

5  just kind of figure this out.

6      So we are here in the 13th Circuit, in the

7  case of State vs. Doss.  Are you Mr. Doss?

8      MR. DOSS:  Yes, Your Honor, I am.

9      THE COURT:  All right.  Good morning.

10      MR. DOSS:  Good morning, Judge.

11      THE COURT:  And this is Case 17-CF-009089-A.

12  And it's my understanding that we're set for

13  trial this morning.  And before we get to that,

14  there's a couple of things I want to talk about.

15      I know there's a pending motion for

16  continuance by the defendant.  We have some

17  speedy trial issues, and -- but first of all,

18  Mr. Doss, I need to inquire as to whether you

19  still intend to represent yourself.

20      MR. DOSS:  Yes, Your Honor.  And for some

21  bookkeeping, I did a voluntary motion to

22  withdraw the continuance.  I don't want a

23  continuance.

24      THE COURT:  I didn't see that, so -- okay.

25      All right.  And State, what do you have to

1    say as to --

2          MR. MARTINEZ:  Your Honor --

3          THE COURT:  -- what (inaudible) today?

4          MR. MARTINEZ:  -- there's -- Ricardo

5    Martinez for the State.  This is quite an

6    unusual case that's been procedurally taking a

7    while, hence that's why your presence has been

8    required here this morning.

9          There are several issues that need to be

10   decided before a trial can proceed.

11         Last week we were in front of Judge Barber

12   because the -- Mr. Doss filed a notice of

13   expiration of speedy.  At that time we had still

14   not had word from the Florida Supreme Court

15   assigning Your Honor to be appointed on this

16   case, so we at least had to set a hearing on the

17   matter, but a true hearing was not conducted

18   last week.  Judge Barber just set it for trial

19   here on Monday.

20         I believe it's the intention of myself and

21   Mr. Doss that a trial is not appropriate at this

22   time, for the simple fact that because it's a

23   perjury charge, before we can go forward, the

24   issue of materiality is an issue that must be

25   decided by Your Honor, as it is an issue of law,

1     not a fact for the jury to decide.

2         That's one -- that would be my grounds why

3     this could not go forward, and Mr. Doss may want

4     to address the speedy trial issue as well.  I

5     had previously filed a response to that, but

6     procedurally I think that we were both in

7     agreement that we were wanting to set a hearing

8     on the matter of materiality so that way Your

9     Honor can hear the facts and decide; and if Your

10     Honor decides that there's not an issue of

11     materiality, then obviously you must dismiss it.

12     Otherwise, we would go forward.

13         THE COURT:  So is it your position that

14     we're -- that issue would -- so that we are not

15     -- we don't have a speedy trial issue at the

16     moment?

17         MR. MARTINEZ:  Yes and no, because I think

18     there's other issues where I believe that speedy

19     trial would not be an issue, but Mr. Doss

20     obviously has his arguments on that as well.

21     But no matter what, that issue would still need

22     to be addressed before anything can go forward,

23     according to the case law.  Even the jury

24     instruction specifically states that Your Honor

25     has decided it is a material issue.  But that's

1     something should be, obviously, felt out or at

2     least explored way prior to ever -- and

3     obviously I wouldn't want to waste a jury's time

4     if Your Honor didn't find -- make that finding.

5          THE COURT:  Okay.  All right.

6          Mr. Doss, before you respond to that, I need

7     to ask you some questions about whether you're

8     representing yourself, and so if you would raise

9     your right hand, please.

10         Do you swear or affirm to tell the truth?

11         MR. DOSS:  Yes, sir.

12         THE COURT:  All right.  So do you understand

13    that you have the right to a lawyer?

14         MR. DOSS:  Yes, sir.

15         THE COURT:  And if you cannot afford your

16    own lawyer, and if you qualify for a court-

17    appointed lawyer, one would be appointed for

18    you?

19         MR. DOSS:  I'm aware.

20         THE COURT:  And the State of Florida would

21    pay for that lawyer if you qualified?

22         MR. DOSS:  I'm aware.

23         THE COURT:  And are you asking that I

24    appoint a lawyer for you?

25         MR. DOSS:  No, Your Honor, I'm not.

THE COURT: All right. And would you like -- I would like to explain for you some of the ways that having a lawyer to represent you can be to your advantage. And you've probably gone through a similar hearing already.

MR. DOSS: Several times, Your Honor.

THE COURT: All right. A lawyer has legal knowledge and experience that may favorably affect -- well, bail, that's not an issue, because you're not in custody -- may result in obtaining information about the case through skillful use of discovery devices; may uncover potential violations of constitutional rights; may take effective measures to address them; may ensure compliance with speedy trial, statute of limitations; and may identify and secure favorable evidence to be introduced at trial on your behalf.

Do you understand that?

MR. DOSS: I'm aware, yes, sir.

THE COURT: All right. And at trial, which we are currently scheduled for, a lawyer has the experience and knowledge of the entire process; and since jury qualification and selection are governed by numerous legal procedures, a

lawyer's knowledge and experience may enhance
the selection process on your behalf.  A lawyer
can call witnesses for you, question those
witnesses against you; present evidence on your
behalf.  A lawyer can advise you on whether or
not you should testify, the consequences of that
decision, and what you have the right not to
say.

A lawyer has studied the rules of evidence,
knows that evidence can and cannot come into
trial.  A lawyer may provide assistance in
ensuring that the jury is given a complete and
accurate jury instructions by the court; may
make effective closing arguments on your behalf;
and may prevent improper argument by the
prosecutor.

A lawyer may ensure that any errors
committed during the trial are properly
preserved for appellate review for later by a
higher court.  And if you are convicted, a
lawyer's assistance may be useful in preparing
for sentencing, ensuring favorable facts are
brought to the attention of the court; ensuring
that a court is advised of all legally available
favorable dispositions and ensuring that a

sentence is lawfully imposed.

An attorney's legal knowledge and experience may be useful in filing an appeal and seeking release on bail on that appeal.

Do you understand all of this?

MR. DOSS: Yes, sir, I do.

THE COURT: All right. Knowing all of that, do you still intend to represent yourself?

MR. DOSS: Yes, sir.

THE COURT: All right. As it is almost always unwise to represent yourself in court, let me tell you a few of the disadvantages to representing yourself in court.

Do you understand that you will not get any special treatment from the court just because you're representing yourself?

MR. DOSS: I'm aware.

THE COURT: Do you understand that you will not be entitled to a continuance simply because you wish to represent yourself?

MR. DOSS: Yes, sir.

THE COURT: And -- and you understand that you will be required to abide by the rules of criminal law, the rules of courtroom procedure, and the rules of evidence?

1    MR. DOSS:  Yes, sir.

2    THE COURT:  And -- and if you understand and

3    demonstrate an unwillingness to abide by these

4    rules, I may terminate your self-representation.

5    MR. DOSS:  I'm aware, yes, sir.

6    THE COURT:  And do you understand that if

7    you are disruptive, the court can terminate your

8    self-representation and remove you from the

9    courtroom?

10   MR. DOSS:  Yes, sir.

11   THE COURT:  Okay.  And do you understand

12   that your access to the state attorney who is

13   prosecuting the case against you will be

14   severely reduced as compared to a lawyer who

15   could easily contact the state attorney?

16   MR. DOSS:  Well, on that issue alone, to the

17   degree that we'd file the equal protection,

18   beyond that, I would understand it.  But I don't

19   think we have --

20   THE COURT:  Yeah.  And I'm not saying you

21   cannot communicate, but it's limited, because

22   he's limited on what he can talk to you about

23   because of the nature of the charges against

24   you.

25   MR. DOSS:  Understood.

1          THE COURT:  So -- but with a lawyer it would

2  be easier to make those kind of contacts.

3          MR. DOSS:  Yes, sir.

4          THE COURT:  And you understand that the

5  State was -- has an experienced lawyer who will

6  prosecute this case against you and is also not

7  going to give you any special treatment because

8  you're representing yourself?

9          MR. DOSS:  I'm aware.

10          THE COURT:  And if you are convicted, you

11  cannot claim on appeal that your own lack of

12  legal knowledge or skill constitutes the basis

13  for a new trial.

14          MR. DOSS:  Yes, sir.

15          THE COURT:  In other words, you cannot claim

16  you received ineffective assistance of counsel

17  if you're acting as your own counsel.

18          MR. DOSS:  Yes, sir, I'm aware.

19          THE COURT:  All right.  Do you understand

20  these dangers and disadvantages?

21          MR. DOSS:  I understand the situation.

22          THE COURT:  All right.  Do you have any

23  questions about any of these matters?

24          MR. DOSS:  No.

25          THE COURT:  And have you received a copy of

1    the charges against you?

2         MR. DOSS:  Yes, sir, I have.

3         THE COURT:  Do you understand the charges

4    against you?

5         MR. DOSS:  Yes, sir.

6         THE COURT:  During -- all right.  You have

7    not been represented by counsel in any part of

8    this proceeding?

9         MR. DOSS:  No, sir, not any part.

10         THE COURT:  Okay.  And you understand that

11    the possible penalties, if you're found guilty

12    on this matter, is up to five years in prison, a

13    fine, probation --

14         MR. DOSS:  Yes, sir, I'm aware.

15         THE COURT:  Okay.  And there's no

16    enhancements --

17         MR. MARTINEZ:  No, sir.

18         THE COURT:  -- in this case?  Okay.

19         If you're found guilty, again the maximum

20    prison sentence could be up to five years in

21    prison.  You may be required to report to a

22    probation officer, a community control officer.

23    You may be required to pay a fine or

24    restitution.  You may have a permanent criminal

25    record.

1          Do you understand that if you are not a

2     citizen of the U.S. and are found guilty, you

3     could be deported from this country?

4          MR. DOSS:  I'm aware, yes, sir.

5          THE COURT:  Do you have any questions

6     regarding the charges against you or the

7     possible penalties for those charges?

8          MR. DOSS:  No, sir.

9          THE COURT:  And how old are you?

10          MR. DOSS:  49.

11          THE COURT:  Well, you don't look it.  You

12     look much younger.

13          Can you read?

14          MR. DOSS:  Yes, sir.

15          THE COURT:  Can you write?

16          MR. DOSS:  Yes, sir.

17          THE COURT:  Do you have any difficulty

18     understanding English?

19          MR. DOSS:  No, sir.

20          THE COURT:  And how many years of school

21     have you completed?

22          MR. DOSS:  Completed four, I guess.  I have

23     a degree.

24          THE COURT:  Four years of college?

25          MR. DOSS:  Yes, sir.

1    THE COURT:  Okay.

2    MR. DOSS:  Well, guess that would make it

3    16.

4    THE COURT:  Okay.  Not four years of

5    elementary school.  More than that.

6    MR. DOSS:  I had to do six.

7    THE COURT:  Yeah, okay.  Are you currently

8    under the influence of any drugs or alcohol?

9    MR. DOSS:  No, sir.

10    THE COURT:  Have you been diagnosed or

11    treated for any mental illness?

12    MR. DOSS:  I have been treated but not

13    diagnosed.  I'm prior military, but it won't

14    affect me.

15    THE COURT:  All right.  Do you understand

16    what's going on here --

17    MR. DOSS:  Absolutely.

18    THE COURT:  Are you taking any medications

19    at this time?

20    MR. DOSS:  Don't take drugs, don't drink,

21    not even coffee.

22    THE COURT:  All right.  You know where you

23    are and why you're here?

24    MR. DOSS:  Yes, sir, absolutely.  Well, I

25    don't know about why I'm here, but I know where

1    I am.

2         THE COURT:  Okay.  Well --

3         MR. DOSS:  As a matter of law as to why I'm

4    here.

5         THE COURT:  Okay.  Do you have any physical

6    problems that would hinder your representation

7    in the case, such as hearing, speech, poor

8    eyesight, anything like that?

9         MR. DOSS:  No, sir.

10        THE COURT:  And has anyone told you not to

11   use a lawyer?

12        MR. DOSS:  No, sir.

13        THE COURT:  Has anyone threatened you to --

14   if you were to hire a lawyer?

15        MR. DOSS:  No.

16        THE COURT:  Do you understand that if a

17   lawyer is appointed by the court, he will

18   represent you for free?

19        MR. DOSS:  Yes, sir.

20        THE COURT:  If you otherwise qualify.

21        Have you ever represented yourself before?

22        MR. DOSS:  I've represented myself in many

23   cases.

24        THE COURT:  Okay.  And were you satisfied

25   with the outcomes in those cases?

1    MR. DOSS: Yes, sir.

2    THE COURT: Okay. And -- all right. So any

3    other questions you have about this?

4    MR. DOSS: No, sir.

5    THE COURT: All right. Having been advised

6    of your right to counsel, the advantages of

7    having counsel, the disadvantages and dangers of

8    proceeding without counsel, the nature of the

9    charges and possible consequence in the event of

10    a conviction, are you certain that you want to

11    -- you do not want me to appoint a lawyer to

12    defend you?

13    MR. DOSS: Yes, sir, I am.

14    THE COURT: All right. Well, I find that

15    the defendant is certainly legally competent,

16    understands what's going on in the procedures,

17    has freely and voluntarily chosen to represent

18    himself in this matter.

19    MR. DOSS: Yes, sir.

20    THE COURT: All right. Now, going back to

21    the State's issue with regard to speedy trial

22    and the materiality issue with regard to this

23    charge, what's your position?

24    MR. DOSS: Well, the speedy trial issue is a

25    matter of law. It's been seven months, so we're

1    about 200 days into the issue.  The original

2    charge -- the original charge was filed on June

3    the 16th of 2017.  I turned myself in through

4    the self turn-in on June the 26th, and we have

5    yet to have an adequate arraign -- I've yet to

6    be arraigned.  I've just been -- you're the

7    fifth judge, I believe.  Two have been

8    disqualified, one recused on his own, and we've

9    had no motions hearing of any effect whatsoever,

10   because of the arraignment, because of the

11   defective information, which at no point in time

12   in any of the proceedings have I waived any

13   rights.

14        THE COURT:  Well, I -- it was my

15   understanding that there is a plea of not guilty

16   entered on your behalf by Judge Nash, I think it

17   was.

18        MR. DOSS:  There was one, and I objected.

19   And actually, the -- he made the ruling under my

20   objection but then subsequently disqualified

21   himself, and I filed a motion for

22   reconsideration of all of his prior rulings,

23   which didn't get heard either.

24        THE COURT:  You're not saying you're guilty,

25   are you?

1    MR. DOSS: I'm not pleading at all until I

2    can have some information. There's been no

3    discovery --

4    THE COURT: Well, in an arraignment, you

5    only have two choices: Guilty or not guilty.

6    Right?

7    MR. DOSS: Well, State vs. Perkins, there's

8    issues of -- had I entered a plea, then the

9    issue would have been me pleading to the merits

10    of the case; but when the information is

11    defective, if I plea, I could potentially waive

12    any appellate issues I may have wanted to raise

13    relative to the merits of the case, and that's

14    Rule 3.140, as well as Rule 3.190.

15    I don't know how you tend to do -- a lot of

16    these times we do things like -- would you like

17    me to cite --

18    THE COURT: I'm an old-school.

19    MR. DOSS: Okay. You're like me.

20    THE COURT: There we go.

21    MR. DOSS: And cite case -- the case of

22    State vs. Perkins, where it was established that

23    it's long been Florida law that technical

24    difficulties or defects in any form may be

25    waived by failure to make a timely objection or

1    by a plea to the merits, and that was Chapman

2    vs. Cochrane.  That's 125 Second District.

3        THE COURT:  Well, so are you asking at this

4    point for me to address your issues as to the

5    defect in the information?

6        MR. DOSS:  Yes, sir.

7        THE COURT:  Are you -- have you filed a

8    written motion alleging what that defect is?

9        MR. DOSS:  Well, the charge in and of

10    itself, the perjury charge on its face would not

11    stand -- if they're relying on the information

12    that was filed by Detective Victor, it wouldn't

13    stand because what he's relying on -- and I

14    actually have a copy --

15        THE COURT:  The information was filed by the

16    State Attorney.

17        MR. DOSS:  Well, the State Attorney -- but

18    the State Attorney is relying on information

19    from a Detective Victor that was not accurate.

20        THE COURT:  But are you -- and make sure I

21    understand -- are you saying that on its face,

22    the information is defective?

23        MR. DOSS:  Yes, sir.

24        THE COURT:  And what is defective about it?

25        MR. DOSS:  It states -- information states

1     -- and I want to read it to you verbatim -- that

2     on the 31st of January, the -- let me pull this

3     up so I don't make a mistake.  Here it is.  It

4     states the Defendant, under the information, the

5     Count 1 of the information states that Surgret

6     U. Doss, a/k/a Greg Doss, on the 31st day of

7     January 2017, in the County of Hillsborough and

8     State of Florida, did make a false statement

9     which he did not believe to be true, to-wit:

10     that he was indigent and did not own any real

11     property, under oath in an official proceeding

12     regarding a material matter, contrary to the

13     form of the statute in such case made and

14     provided, and against the peace and dignity of

15     the State of Florida.

16         Now, I asked for them to produce that

17     particular document or whatever statement that I

18     may have made.  The State to this point hasn't

19     done that.  So on its face, that information is

20     not correct.

21         THE COURT:  Are you saying it's not correct

22     because the document that you signed is not

23     attached to the information?

24         MR. DOSS:  The document I signed wasn't

25     attached to that information, but also it just

1     didn't happen. That goes to the merits, but I

2     don't want to get to that.

3         THE COURT: Right, right. Because don't

4     they have to prove that --

5         MR. DOSS: Absolutely.

6         THE COURT: -- beyond a reasonable doubt,

7     right?

8         MR. DOSS: Absolutely.

9         THE COURT: Okay. So what -- State, what's

10     your response?

11         MR. MARTINEZ: I think one of the arguments

12     that he's making, he said, of a lack of -- a

13     defect in the information, a lack of evidence

14     that he believes is on the State, and that's why

15     we have to go through the course of discovery

16     and all of that.

17         And I also -- he did file a motion for

18     statement of particulars, which I did respond in

19     writing. There was a motion hearing set back on

20     December 15th of last year to address the

21     defendant's -- several motions that had been

22     filed, including a motion to dismiss

23     (inaudible), addressing any outstanding

24     discovery issues that Mr. Doss may still have,

25     as well as addressing the motion for a statement

of particulars.

However, on that day, just before the hearing is when Mr. Doss filed a motion to recuse Judge Nash, and at that point -- so none of those motions were heard that were supposed to be addressed, and it was my intention to explain to Judge Nash that we still had to address this issue of materiality.  But Judge Nash, in abundance of precaution, had extended the offer, as he previously had in other court dates, that he felt he wasn't being treated fairly by a circuit court judge in this jurisdiction, that he would send a request to Chief Judge Ficarrotta asking for an appointment for Your Honor.

So at that point, everything was stayed. And we had a disposition that was supposed to occur on January 26th.  In the meantime, last week the notice of expiration of speedy was filed, and that's why we're at this posture where we are today.

So everything kind of got put off on hold when Mr. Doss had accepted the notion to have a new judge come in from a different circuit to preside over the matter.

1      THE COURT:  Okay.  So with regard to --

2      specifically --

3      MR. DOSS:  Your Honor --

4      THE COURT:  Hold on a second.  But

5      specifically as to the information, tell me why

6      you think that is a valid legal information.

7      MR. MARTINEZ:  It specifically spells out

8      what the allegation is for the perjury statute.

9      And then after that is when all of the discovery

10     has been provided to the defendant, although

11     there is -- his opinion is that there's still

12     some outstanding things that are out there.

13     That's a whole other issue that we've got to do,

14     but no.

15     THE COURT:  Okay.  So Mr. Doss, in response

16     to that --

17     MR. DOSS:  In response --

18     THE COURT:  -- on the issue of whether the

19     information states a cause of action, so to

20     speak.

21     MR. DOSS:  Well, going back to when he said

22     that I agreed to the out-of-court judge, you're

23     -- again, you're the fifth -- I believe I'm on

24     my fifth judge now.  The issue of discovery

25     doesn't give way to several different judges who

1   essentially delayed the due process that I was

2   entitled to.

3       When I asked him for discovery on July 3rd,

4   they had the 15 days, pursuant to rule.  They

5   didn't respond within the 15 days in giving me

6   specifically what I asked for, anything that

7   could have been exculpatory, which would have

8   ended the case at that point.  We've gone on and

9   on and on, and for the most part, there have

10  been only delaying tactics on behalf of the

11  State, because they haven't given anything

12  that's relative to this particular charge.

13      So what they've done is, in essence,

14  hindered me from being able to adequately

15  prepare a defense to whatever this charge is, as

16  well as giving me -- which is important to me --

17  the actual warrant that was signed that led to

18  the particular action, who swore to it, the

19  actual complaint itself and how he's listed.

20      THE COURT:  All right.  You're getting into

21  the merits of the case.  The question at the

22  moment is, looking at the face of this

23  information, does it state a legal action

24  against you?

25      MR. DOSS:  It states a legal action, yes,

1     sir.

2         THE COURT: All right. So -- and I so find

3     that to be the case. So you have the

4     information against you, and now I just want to

5     make sure we're clear on the plea. How do you

6     plea to that charge?

7         MR. DOSS: Well, again going back to Rule --

8     until I get adequate discovery, I don't want to

9     enter a plea, which is my right, to ensure that

10     they have what's necessary for me to make an

11     informed plea.

12         THE COURT: Well, again, you may have a

13     right to plead guilty, but my presumption is, by

14     pleading not guilty, you're then saying "I

15     didn't do that. I'm not guilty, and State, you

16     have to prove it." You don't have to prove

17     anything. They have to prove it. But until you

18     plead guilty, you don't put the burden back on

19     them -- or not guilty. I'm sorry.

20         So all of this stuff is spinning around, and

21     if you had all of that information, do you think

22     it would change your mind on whether you're

23     pleading guilty or not guilty?

24         MR. DOSS: I think it would at least give me

25     enough information to make sure that if the

1    State wanted to give an offer, that I could

2    consider the offer --

3        THE COURT:  Well, that's another story, and

4    I agree with that --

5        MR. DOSS:  Okay.

6        THE COURT:  -- that if the State wanted to

7    make an offer and you said, "Look, I haven't

8    received this, this and this, which I think I

9    need to make a valid decision on that," I'm with

10    you.  Okay?  But that's not the issue at hand.

11    The issue is -- this is like a second

12    arraignment, if you will -- do you plead guilty

13    or not guilty to this charge?

14        MR. DOSS:  I would plead not guilty to the

15    charge.

16        THE COURT:  That --

17        MR. DOSS:  Again under objection used in

18    State vs. Perkins.

19        THE COURT:  And Judge Doss -- or excuse me,

20    Judge Nash -- you haven't got to the judge part

21    yet.  Okay.  You're working on it.

22        But Judge Nash did what he really should

23    have done, as I understand it.  If a defendant

24    does not specifically state "Not guilty," then

25    it is his duty to enter on the record at least

1    on your behalf a not guilty, because he's not

2    going to find guilty for you.  That wouldn't be

3    right.

4        MR. DOSS:  Right, but I think that what the

5    issue would be is if the judge does that and it

6    in essence -- it is a due process issue, and I

7    had rights that he had not already addressed.

8    So for him to enter the plea, knowing that there

9    was multiple discovery violations -- and I know

10    you use Rule 3.170, and that --

11        THE COURT:  No, the remedy -- the remedy for

12    the discovery violations or the remedy to

13    suppress whatever information is kind of

14    separate from whether you're guilty or not

15    guilty.

16        MR. DOSS:  Oh, I'm aware.  I'm aware of

17    that.

18        THE COURT:  Okay.  All right.  So -- and

19    believe me, I do want to address whatever

20    motions you have.  The question is are we doing

21    it today, are we going to make a determination

22    whether speedy really has been expired or will

23    be extended, or are we going to try this case

24    today without hearing all those motions?

25        MR. DOSS:  No, we want to hear the motions.

1       THE COURT: Yeah, I would say. So I mean, I

2   read your earlier motion, which you say you've

3   now withdrawn, and the amended earlier motion,

4   which you said you withdrew.

5       MR. DOSS: Yes.

6       THE COURT: But you had an alternative

7   request in there to --

8       MR. DOSS: Discharge the --

9       THE COURT: -- continue the matter for 90

10  days.

11      MR. DOSS: No. Well --

12      THE COURT: You had it in, but you withdrew

13  it.

14      MR. DOSS: I had it in, so I withdrew it in

15  full so we could address the issue of speedy

16  trial, as well as a number of other issues.

17      THE COURT: Okay. So let's address speedy

18  trial. Okay?

19      So State, tell me why you think speedy trial

20  doesn't apply in this case at this time.

21      MR. MARTINEZ: Yes, Your Honor. I did file

22  a motion to strike, based under the rule, of

23  notice of expiration of speedy trial, and I have

24  --

25      THE COURT: And you've received this, Mr.

1    Doss?

2         MR. DOSS:  I received an email.  I don't

3    know if I actually printed it out.  If you have

4    another copy, but I don't know that I need one.

5         THE COURT:  Okay.

6         MR. DOSS:  I would probably object to that

7    anyway.

8         MR. MARTINEZ:  So basically, Judge, I had

9    two arguments.  Number one, that at the time of

10   the filing of his continuance, that number one,

11   that would have been a waiver of a speedy trial

12   when he did that.

13        Also on -- back on 12/15, as I stated

14   earlier, we had scheduled a motion to dismiss, a

15   motion for statement of particulars, and an

16   amended motion to suppress.  But it was at that

17   time that everything was put on hold for the

18   judge -- for our chief judge to decide whether

19   or not he was going to put in a request to the

20   Florida Supreme Court.  Ultimately that did

21   happen, and that's why Your Honor is here today.

22   So I was argue that as of 12/15, it was tolled.

23        But also, back on -- when this was in front

24   of Judge Wolfe on June, I believe -- I'm sorry,

25   on August the 28th of 2017, Judge Wolfe signed

an order for a competency evaluation to

determine if he was competent to stand trial.

And therefore, as you know, speedy is tolled

once the judge issues that order.  And I

determined that Judge Nash then found him

competent on November the 8th, 2017, so that

would be a total of 73 days that it would have

been tolled.  Therefore, on those grounds alone,

speedy trial would not expire until March 3rd of

this year.

That's not including -- that was -- that's

as is, but I'm also making the further argument

that we have that additional tolling as of

12/15, when we didn't even know if a new judge

was going to come in, motions weren't heard, and

it was the defendant who took up the judge's

request, once again, to have another circuit

court judge assigned.

So my argument is that it's either been

waived or, at a minimum, tolled, at least until

3/8 of this year.

THE COURT:  Okay.  Mr. Doss, your response.

MR. DOSS:  Now, Judge Nash once -- now, I

disqualified Judge Wolfe, who's actually a

witness in the case.  And Judge Wolfe chose not

1  to disqualify himself, knowing that he had

2  familiarity with me as well, because it's -- it

3  stems from a foreclosure issue, multiple

4  foreclosure issues.

5      But anyway, the -- when Judge Nash vacated

6  all of Judge Wolfe's prior orders, he vacated

7  every order.  That would include any so-called

8  competency order or what have you.  He got rid

9  of it all.

10     So the time is not tolled waiting for that,

11  not to mention, it doesn't relieve him of his

12  obligation for discovery.  And he can't use

13  these -- all of these I guess delays, which are

14  not because of me, to -- or -- well, actually

15  can't put them on the court either -- he has an

16  obligation as a State Attorney to furnish

17  discovery within a sufficient time so that I can

18  prepare my defense, not use every other excuse

19  in the book for why he hasn't done it.  And to

20  use this situation with Judge Wolfe -- or Judge

21  Nash -- and by the way, Judge Nash, after

22  denying the motion to recuse -- I mean to

23  disqualify himself, one week later, went ahead

24  and said he was going to disqualify himself on

25  his own initiative, when it wasn't his own

1    initiative.  It was because of the motion that I

2    filed to disqualify him.

3         THE COURT:  Did -- we've got two issues

4    going on here, as I see it.  One is, you're

5    saying that Judge Nash vacated the orders of

6    Judge Wolfe.

7         MR. DOSS:  Yes, sir.

8         THE COURT:  And then the second issue is --

9    and I think you've raised this -- is, if a judge

10   is recused, then there are circumstances where

11   any order of that judge can be revisited.

12   Right?

13        MR. DOSS:  And it was, yes, sir.

14        THE COURT:  And that's one of the things

15   you're asking for?

16        MR. DOSS:  It was revisited, yes, sir.

17        THE COURT:  Now, but what I need to know --

18        MR. MARTINEZ:  That's why Judge Nash --

19        THE COURT:  -- is what of all the orders --

20   or motions do you want to be reheard?  Because I

21   understand the argument, but the State may say,

22   "I want to reargue that motion to vacate, too."

23   You know, I don't know, I mean, so it's all kind

24   of a mess here, so --

25        MR. MARTINEZ:  I'll just say for the record,

1   no true motion has ever been heard.  We did have

2   one hearing where we were addressing discovery

3   issues, and it was my position everything had

4   been provided except one document, which I told

5   the judge I was going to look into, and he gave

6   me a deadline of -- I believe it was two or

7   three days on Friday, and I found one supplement

8   from a separate law enforcement agency, and that

9   was provided to him by the deadline.

10      But no -- the motions to suppress, motions

11  to dismiss, none of that has been heard.

12  Because we were supposed to address it back on

13  December 15th, but it all got put on hold once

14  it was decided that -- Mr. Doss is the one who

15  filed himself the motion to disqualify Judge

16  Nash, and then that's when he stopped everything

17  and went ahead and put in the request for a

18  circuit court judge.

19      MR. DOSS:  But -- but -- that's being

20  misrepresented.  It's -- the fact that I'm -- we

21  have one judge in the 13th Circuit is every

22  judge in the 13th Circuit.  To pretend that

23  these colleagues don't have any relationship --

24  and he did say he's spoken to Judge Holder a

25  couple of times, and we don't know -- and Judge

1    Holder is a witness in this case.  I don't know

2    what he spoke to him about.  He knew that he sua

3    sponte should have disqualified himself instead

4    of going through the rest of this.

5        That being said, prior to him disqualifying

6    himself -- and if you go into the clerk's file,

7    which I was going to do.  I was going to ask you

8    for permission -- you can go into the docket and

9    see where he actually made a ruling vacating all

10   of Judge Wolfe's orders.  Why he did it, the

11   fact that he did it then and did it prior to his

12   disqualification, that's of no issue.  The only

13   issue is that he vacated every order of Judge

14   Wolfe.

15       THE COURT:  Okay.  We have a clerk here

16   today.

17       MR. DOSS:  Well, I was going to use this

18   docket, but I --

19       THE COURT:  Do you show such an order?  Do

20   you recall when that was?

21       MR. MARTINEZ:  On 12/15, the judge did

22   vacate the previous orders he had -- since

23   competency was still out there, we couldn't go

24   forward, but then Judge Nash revisited

25   everything, and then he did in fact vacate those

1  orders, prior to then stopping the proceedings.

2  THE COURT: So Judge Nash files him

3  competent but then vacates the order?

4  MR. MARTINEZ: Of the -- the previous order

5  to have him --

6  MR. DOSS: I was going to object to that,

7  because that's a misrepresentation. I was found

8  incompetent by a judge that I was disqualifying

9  who had on the record admitted he had a relation

10  --

11  THE COURT: No, he didn't find you

12  incompetent, he found you competent.

13  MR. DOSS: No. No. Judge Wolfe found me

14  incompetent, but Judge Wolfe admitted that he

15  had -- but Judge Nash disqualified -- I mean

16  vacated everything that was done.

17  THE COURT: Well, I guess I'm confused,

18  because -- and Judge Wolfe, as I understand, did

19  not find you incompetent. All he did was

20  question your competency and order an

21  evaluation. So there was no finding, if you

22  will, by Judge Wolfe that you are incompetent.

23  MR. DOSS: Well --

24  THE COURT: Okay.

25  MR. MARTINEZ: That is correct.

1            THE COURT:  And Judge Nash, I guess

2       following a report by a psychologist or whatever

3       -- or did we just never got to that point?

4            MR. MARTINEZ:  He -- Mr. Doss never did get

5       an evaluation, so Judge Nash on his own

6       basically said, "I find him competent."  And we

7       were to move forward from that point.

8            MR. DOSS:  If I --

9            THE COURT:  Just so we're clear, too --

10           MR. DOSS:  I want to be clear on laying a

11      foundation to this, because we're not getting it

12      here.

13           THE COURT:  I don't find a reason to find

14      you incompetent.

15           MR. DOSS:  Okay, thank you.  I'm good with

16      that.

17           THE COURT:  All right.  So we're -- we're

18      going ahead.

19           MR. DOSS:  Okay.

20           THE COURT:  Okay.  So we're still talking

21      about speedy --

22           MR. DOSS:  Yes, sir.

23           THE COURT:  -- and whether we're going to

24      try a case today, right.  So -- all right.  So

25      have you given me all your reasons --

1    MR. MARTINEZ:  Correct.

2    THE COURT:  -- why you believe that speedy

3    has not expired?

4    MR. MARTINEZ:  Has not expired and has

5    either been tolled or waived.  I question -- and

6    Your Honor, in trying to do research on this, on

7    that 12/15 date when Judge Nash put everything

8    on hold, I don't know if that would be

9    considered a waiver or tolling.  I would argue

10   at a minimum it's a tolling, but I would still

11   argue that tolling goes back from when the judge

12   ordered the evaluation.  He didn't find him

13   incompetent but ordered it for it to be done.

14   Once Judge Nash made the ruling that he was,

15   then we started the clock, giving it that

16   additional 73 days.

17   So even if we didn't address the issue of

18   whether or not it tolls back on 12/15, we still

19   have a speedy trial date of truly expiring on

20   3/3 of 2018.

21   MR. DOSS:  Definitely object to that.  The

22   -- it could be argued, which is why you're here,

23   that the delaying tactics were because of the

24   fact that Judge Holder is involved in this case;

25   and to say that he doesn't have influence would

1    be ridiculous when you consider that Judge Wolfe

2    said, well, anybody who's been here for 10 years

3    has to know Judge Holder.  And from there he

4    went on to make other comments, which ultimately

5    led to me filing a motion to disqualify him,

6    which he did find legally sufficient after I did

7    the writ of prohibition to the Second DCA.

8         That being said, it would be still a

9    violation of my right to due process for them to

10   say, well, every time one of his colleagues

11   decide to put the case off we're going to say,

12   well, we're going to use the extra time, but

13   within that extra time, you still didn't provide

14   the discovery request.  You can't get around

15   Brady by using other issues.

16       THE COURT:  Let me back up a second.  As I

17   understood what you said, there was some sort of

18   hearing about discovery, and that was Judge

19   Wolfe that heard that?

20       MR. MARTINEZ:  No, sir.  I was only -- there

21   have been -- I'm the third ASA assigned to this

22   case once it went to Nash.  There were previous

23   -- all the stuff that happened with Judge Kiser,

24   Judge Wolfe, I was not involved with at all.

25       THE COURT:  Okay.

1       MR. MARTINEZ:  But we did discuss -- and I

2    have looked through it, and there were two

3    different court dates that I even hand-delivered

4    everything that I possibly had to him, once

5    again, as far as discovery is concerned.  And as

6    I stated, there was one additional supplement

7    that I looked into, found, and then provided to

8    Mr. Doss.

9       There have been additional requests for

10    discovery on his behalf, and I have responded in

11    writing to them, and these are things that are

12    either not in possession by the State or can be

13    obtained through public records, things such as

14    the detective who handled it, wanting to know

15    about his personal history file, things of that

16    nature; any email communications that may have

17    occurred between him and Judge Holder, who is a

18    witness in this case.  Those are things that are

19    not in the State's possession, would not ever be

20    -- is not evidence to be used in this criminal

21    prosecution, things I could not provide, which I

22    have responded to everything.

23       So it's his opinion there's things still

24    outstanding, but my position is we've given him

25    everything that we have that I would go forward

1    with.

2         MR. DOSS:  I would respectfully --

3         THE COURT:  You understand they don't have

4    to give what they don't have, so to speak.

5         MR. DOSS:  Right, but we have not just the

6    Gorham case but several other cases where

7    anything within the possession of any of the

8    State's witnesses, it's imputed or

9    constructively held by the State.  So long as

10   their witnesses have it, they have an

11   obligation, he has an obligation to provide it

12   as well.

13        And these are fundamental due process

14   issues, and for him to say, "Well, I don't have

15   it," well, once I told you I wanted it, if it

16   doesn't exist, that's a different thing to say,

17   "I don't have it."  Show me that you made the

18   effort to find it, because he also has an

19   obligation to work to make sure that I'm

20   actually guilty of the charge that's been levied

21   against me.

22        But the -- as far as the constructive and

23   imputed possession issue, I don't think we have

24   -- there's any question to that.  That's an

25   issue that Brady would cover.  Not just Brady

1    but Kyles and Strickler as well.

2         THE COURT:  Let me -- let me -- what are the

3    outstanding motions currently?

4         MR. DOSS:  We have the -- we have a motion

5    for entrapment.

6         THE COURT:  All right.

7         MR. DOSS:  We have -- we have --

8         THE COURT:  Motion to dismiss --

9         MR. DOSS:  Because of entrapment, yes, sir.

10   We have a suppression motion for illegally

11   obtained information or information which, to

12   this point, has -- for no better way of saying

13   it, was not obtained through a search warrant.

14        We have not, for some reason, found the --

15        THE COURT:  What are you trying to suppress,

16   more specifically, in that --

17        MR. DOSS:  The police officer's report.

18        THE COURT:  You want to suppress the report?

19        MR. DOSS:  The -- his findings relative to

20   the -- he investigated tenants at a particular

21   property, and he didn't have any probable cause

22   or reasonable suspicion to go to the property.

23   It's a Tampa police officer who went out to the

24   County to do an investigation, according to the

25   information, at the behest of Judge Holder.  So

1     that would be illegally obtained information.

2     It's an unlawful search and seizure.

3          THE COURT:  Okay.  All right.  So what other

4     motions are pending?

5          MR. MARTINEZ:  A restated motion to dismiss

6     for entrapment, there's another previous motion

7     to dismiss.

8          MR. DOSS:  And we also have two motions to

9     compel which would include information relative

10    to the original discovery request, which still

11    haven't been --

12         THE COURT:  There's two of them?  There's

13    two --

14         MR. DOSS:  There's two motions to -- there's

15    an original motion for discovery on July the

16    3rd, and then there's one for August the 8th or

17    4th, and then we have one on September 30th.

18    But there's two motions to compel, as well as

19    the original motion, demand for discovery.

20         THE COURT:  Okay.  And anything else that's

21    pending?

22         MR. DOSS:  And I guess the motions to

23    dismiss and the imposition of sanctions, which I

24    filed today as well.

25         THE COURT:  Today?

1    MR. DOSS: Yes, sir.

2    THE COURT: Okay. This is for discovery

3    violations?

4    MR. DOSS: Yes, sir.

5    MR. MARTINEZ: I'm not aware of that one,

6    Your Honor.

7    THE COURT: Did you send a copy to the

8    State?

9    MR. MARTINEZ: If it's something that was

10   filed today --

11   MR. DOSS: Yes, sir. Yes, sir.

12   THE COURT: Okay.

13   MR. DOSS: And I don't know if you would

14   need this one. We kind of spoke about it, but

15   as -- I would take the position that he hasn't

16   -- for Judge Nash, right? That Judge Nash --

17   THE COURT: What about this statement of

18   particulars? Was -- has that been addressed?

19   MR. DOSS: Not sufficient --

20   MR. MARTINEZ: I had filed a response, Your

21   Honor, which would have clarified all of the

22   questions -- going back to initially where he

23   said the defective information, my motion in --

24   my response to the motion for the statement of

25   particulars would have spelled out everything

1    factually regarding this case.

2         I understand that Mr. Doss has filed

3    multiple motions on this, and, you know,

4    obviously, he has a right to be heard on all

5    these.  But my position is that, I don't think

6    we even need to get to that point until first

7    the issue of materiality is decided by Your

8    Honor, because it could all be a moot point.

9    Your Honor may decide that there is in fact not

10   an issue of materiality and this case must be

11   dismissed, if that's the case that you decide.

12        THE COURT:  You'd like that one, wouldn't

13   you?

14        MR. DOSS:  That's actually what the

15   situation is, and the State Attorney knows that

16   as well, but, you know, I guess we'll --

17        THE COURT:  Let me --

18        MR. MARTINEZ:  And I want to put on record

19   that I don't feel like the defendant would be

20   prejudiced in any way by not having his other

21   motions heard prior to the issue of materiality.

22   It's a straightforward -- basically everything

23   that's in the pleadings and in specific --

24        THE COURT:  Okay.  So just to help educate

25   me, you've charged him under the felony perjury

1    in an official proceeding.

2          MR. MARTINEZ:  Correct.

3          THE COURT:  So what is the official

4    proceeding that you believe he perjured himself?

5          MR. MARTINEZ:  According to when my office

6    made this filing decision, it would be -- the

7    official proceeding would be the Civil Court

8    Case No. 15-CA-8473.

9          THE COURT:  And that was a filing of

10   indigency or --

11         MR. MARTINEZ:  No.  So separately from that,

12   he filed a motion -- an application for civil

13   indigent status, and I can provide that to Your

14   Honor.  And I will note for the record that this

15   filing for that indigent status is in a separate

16   case number, a separate civil case number.  Mr.

17   Doss has filed several documents -- or -- as an

18   -- for several civil proceedings as an

19   intervenor in civil mortgage foreclosure

20   proceedings.

21         So that particular document is from -- I

22   want to be -- all candor to the Court, that is a

23   separate case number than the --

24         THE COURT:  Separate criminal case number or

25   separate --

1        MR. MARTINEZ:  -- civil -- than the civil

2    filing that he did.

3        THE COURT:  Okay.

4        MR. MARTINEZ:  He filed an emergency motion

5    to intervene, a motion to set aside a final

6    judgment and cancel, and objection to a

7    foreclosure sale.  That was in 15-CA-8473.

8        Basically he filed -- he was trying to

9    intervene in a mortgage foreclosure proceeding

10   where he had obtained a quitclaim deed and filed

11   that with the clerk's office.  So basically he

12   tried to be an intervenor in that particular

13   case.  That was the one that Judge Holder was

14   presiding over.

15       THE COURT:  All right.  So is there a

16   criminal charge regarding the application for

17   determination of civil indigent status?

18       MR. MARTINEZ:  You mean specifically for

19   that document alone?

20       THE COURT:  Yes.

21       MR. MARTINEZ:  No, sir.

22       THE COURT:  Is that in any way included in

23   this document we're referring to as the

24   application for determination of indigent status

25   in 15-CA-000071?

1           MR. MARTINEZ:  Correct.  That -- and that

2      does state that if in fact false information is

3      provided, it's a first-degree misdemeanor.

4           THE COURT:  Right.

5           MR. MARTINEZ:  The State's position is that

6      because he made that filing indicating he did

7      not own property and then subsequently made a

8      filing under 15-CA-8473 as an intervenor

9      claiming "I own this property," basically saying

10     "I don't own property," "I do own property."

11          THE COURT:  I got it.  Okay.  So you're --

12          MR. DOSS:  If I may, Your Honor.

13          THE COURT:  Okay.

14          MR. DOSS:  Okay.  This -- if we want to

15     review the application -- and I would ask Your

16     Honor, because I thought I read well -- I don't

17     see anywhere on that application for civil

18     indigency status that it asks if I own any

19     property.

20          And because you're governed by statute, you

21     read it strictly for what's on the paper.  You

22     can't infer.

23          THE COURT:  But it says, "I have other

24     assets.  Homestead real property, non-homestead

25     real property."

1    MR. DOSS:  Is that ownership, or is it in

2    assets?  The question is ownership or assets?

3    THE COURT:  It just says, "I have other

4    assets."

5    MR. DOSS:  The issue that I think he said is

6    that I said I was indigent and didn't own any

7    property, and on there it doesn't state that

8    either.  More importantly --

9    THE COURT:  Well, you say no, "I have no" --

10   non -- are you --

11   MR. DOSS:  I don't think there's a yes or a

12   no.

13   THE COURT:  Zero dollar non-homestead real

14   property, real estate.

15   MR. DOSS:  There is a no -- there's no

16   answer, yes or no, either, is there, Your Honor?

17   THE COURT:  No, there's zero dollars.

18   MR. DOSS:  But there's no answer.  I'm going

19   to show you something as to why that's

20   important.

21   THE COURT:  Well, okay.  I just -- I'm --

22   I'm not saying we're not going to get to that.

23   We will, but it may very well be a factor in the

24   materiality argument, though.

25   MR. DOSS:  If --

1          THE COURT:  What's -- what's what here?

2          MR. DOSS:  Well, then there's no, absolutely

3      -- because that indigency application, which is

4      an application, had no bearing on how Judge

5      Holder ruled.  He had already ruled.  The

6      indigency application was so that the 2nd DCA

7      could consider whether or not I would have to

8      pay fees.  So the fee paying or the home

9      ownership has nothing to do with the case in

10     front of Judge Holder, nor the case relative to

11     that house.

12         THE COURT:  Well -- all right.  This

13     application is January 31st, 2017.  Right?

14         MR. DOSS:  Right.

15         MR. MARTINEZ:  Yes, sir.

16         THE COURT:  And the information -- I have it

17     somewhere here -- is for an act that occurred on

18     the 31st day of January 2017.  So is it -- is it

19     this application?

20         MR. MARTINEZ:  I have two different

21     applications here.

22         MR. DOSS:  Which would go to my question as

23     specifically what official proceeding are you

24     speaking of.

25         MR. MARTINEZ:  Judge, yours is -- I'm sorry.

1       The application you have is dated what?

2              THE COURT:  January 31st, 2017.

3              MR. MARTINEZ:  Correct.  And that's what in

4       our information.  And the argument that the

5       State has is the other case, 15-CA-8473, was

6       still a pending case before Judge Holder.

7              I would also add that -- just so there's

8       full candor to the Court -- on this -- on the

9       case between Judge Holder, Mr. Doss did fill out

10      an application; however, it was incomplete, so

11      should not be a part of this case.  So we're

12      relying on that application alone.

13             THE COURT:  Okay.

14             MR. MARTINEZ:  I think, Your Honor, the

15      ultimate issue is -- of materiality is, would

16      his actions on January 31st have affected the

17      outcome of the civil case?  And that's what

18      really Your Honor has to decide.  This is

19      already a case that's done already.

20             MR. DOSS:  Everybody in the room knows it

21      had no effect on it whatsoever.

22             THE COURT:  We'll figure that out.  Now,

23      that is a motion -- and maybe the first one --

24             MR. MARTINEZ:  I think that should be

25      addressed before --

1     THE COURT:  Well, the first one is the

2     speedy trial.  Second one is materiality.

3     MR. DOSS:  Right.  But -- but Judge McGrady,

4     if you look at the second one, the second

5     application for indigent status that applies to

6     Case -- yes, 8463 -- no, no, this is for this

7     case, isn't it?

8     MR. MARTINEZ:  Is that what you want?

9     MR. DOSS:  Okay.  What you'll see is that it

10    was -- it was rejected because it was

11    incomplete.  And they rejected it and rejected

12    it and rejected it to the point where, okay,

13    somebody went ahead and paid the fees for me.

14    Because I didn't want to get back caught back

15    into the situation, which by the way, they

16    changed the whole process.

17    THE COURT:  So to get to where we are, he

18    files this application on January 31st.

19    MR. MARTINEZ:  For a different case.

20    THE COURT:  On a different case.  He files

21    this incomplete application, and then there's

22    some other testimony before Judge Holder that is

23    the -- no?

24    MR. MARTINEZ:  No, sir.  I can't --

25    THE COURT:  It's just competing -- competing

1     applications?

2          MR. MARTINEZ:  Yeah.  It's -- it (inaudible)

3     we're combining the civil indigency application

4     with his pleading.

5          THE COURT:  I got it.  He pleads "I'm the

6     owner of certain real property.  I want to

7     intervene" --

8          MR. MARTINEZ:  It's his pleading himself.  I

9     guess the argument would be if it were a

10    different type of case, a tort, a -- some type

11    of negligence action; but the argument that we

12    have is because he's claiming that in one and

13    then filing a pleading that I own Property X.

14         MR. DOSS:  That's -- I object to that.

15    That's --

16         THE COURT:  And was that under oath?  Was

17    the pleading --

18         MR. DOSS:  No, sir.

19         THE COURT:  -- to intervene --

20         MR. DOSS:  No, sir.

21         THE COURT:  -- stating -- was that under

22    oath?

23         MR. DOSS:  You mean the one with this?

24         THE COURT:  Not -- not this but the actual

25    motion to intervene or whatever it is you filed.

1    MR. DOSS:  There may have been a couple of

2    motions where I stated I was the lawful owner

3    within that particular case, the lawful owner.

4        THE COURT:  Right, but was that affirmed or

5    --

6        MR. DOSS:  I have never been -- I have never

7    been a party to any case; otherwise, I would

8    have to intervene.  Had I been a party, there's

9    no need for me to file a motion to intervene.

10       MR. MARTINEZ:  Judge, I can clear that up.

11   The State's argument is that the sworn -- what

12   is sworn to would be the affidavit.  There was

13   no official -- there was no -- when -- a court

14   -- when there was a court proceeding in front of

15   Judge Holder, he -- there is no actual swearing

16   in at that particular --

17       THE COURT:  Okay.

18       MR. DOSS:  But what affidavit are you

19   talking about?

20       THE COURT:  No, no.

21       MR. DOSS:  He -- actually, he did a

22   different charge.  I assume he's doing his job,

23   but that would be a different charge.  That's

24   not this charge.

25       THE COURT:  No.  And I'm trying to

1    understand, too.

2         MR. DOSS:  Okay.

3         THE COURT:  My understanding is, you filed

4    the civil indigency application that says the

5    value of this -- I have no assets, no dollar

6    worth of assets, of real property that's not

7    homestead.

8         And then in a different proceeding, you

9    filed a pleading, you personally filed on your

10   behalf, a pleading -- some kind of motion to

11   intervene -- saying, "I own this piece of

12   property that entitles me to intervene in this

13   foreclosure action."

14        So the inconsistency, if you will, of "I

15   have a" -- I'm not saying you're guilty.  I'm

16   just trying to understand the facts, as alleged.

17   When one thing under oath you said "I don't own

18   any property," but in this pleading you filed,

19   you said "I do own some property."

20        But the pleading you filed was not under

21   oath, but it was in a proceeding.

22        MR. DOSS:  It was in a -- the pleading for

23   the ownership, yes.

24        THE COURT:  Yeah.

25        MR. DOSS:  To the degree that the

1 application addresses assets, that's an issue

2 that I guess an expert could determine, because

3 if it's an asset, then we have another issue.

4 The Court can't turn around -- and by the way,

5 if you look at that notice, the way the fees

6 which was done prior to anything else, because I

7 tried to -- I invoked the constitution -- my

8 constitutional right to have the Court take upon

9 the matter without charging me up front, which

10 is a constitutional issue as well, then the

11 clerk turns around and, if you look on it, I had

12 -- I believe I put that I had $600 of cash with

13 me, because somebody was going to pay this for

14 me. And she said, "Well, fill out this

15 application." Well, you can't say "Fill out the

16 application," which would subject you to one

17 thing, and then have him come back and try to

18 say, well, that is a different issue, not about

19 the conflicting statements.

20     Now, here is another thing for the Court to

21 consider. I had four properties that at some

22 point everybody thought I owned.

23     THE COURT: Are you sure you want to say

24 this?

25     MR. DOSS: Well, I say everybody seems to

1   think I owned the four properties.  The Court

2   took the position, which is why I would like to

3   question the judge, is that, well, you don't own

4   because they sold all the prop- -- I don't own

5   any property now.  No properties are in my name.

6        THE COURT:  Okay.  All right.  One other

7   question for the State:  The law, as I

8   understand it, if you lie, misrepresent,

9   whatever, on the civil indigency affidavit,

10  within the statute that allows it, it said if

11  you violate that, it's a first-degree

12  misdemeanor.

13       MR. MARTINEZ:  I agree.

14       THE COURT:  How do we get to a felony?

15       MR. MARTINEZ:  The State's position is that

16  we are combining the application with the

17  pleading to establish the perjury.

18       MR. DOSS:  You can't do that.  Objection.

19  Definitely can't do that.

20       THE COURT:  Well, no, that's their theory.

21       MR. DOSS:  Oh.  Okay.

22       THE COURT:  I'm not -- that's their theory.

23       MR. DOSS:  Okay.

24       THE COURT:  They've got to prove it.  And

25  they've got to prove it's material.  Okay?

1     So.  All right.

2     MR. MARTINEZ:  Yeah.  And the question is,

3     would it affect the ultimate outcome of the

4     civil proceeding?  That's what Your Honor has to

5     decide.

6     THE COURT:  Okay.  So here's what I want to

7     do.  Well, first of all, with regard to speedy

8     trial, I do accept the State's argument that the

9     time for speedy trial has not expired.  And it

10     is no earlier than March 3rd.

11     MR. MARTINEZ:  Correct.

12     THE COURT:  And it very well could be later

13     than March 3rd.  And I do not find that the

14     tolling was caused by the actions of the State.

15     Okay?  And it's a combination of actions by the

16     defendant, a combination of actions by the

17     Court, because when you get new judges, that

18     also affects the -- our ability to hear the

19     matter.

20     So we will not have a trial today.  That

21     being said, I want to hear the motions.  The

22     question is, do we need to set a hearing date,

23     reasonably soon, where we'll hear all the

24     motions, but the number one motion to be heard

25     is materiality.  Because that may -- may, or may

1    not -- if it's not material, it -- we're done.

2    Right?

3        MR. DOSS:  Yes.

4        MR. MARTINEZ:  And Your Honor, let me say

5    for the record, that's -- those -- essentially

6    that was my motion.  That was the extent of my

7    argument, so to allow time for Mr. Doss to

8    respond to specifically what I said, that's -- I

9    have no problem with that, but what I have

10   presented to Your Honor --

11       THE COURT:  On the materiality issue?

12       MR. MARTINEZ:  Yes.  Technically I thought

13   we were doing the motion at the time.

14       THE COURT:  Okay.  All right.  So let's --

15   so are you prepared today to respond on the

16   materiality issue?

17       MR. DOSS:  Yes, Your Honor.  As it relates

18   to law, a material issue matter is an issue that

19   substantively would affect, substantially would

20   have affected the outcome of the Court's ruling.

21       Whether I owned a property or whether I

22   filed an indigency application obviously didn't

23   affect how they ruled, because they ruled how

24   they ruled.  The only issue that the indigency

25   application would have determined is whether or

1    not I had to pay the fees up front or pay them

2    later.  That's all that that application did.

3         So -- and if I'm correct on that application

4    -- which I know I am -- it says, "to the best of

5    my knowledge and belief."  And with that caveat,

6    "to the best of my knowledge and belief," that's

7    where the maximum quantifiable charge could have

8    come from.

9         But that aside, Your Honor, the bottom line

10   is, if I paid $300 or had -- which you see I

11   had.  Had I just given him the $300, then

12   they're still -- the way the Court ruled,

13   they're going to rule anyway.  If I had 170

14   houses and paid $300, they were going to rule.

15   If I had 170 houses and didn't pay or whatever,

16   they were going to do what they were going to do

17   anyway.  It didn't matter.  They were going to

18   take the properties or take them or do whatever

19   they wanted to do and justify it.  So that right

20   there doesn't even matter.

21        THE COURT:  Well, the application -- again,

22   this is the application for determination of

23   civil indigency status, and that was in Case 15-

24   CA --

25        MR. DOSS:  0071.

1          THE COURT:  Right, 71.  A person who

2     knowingly provides false information to the

3     clerk of court in seeking a determination of

4     indigent status under 57.082 commits a

5     misdemeanor of the first degree, punishable

6     provided in 775.082.

7          "I attest that the information I provided in

8     this application is true and accurate to the

9     best of my knowledge," and I'm presuming that's

10    your signature.

11         MR. DOSS:  Yes, sir.

12         THE COURT:  All right.  And based on the

13    information provided here, the clerk made a

14    determination that you were, in fact, indigent.

15         MR. DOSS:  The clerk made the determination.

16         THE COURT:  Right.  And that's the -- that's

17    the procedure, the clerk makes that

18    determination; if you disagree with it, you can

19    ask the court to rehear it.

20         MR. DOSS:  We're here.

21         THE COURT:  But on that, you put down "I own

22    non-homestead" -- well, you put down zero

23    dollars as an asset under non-homestead real

24    property real estate.

25         MR. DOSS:  It wasn't my homestead property,

1    either.

2            THE COURT:  Well, so the clerk logically

3    would say you don't own any property.

4            MR. DOSS:  Right.  And the clerk --

5            THE COURT:  That has any value.

6            MR. DOSS:  That has any value to me.  To me.

7    That would be the issue.

8            THE COURT:  Okay.  So -- and then the

9    State's position is that then you later filed,

10   not under oath, a motion in a different civil

11   case asserting you had some ownership interest

12   in some property that would -- that you're

13   seeking to intervene in that case on.  Correct?

14           MR. DOSS:  I don't know what they're --

15           THE COURT:  Okay.  Well, okay.  Right?  Am I

16   right or wrong?

17           MR. MARTINEZ:  Correct.  Yeah, it's -- yeah,

18   I'm not alleging that it was a sworn -- like a

19   C-4 criminal motion, not that nature.

20           THE COURT:  And so we jump up to the felony

21   because it's --

22           MR. MARTINEZ:  Specifically because it's

23   property -- basically the contradiction in "I

24   own property," "I don't own property."  I'm not

25   -- that's the argument that --

1        MR. DOSS:  That's not the charge.

2        THE COURT:  Okay.

3        MR. DOSS:  Let's look from a foundational

4    perspective as well.  The clerk also has access

5    to records and information, and she made the

6    determination.  That goes outside of Judge

7    Holder doing investigation, which would be a

8    violation of Article 2, Section 3, for

9    separation of powers, as well as Article 5,

10   Section 13, his canons, to try to investigate an

11   issue so he can call Victor.

12       But the reality of it is that the charge,

13   the charge does not fit what he says and what

14   he's explaining.

15       THE COURT:  Well, let me ask this.  Does the

16   State wish to amend its information and just go

17   under 77.082?  775.082?

18       MR. MARTINEZ:  I'm sorry.  I don't think I'm

19   following.

20       THE COURT:  I'm sorry.  57.082, 57.082, the

21   misdemeanor.

22       MR. MARTINEZ:  Does the State --

23       THE COURT:  The State wish to amend its

24   information in this case to make it not a felony

25   but the misdemeanor?

1  MR. MARTINEZ: Well, for the record, I did

2  extend that offer to Mr. Doss, which he

3  rejected. However, because it's a misdemeanor

4  and I am past the 90-day speedy trial period, it

5  would -- I would have -- had I had (inaudible),

6  yes, I probably would have, but I couldn't --

7  now it would be illegal for me to do so.

8  THE COURT: Okay.

9  MR. MARTINEZ: I wouldn't want to unlawfully

10  do that because we're past the 90 days on that.

11  THE COURT: Got it. Okay. State, anything

12  else on the materiality issue?

13  MR. MARTINEZ: No, sir.

14  MR. DOSS: The State hasn't offered whether

15  or not the -- unless I missed it, did the State

16  say that that would have affected the outcome --

17  the State hasn't argued that that application

18  affected the outcome of the trial, where I'm

19  saying it absolutely didn't because what

20  happened obviously happened.

21  MR. MARTINEZ: (Inaudible) without paying

22  the filing fee, he may not have been allowed to

23  file his pleadings.

24  MR. DOSS: Wait a minute. Objection. Wait

25  a minute. Either the State is either terribly

1    confused --

2         THE COURT:  That's all right.  Quit while

3    you're ahead, okay?

4         MR. DOSS:  Okay.

5         THE COURT:  Okay.  All right.  I find that

6    the allegation is not material and therefore the

7    case is dismissed.

8         MR. MARTINEZ:  I accept Your Honor's

9    findings.

10        MR. DOSS:  Thank you, Your Honor.

11        THE COURT:  All right.  Do we need a written

12   order that says that?

13        MR. MARTINEZ:  We'll definitely need a

14   written order, and then any outstanding motions

15   are thereby struck, no need for further

16   depositions?

17        THE COURT:  Yeah, they're moot.

18        MR. DOSS:  Withdrawn.

19        THE COURT:  They're moot, yeah.

20        MR. DOSS:  Moot.

21        THE COURT:  Okay?

22        MR. MARTINEZ:  Yes, Your Honor.

23        MR. DOSS:  Yes, Your Honor.

24        MR. MARTINEZ:  Thank you.  Thank you for

25   your time, and I appreciate your coming.

1    THE COURT:  Are you going to object to that?

2    MR. MARTINEZ:  Thank you for your time, Your

3  Honor, especially for coming over here.  I

4  appreciate it.

5    THE COURT:  Thank you.  I appreciate it.  I

6  appreciate both sides for their presentation.

7                    *  *  *  *  *  *  *

CERTIFICATE OF TRANSCRIPTIONIST

STATE OF FLORIDA:

COUNTY OF HILLSBOROUGH:


     I, Warren A. Lee, hereby certify that the foregoing transcript was produced by me from an audio file titled 17-CF-009089 Doss, Surgret 2018-01-16.mp3 and that said transcript is a true and correct transcript of the foregoing proceedings, to the best of my ability.


_____

Warren A. Lee