## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SURGRET URANIA DOSS,

      Plaintiff,

v.                               Case No: 8:22-cv-129-CEH-AAS

GREGORY P. HOLDER, MICHAEL
R. VICTOR, PAT KENNEDY, JOHN
WALTER MCDARBY, CITY OF
TAMPA, CHAD CHRONISTER,
JOHN DOES I-X,

      Defendants.

_____

## <u>ORDER</u>

This matter comes before the Court on Defendant John Walter McDarby's Motion to Dismiss (Doc. 79); Defendant Chad Chronister's Motion to Dismiss (Doc. 80); Defendant City of Tampa's Motion to Dismiss (Doc. 81); Defendants Pat Kennedy and Michael R. Victor's Motion to Dismiss (Doc. 82); and Defendant Gregory P. Holder's Motion to Dismiss (Doc. 83). Plaintiff, Surgret U. Doss, filed responses in opposition. Docs. 86, 87, 88, 89, 90.

Defendants argue for dismissal of Plaintiff's claims on several grounds, including immunity, failure to state a claim, and that certain claims are time-barred. The Court, having considered the motions and being fully advised in the premises, will grant Defendants' Motions to Dismiss. Plaintiff will be allowed one final opportunity to amend certain claims, as detailed below.

## I.    FACTUAL BACKGROUND[1]

Plaintiff Surgret U. Doss ("Plaintiff" or "Doss"), who proceeds *pro se*, filed a Fourth Amended Complaint (Doc. 72) on November 30, 2022. The events giving rise to his claims are as follows.

### Plaintiff Purchases Foreclosed Properties

The Hillsborough County Clerk of Court regularly conducts public foreclosure auctions online. Doc. 72 ¶ 28. In 2016, David Acevedo bought four properties: 517 Tuscanny St., 2534 Clareside Dr., 4336 Spinnaker Cove Lane, and 12725 Bramfield Dr. *Id.* ¶¶ 29–30. In March 2016, Acevedo transferred ownership of those properties to Plaintiff by way of four quitclaim deeds. *Id.* ¶ 31. The same year, Plaintiff moved into the Spinnaker property and used this address to obtain a replacement identification card from the Department of Motor Vehicles. *Id.* ¶ 33.

Plaintiff claims that after the expiration of the statute of limitations, a non-party law firm filed to foreclose against the Tuscanny property. *Id.* ¶¶ 34–38. Plaintiff was denied intervenor status in that case. *Id.* ¶ 38. Additionally, a foreclosure case was filed regarding the Spinnaker property, and Plaintiff asserts several procedural errors related to notices of appearance and substitution of counsel were made in that matter. *Id.* ¶¶ 39–55.

---

[1] The statement of facts is derived from the Fourth Amended Complaint (Doc. 72), the allegations of which the Court must accept as true in ruling on the instant motions to dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Then-Judge Gregory Holder presided over Hillsborough Circuit Court Case 15-CA-71, which concerned the Spinnaker property. *Id.* ¶¶ 39–40. On January 6, 2017, Plaintiff filed an Emergency Motion to Intervene in the case, requesting relief and a hearing as an interested party. *Id.* ¶ 56. The motion was denied without a hearing. *Id.* Soon after, Hillsborough County Sheriff's Office ("HCSO") employees posted a writ of possession for the Spinnaker Property, and Plaintiff's Emergency Motion challenging it was denied. *Id.* ¶ 58. On January 31, 2017, Plaintiff filed an emergency petition in the Second District Court of Appeal, and the Court issued an Order staying the writ of possession. *Id.* ¶ 59.

## Judge Holder's Perjury Referral

On February 9, 2017, Judge Holder reported Plaintiff to law enforcement for possible perjury based on a sworn filing Plaintiff allegedly submitted stating that he did not own property in the country, state, or nation. *Id.* ¶¶ 61, 71–73. Specifically, he contacted Detective Michael Victor, whose General Offense Report notes that Holder, "believing a fraud was being committed, researched the Hillsborough County Property Appraiser's website and located real property owned by the suspect (Doss) and request [sic] this fraud (perjury) be investigated by law enforcement." *Id.* ¶ 61.

On February 14, Plaintiff attempted to intervene in the Tuscanny property case, but the sitting judge obstructed his questioning of the bank's attorney and Plaintiff was escorted out. *Id.* ¶¶ 62–65. Thus, Plaintiff lost the property. *Id.* ¶ 65. Holder scheduled a Case Management Conference ("CMC") in the Spinnaker property case for February

17, and Plaintiff received notice of the CMC at his Spinnaker address. *Id.* ¶¶ 66–68. Plaintiff believed the order was unusual because the Second DCA had stayed the case, but attended to protect his interest in the Spinnaker property. *Id.* ¶¶ 68–78.

## Case Management Conference

Plaintiff arrived late to the CMC, which he claims began without him.  Judge Holder told the other attorneys present that he had checked the appellate court docket repeatedly to see what had been done as related to Plaintiff's "motion to review," and that the case had essentially been stayed. *Id.* ¶ 70. He accused Plaintiff of indicating in a sworn filing that he did not own any property in the United States. *Id.* ¶ 71. Plaintiff disputes having made any such filing. *Id.* ¶¶ 72–73.[2] Holder told Plaintiff that he had arguably committed perjury and that the matter had been referred to Detective Michael Victor of the Tampa Police Department for further investigation. *Id.* ¶¶ 74–75. Holder limited Plaintiff's ability to question the other attorneys at the hearing and stated that the purpose of the hearing was to investigate certain allegations related to the case. *Id.* ¶¶ 77–80.

## Interview, Warrant, and Arrest

After the CMC, Plaintiff learned that Detective Victor visited the Tuscanny property to speak with the tenants. *Id.* ¶ 81. Plaintiff repeatedly reached out to Victor and the Tampa Police Department about the investigation, to no avail. *Id.* ¶¶ 82–86.

---

[2] Although Plaintiff disputes having made such a filing, he attaches to his Fourth Amended Complaint an "Application for Determination of Civil Indigent Status," dated January 31, 2017, in which he attested to owning no property or real estate. Doc. 72-1 at 204–205.

The tenants stopped speaking with Plaintiff after Victor and HCSO Deputy McDarby visited the property. *Id.* ¶ 87. Plaintiff claims that he decided not to return to Tuscanny, fearing further retaliation, and never spoke to or met Victor. *Id.* ¶¶ 88–89. On March 17, 2017, HCSO deputies forcefully removed Plaintiff from his Spinnaker property, despite Plaintiff's proof of ownership. *Id.* ¶¶ 91–95. On March 20, 2017, Plaintiff filed a separate lawsuit in this District, in response to the eviction, against several banks and Holder. *Id.* ¶ 101.

### Perjury Proceeding and Dismissal

On May 26, Detective Victor filed a Criminal Report Affidavit ("CRA") against Plaintiff. *Id.* ¶ 103. In June, the State Attorney's Office charged Plaintiff with Perjury under Florida Statute 837.02(1), on the grounds that he made a false statement under oath. *Id.* ¶¶ 104–106. On June 27, 2017, Plaintiff turned himself in at the Hillsborough County Jail. He was released shortly after on a surety bond. *Id.* ¶ 108. After a number of proceedings were held in that case and Plaintiff filed discovery motions, the charges against him were dismissed on January 28, 2018. *Id.* ¶¶ 140–144. Plaintiff claims that as a result of Defendants' actions, he lost four legally acquired properties, potential residual income, and his primary home. *Id.* ¶¶ 145–152.

### a. Procedural Background

Plaintiff filed his initial complaint on January 14, 2022. Doc. 1. On May 3, he filed an Amended Complaint. Doc. 16. On August 15, Plaintiff filed an unopposed motion for leave to amend his complaint (Doc. 24), which was granted on September

20. Doc. 45. On October 17, Plaintiff filed a Third Amended Complaint, followed by two unopposed Motions for Leave to Amend Complaint (Docs. 64, 65). The Court granted his request to file another amended complaint. Doc. 71. On November 30, 2022, Plaintiff filed his Fourth Amended Complaint, the operative Complaint here. Doc. 72.

### b.  Plaintiff's Claims and Defendants' Motions

Across twenty-one counts, Plaintiff asserts state and federal claims against seven Defendants.[3] His claims include 14th Amendment conspiracy under 42 U.S.C. § 1985 (Count 1); 14th Amendment conspiracy to commit false arrest under 42 U.S.C. § 1985 (Counts 2–6); "False Arrest (4th Amendment Violation)" (Counts 7–8); *Monell* Claims against the City of Tampa under 42 U.S.C. § 1983 (Count 9); 4th, 5th, and 14th Amendment Violations for Failure to Adequately Train and Failure to Intervene under 42 U.S.C. § 1983 against Sheriff Chad Chronister (Count 10); Fourth Amendment Claims for Malicious Prosecution (Counts 11–15); negligent supervision (Counts 16 and 18); respondeat superior (Count 17); state law malicious prosecution (Count 19); intentional infliction of emotional distress (Count 20); and indemnification (Count 21).

Defendants move to dismiss on the grounds that certain Defendants are immune from suit, certain claims are time-barred, and Plaintiff fails to state a claim in the remaining counts. The Court finds as follows: (1) the false arrest claims are time-

---

[3] In addition to the named Defendants, Plaintiff sues "John Does I-X, Individually and in their Official Capacities."

barred; (2) Defendant Holder is protected by judicial immunity against Plaintiff's claims; and (3) the remaining counts fail to state a claim. Plaintiff will be given one final opportunity to amend the claims in Counts 1, 9, 10, 11–15, 16, 18, 19, and 20.[4]

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Although a *pro se* litigant's pleadings are held to a less stringent standard, they must still meet minimal pleading

---

[4] In the event that Plaintiff chooses to amend his Complaint for a fifth time, and in light of the fact that Plaintiff includes—as an exhibit—the filing that led to the perjury investigation his claims are based on (Doc. 72-1 at 204–205), the Court reminds him of Federal Rule of Civil Procedure 11, which provides that by signing papers or motions filed with the Court, a *pro se* party "certifies that to the best of [his] knowledge, information, and belief . . . [the filing] is not being presented for any improper purpose . . . the factual contentions have evidentiary support . . . and denials of factual contentions are warranted on the evidence or . . . are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b).

standards. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Olsen v. Lane*, 832 F.Supp. 1525, 1527 (M.D. Fla. 1993).

## III.   DISCUSSION

### A. Shotgun Pleading

As a threshold matter, Defendant Sheriff Chronister argues that the complaint is an impermissible shotgun pleading because it is full of conclusory, vague, and immaterial facts unrelated to any cause of action and that it fails to give adequate notice of Plaintiff's claims against him. Doc. 80 at 23–24. Although the operative complaint is indeed conclusory, vague, and unnecessarily lengthy, the Court will not dismiss it as a shotgun pleading because it sufficiently puts Defendants on notice of the claims against them. *Weiland v. Palm Beach Cnty. Sheriff's Off.,* 792 F.3d 1313, 1323 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").

### B. Judicial Immunity

Defendant (and former Judge) Gregory Holder is named in Counts One, Two, Eight, Fifteen, Nineteen, and Twenty. He presided over Hillsborough Circuit Court Case No. 15-CA-71, which involved one of Plaintiff's quitclaimed properties. Doc. 72 ¶¶ 40, 61–80. Plaintiff alleges that Holder conspired to have him falsely arrested and prosecuted for perjury. *Id.* at 2–3. Holder argues that judicial immunity bars Plaintiff's

claims because they are premised on acts that fell within his judicial capacity and are normally performed by judges in court. Doc. 83 at 4–6. Plaintiff responds that immunity should not be granted because the claims against Judge Holder are not in his judicial capacity, and he acted outside his judicial capacity when he referred the alleged perjury to law enforcement. Doc. 87 at 2–6.

Judges are entitled to absolute judicial immunity from damages for acts taken in their judicial capacity unless they acted in the "clear absence of all jurisdiction." *Bolin v. Story,* 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted). In *Stump v. Sparkman,* 435 U.S. 349, 356–62, the Supreme Court recognized a two-part test to be used in determining whether a judge is absolutely immune from potential civil liability. The reviewing court must ask whether the judge was acting in a judicial capacity while dealing with Plaintiff, and whether the judge acted in the "clear absence of all jurisdiction." *Id.* at 356–57, 360. Only in circumstances where a judge acted in the "clear absence of all jurisdiction" or dealt with Plaintiff in a non-judicial capacity can the judge face civil liability for actions taken. *See id.* at 356–62. This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction. *Id.* at 356–57.

The various claims against Holder stem from two acts: his referral of Plaintiff to law enforcement and questioning of Plaintiff during the CMC. Doc. 72 ¶¶ 40–80, 208–217. First, the Court agrees with Defendant that Holder acted in his judicial capacity when he referred Plaintiff's case to law enforcement for investigation and questioned Plaintiff in court. In making this determination, the Court considers

whether the challenged actions: (1) were part of the ordinary judicial function; (2) occurred in chambers or in court; (3) involved a case pending before the judge; and (4) arose out of a visit to a judge in the judge's official capacity. *Sibley v. Lando,* 437 F.3d 1067, 1070 (11th Cir. 2005). The first act here, questioning a litigant during a case management conference, is an everyday part of the ordinary judicial function, occurred in court, involved a case pending before the judge, and arose out of a visit to Holder in his official judicial capacity. The second—referring a possible instance of perjury to law enforcement—involved a case Holder presided over. Plaintiff's assertion that Holder lacked jurisdiction over the foreclosure matter when he made the investigative referral is insufficient to render the action outside Holder's judicial capacity, even assuming Plaintiff is correct on the jurisdictional point. *See Bolin,* 225 F.3d at 1239 (explaining that a judge acts within the judicial capacity even if the act is in excess of jurisdiction so long as that excess does not amount to the "'clear absence of all jurisdiction'" (quoting *Stump,* 435 U.S. at 356–57).

The second prong asks whether the judge acted in the clear absence of his jurisdiction. In answering that question, courts "construe the scope of the judge's jurisdiction in an extremely broad fashion." *Kalmanson v. Lockett,* 848 So. 2d 374, 379 (Fla. 5th DCA 2003). Plaintiff argues that because the foreclosure case was before the Second District Court of Appeal when Holder called Michael Victor, the investigative referral was "entirely outside his jurisdiction as a judge." Doc. 87 at 4. Again, the Court disagrees. Construing the scope of Judge Holder's jurisdiction in an "extremely broad fashion," neither questioning a litigant at a case management conference nor

10

making an investigative referral to law enforcement were acts taken in the "complete absence of all jurisdiction." *See Mireles v. Waco,* 502 U.S. 9, 12 (1991). Because Holder is immune from Plaintiff's claims, amendment would be futile, and Plaintiff's claims against Holder in Counts One, Two, Eight, Fifteen, Nineteen, and Twenty are dismissed with prejudice. *See William B. Cashion Nevada Spendthrift Tr. v. Vance,* 552 Fed. Appx. 884, 885  (11th Cir. 2014) (per curiam) (affirming dismissal with prejudice of § 1983 claim based on judicial immunity).

### C. Statute of Limitations

*False Arrest*

Counts Three through Six are claims against Victor, Kennedy, McDarby, and John Does I–X for conspiracy to falsely arrest Plaintiff pursuant to 42 U.S.C. § 1985. Count Seven is a claim for false arrest in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Victor and Kennedy. Plaintiff states that he turned himself in to jail pursuant to an arrest warrant on June 27, 2017. Doc. 72 ¶ 108. Defendants argue that Plaintiff's false-arrest claims accrued that day and must have been filed by June 27, 2021. Doc. 79 at 22; Doc. 80 at 22. Doc. 82 at 7–8; Doc. 83 at 7. Plaintiff responds generally (and without citing to law) that his claims were timely filed. *See* Docs. 86–90.

Claims brought under § 1985 are measured by the personal injury limitations of the state. *Rozar v. Mullis,* 85 F.3d 556, 561 (11th Cir. 1996). In Florida, there is a four-year personal injury statute of limitations. *Chappell v. Rich,* 340 F.3d 1279, 1283 (11th Cir. 2003); Fla. Stat. § 95.11(3). A cause of action for false arrest accrues as soon as

the arrest occurs. *Wallace v. Kato,* 549 U.S. 384, 387–388 (2007). Here, Plaintiff turned himself in to jail pursuant to the warrant on June 27, 2017—meaning that he had until June 27, 2021, to bring an action. Doc. 72 ¶ 108. He did not file the instant case until January 14, 2022, more than six months after the statute of limitations expired. *See* Doc. 1. As Defendants point out, Florida Statute § 95.051 allows for tolling of a statute of limitations in certain situations. However, Plaintiff makes no tolling argument, nor do his claims obviously fall under any statutory exception. Therefore, it is apparent from the face of the complaint that the claim is time-barred, and Counts Two through Six are due to be dismissed under Fed. R. Civ. P. 12(b)(6). *Garcia v. Chiquita Brands Int'l, Inc.,* 48 F.4th 1202, 1220 (11th Cir. 2022).

Count Seven is a claim for false arrest under the Fourth Amendment and 42 U.S.C. § 1983. Doc. 72 at 44. Again, no statute of limitations is specifically prescribed. Therefore, the applicable statute of limitations for causes of action that arise pursuant to a § 1983 claim is that of the forum state. *Powell v. Thomas,* 634 F.3d 1300, 1303 (11th Cir. 2011). Florida law requires that actions for assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, and any other intentional tort be filed within four years. *Jones v. Collier County Sheriff's Dept.,* No. 95-232-CIV-FTM-17D, 1996 WL 172989, at *3 (M.D. Fla. Apr. 9, 1996).

While the Court gives some leniency to a *pro se* party in their pleadings, the "statute of limitations established by Florida Statute §95.11(3) presents an absolute bar" to a cause of action. *Id.* Here, Plaintiff's Complaint was filed over six months after the limitations period expired. Thus, it is apparent from the face of the Complaint that

his false arrest claims are time-barred, and the Court will grant Defendants' motion under Fed. R. Civ. P. 12(b)(6). *Gonsalvez v Celebrity Cruises, Inc,* 750 F. 3d 1195, 1197 (11th Cir. 2013). Because amendment would be futile, these claims are dismissed with prejudice.

Finally, Count One is a 42 U.S.C. § 1985 claim against all Defendants for 14th Amendment Conspiracy. Doc. 72 at 32. To the extent this claim is based on a theory of false arrest, it too is time-barred and due to be dismissed with prejudice (*Id.* ¶¶ 162–171). Count One will be considered separately to the extent it is based on a theory of malicious prosecution.

### Kennedy

Kennedy argues that Counts One, Four, Seven, Twelve, Nineteen and Twenty are barred by the statute of limitations and must be dismissed with prejudice because he was only named in an amended complaint after the statute of limitations had expired. Doc. 82 at 1. Plaintiff disagrees, arguing that Kennedy was named in the original complaint and that counsel waived service on "readmitting him." Doc. 86 at 9. The Court disagrees with Kennedy's argument for dismissal based on the statute of limitations. "A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *United States ex rel. Hunt v. Cochise Consultancy, Inc.,* 887 F.3d 1081, 1085 (11th Cir. 2018) (marks and citation omitted). Defendant argues that Plaintiff "did not originally name Patrick Kennedy as a Defendant in the January 2022 complaint." Doc. 82 at 8. This is incorrect, as the initial complaint in fact named Kennedy. *See*

Doc. 1. Thus, it is not apparent from the face of the complaint that the claims against him are barred. *See* Fed. R. Civ. P. 3 ("a civil action is commenced by filing a complaint with the court").

### D. Qualified Immunity

*Deputy McDarby[5]*

Deputy McDarby seeks dismissal of Counts One, Five, and Thirteen based on qualified immunity. Doc. 79 at 17–19. He argues that Plaintiff has failed to sufficiently allege a constitutional violation of clearly established law. *Id.* Plaintiff disagrees. Doc. 88 at 4. However, he does not specifically respond to Defendant's arguments on either prong of the qualified immunity analysis.

Qualified immunity is a defense to federal claims only. *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995). "Qualified immunity protects police officers from suit in their individual capacities for discretionary actions performed in the course of their duties." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1318 (11th Cir. 2010). The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at

---

[5] To the extent Plaintiff sues Deputy McDarby in his official capacity (Doc. 72 ¶ 24), any such claims are due to be dismissed as redundant, considering that Plaintiff also sues the Sheriff in his official capacity in this action. *Bailey v. Town of Lady Lake, Fla.,* No. 5:05-CV464-WTH-GRJ, 2006 WL 2048250, at *3 (M.D. Fla. July 20, 2006) ("[W]hen a suit is filed against both a governmental entity and the entity's officers and employees in their official capacities, it is appropriate for the Court to dismiss the named individual defendants in their official capacities as 'redundant and possibly confusing to the jury.'") (citing *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991)

the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). As such, a court may grant a motion to dismiss on qualified immunity grounds where the complaint fails to allege the violation of a clearly established constitutional right. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

To receive qualified immunity, "an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks omitted). "A governmental official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). If a defendant establishes that he was acting within discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate," *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) (internal quotation marks omitted), which requires the plaintiff to establish that qualified immunity is inappropriate by showing that "(1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct," *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Here, there is no dispute that Deputy McDarby was acting within his discretionary authority as a law enforcement officer at the time of the acts in question.

As to Counts One and Thirteen[6], Plaintiff fails to sufficiently allege that McDarby violated a clearly established constitutional right. Plaintiff alleges that McDarby was contacted by Det. Victor to interview a witness. McDarby interviewed the witness and then wrote a report. Doc. 72 ¶¶ 87–88, 300. Plaintiff does not cite any case law that would apply to the facts of this case and thus notify McDarby that his actions would violate Plaintiff's constitutional rights. Further, Plaintiff does not allege facts from which it can be said that McDarby's conduct was so egregious as to violate his constitutional rights. Nor are there any broad statements of principle or law that would give McDarby fair notice that his actions would violate a clearly established constitutional right. Plaintiff fails to show that under "clearly established" law, McDarby's actions amounted to a constitutional violation. *See Spivey v. Elliott,* 41 F.3d 1497, 1499 (11th Cir. 1995). The claims against McDarby will thus be dismissed. Considering Plaintiff's *pro se* status and request for leave to amend in the event his Complaint is dismissed (Doc. 88 at 5), he will be given one final opportunity to replead the claims in Count One and Count Thirteen against McDarby, if he so chooses.

### D. Fictitious Defendants

In Count Ten, Plaintiff alleges that unnamed Sheriff's Office employees furthered the conspiracy against him. Doc. 72 ¶¶ 262–274. Defendant Sheriff argues that Plaintiff fails to state a cause of action against those unnamed employees and failed to perfect a fictious party filing. Doc. 80 at 17. Furthermore, the Sheriff argues

---

[6] As discussed, *supra*, Count Five is dismissed as it is time-barred.

that Plaintiff's attempts to substantiate his allegations by mentioning unspecified acts on unspecified dates by unnamed Defendants provides no support for his claims. *Id.* Plaintiff does not respond to these arguments. *See* Doc. 90.

As a general matter, fictitious-party pleading is not permitted in federal court. *Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir. 2010); *see Williams v. DeKalb Cnty. Jail,* 638 F. App'x 976, 976–77 (11th Cir. 2016) (holding that the district court did not err in dismissing a complaint for failure to state a claim because the complaint failed to name an actionable party). An exception to this rule exists where "the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson,* 598 F.3d at 738 (quoting *Dean v. Barber,* 951 F.2d 1210, 1215–16 (11th Cir. 1992)). Relatedly, plaintiffs have been allowed to "use fictitious names to indicate real defendants" where it appeared that discovery would "likely uncover the defendants' actual names." *Daleo v. Polk Cnty. Sheriff,* No. 8:11-cv-2521-JSM-TBM, 2012 WL 1805501, at *5 (M.D. Fla. May 17, 2012). In *Daleo,* the plaintiff named "Unnamed Polk County Deputies" as defendants, and the Court found that discovery would likely uncover these defendants' names where the amended complaint contained the address of the plaintiff's home, where the alleged violations occurred, and the date of the police encounter. *Id.* at *1, *5.

Here, Plaintiff merely contends that John Does 1–10 are "currently unknown and fictitiously named defendants" about whom "Plaintiff obtained information during his lower-court proceedings." Doc. 82 ¶ 25. Plaintiff provides no specific information, and whether discovery will likely uncover the names of these parties is

unclear. Thus, all claims against the "John Doe" Defendants will be dismissed without prejudice.

### E. Failure to State a Claim

### Count One

Plaintiff sues Holder, Victor, Kennedy, McDarby, and John Does I-X under 42 U.S.C. § 1985 for conspiring to accuse him of making a false statement and have him arrested. Doc. 72 ¶ 162. Defendants argue that Count One fails to state a plausible claim for conspiracy on several grounds. Doc. 79 at 6–8; Doc. 82 at 8–10; Doc. 83 at 8. Of the remaining Defendants, Kennedy argues that there are no factual allegations that he spoke to Holder, and no facts to demonstrate a conspiracy between him and Holder. Doc. 82 at 9. Both Victor and Kennedy argue that the complaint lacks any allegations regarding a conspiracy to violate Plaintiff's rights. *Id.* at 13. Furthermore, they argue Plaintiff presents nothing more than conclusory statements regarding the alleged conspiracy. *Id.* Plaintiff responds that his conspiracy claims should not be dismissed because Defendants misrepresent the facts and have refused to provide him with information underlying the state court perjury case. Doc. 86 at 7–15.

To the extent this claim is premised on false arrest, it is dismissed with prejudice as time-barred. *See* the discussion, *supra*, at pages 10–12. However, Doss also claims that Defendants conspired to maliciously prosecute him. *Id.* ¶ 170. Thus, the Court analyzes whether the allegations related to malicious prosecution are sufficient to survive dismissal. Because Plaintiff fails to plausibly allege a conspiracy as to any of the Defendants, Count One is due to be dismissed.

The elements of a section 1985 conspiracy are: (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Cook v. Randolph County, Georgia,* 573 F.3d 1143, 1156 (11th Cir. 2009). A complaint containing conclusory, vague, and general allegations of conspiracy will be dismissed as insufficient. *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990); *Kearson v. Southern Bell Telephone & Telegraph Co.,* 763 F.2d 405, 407 (11th Cir. 1985). The complaint must demonstrate that the conspiratorial acts intruded upon Plaintiff's federal rights, and that Defendants reached an agreement or understanding to commit the acts. *Bendiburg,* 909 F.2d at 468; *see also Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988); *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984).

The claims against Victor and Kennedy fall far short of a plausible conspiracy claim. The Complaint alleges that Kennedy and Victor spoke on the telephone, and that Kennedy acted as the notary for Victor's probable cause attestation on the CRA. Doc. 72 ¶ 86, Doc. 72-1 at 195. However, there are no allegations regarding the substance of the conspiracy or which of Plaintiff's rights were violated. Instead, Plaintiff provides conclusory, vague, and general allegations. For example, the bulk of his allegations regarding Victor are that his investigation was deficient and excluded exculpatory information that would have demonstrated Plaintiff did not own the properties he was accused of owning. Doc. 72 ¶¶ 195, 197, 207. However, the

Complaint's specific factual allegations: that Victor went to the Tuscanny property to speak with tenants, never attended the perjury proceedings, and failed to interview or reach out to Plaintiff (*Id.* ¶¶ 81, 82, 87) do not lend support to Plaintiff's claims. Plaintiff's allegations that Victor, Kennedy, and the other Defendants conspired to maliciously prosecute him are conclusory, vague, and general. Thus, they are insufficient to state a claim. *Bendiburg,* 909 F.2d at 468; *Fullman,* 739 F.2d at 556–57

Defendant is also correct that Plaintiff's assertion that Kennedy and Victor conspired together because Victor was "[u]nder Kennedy's direct supervision" is barred by the doctrine of intracorporate conspiracy. This doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor" and applies to public and governmental entities, such as police departments. *Dickerson v. Alachua Cnty. Comm'n,* 200 F.3d 761, 767 (11th Cir. 2000). This claim is dismissed without prejudice.[7]

**Count Nine**

In Count Nine, Plaintiff brings claims under 42 U.S.C. § 1983 and *Monell* against the City of Tampa, alleging that the City's policies, customs, and practices resulted in the violation of his constitutional rights. Doc. 72 ¶¶ 218–260. The City argues that Plaintiff fails to state a claim because he: (1) fails to allege a pattern that

---

[7] Additionally, for the same reason that the official capacity claims against Deputy McDarby were dismissed, (*supra*, at 14) the claims against Officers Kennedy and Victor in their official capacities will be dismissed as redundant since the City of Tampa is also named in this suit. *Bailey,* 2006 WL 2048250 at *3.

put the City on notice of constitutional violations; (2) alternatively, fails to demonstrate that the City had such notice based on a theory of obvious need; and (3) fails to allege plausible facts that would allow the Court to infer that the city is liable for the alleged misconduct. Doc. 81 at 5–9. Plaintiff responds that the City knew Victor spent excessive time investigating him, instead of his primary assignment, and that he has set out several examples of the City's history of violating constitutional rights. *See* Doc. 89.

To state a Section 1983 claim against a municipality, a plaintiff must allege that his constitutional injury was caused by the execution of a government entity's official custom or policy. *Sheffield v. City of Sarasota,* No. 8:15-cv-319-JSM-TBM, 2015 WL 1346421, at *6 (M.D. Fla. Mar. 24, 2015) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). "But a municipal employer is not vicariously liable under Section 1983 for injuries caused solely by its employees." *Id.* (citing *Monell,* 436 U.S. at 691–94; *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004)). "A plaintiff can only impose Section 1983 liability on a municipality if the plaintiff can show (1) that her constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that right, and (3) that the policy or custom caused the constitutional violation." *Id.* (citing *McDowell,* 392 F.3d at 1289).

Plaintiff alleges that incidents from 1973, 1980, and 1983 demonstrate a pattern sufficient to put the City on notice of constitutional violations. Doc. 72 ¶¶ 244, 247, 248. However, the Court agrees with Defendant that these three isolated incidents are insufficient to establish a pattern. *Depew v. City of St. Mary's Ga,* 787 F.2d 1496, 1499

(11th Cir. 1986). Even if these three incidents could establish a pattern, they are not substantially similar to the facts at hand, and thus cannot form the basis for a *Monell* claim. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). The first incident took place nearly 50 years ago, when a grand jury proceeding led to a finding that Tampa Police Officers provided false information to secure search warrants with the Chief of Police's knowledge. Doc. 72 ¶¶ 244–246. The second incident (from the mid-1980s) involved a police officer who was prosecuted for conspiracy and misconduct for coaching a confidential informant to lie. *Id.* ¶ 247. In the third incident, four TPD officers conspired to arrest and wrongfully convict a man for murder and rape. *Id.* ¶ 248. Additionally, Plaintiff mentions a 2020 incident in which an individual protesting her brother's killing by a police officer was arrested. *Id.* ¶¶ 249–250. None of these cases involve an investigation related to a court proceeding, nor are any of them otherwise substantially similar to the facts here. Thus, Plaintiff fails to plausibly allege that the City had prior notice of a constitutional issue.

As Plaintiff fails to allege a pattern of incidents prior to 2017, he must demonstrate that the city had notice of unconstitutional conduct on a theory of obvious need. This method of proving "patently obvious" failure to train encompasses a "narrow range of circumstances where the consequences of the failure to equip law enforcement with the specific tools to handle recurring situations, would be highly predictable." *Board of County Commissioners v. Brown*, 520 U.S. 397, 409 (1997). Training officers on how to properly conduct perjury investigations does not fit within the "limited circumstances" in which this theory applies, and Plaintiff thus fails to state

a plausible *Monell* claim for failure to train or supervise against the city. *See e.g., Gold v. City of Miami*, 151 F. 3d 1346, 1352 (11th Cir. 1998) (holding that training officers to use handcuffs is not an obvious training need). This count is dismissed without prejudice.

### Count Ten

*Sheriff Chronister*

Pursuant to 42 U.S.C. § 1983, Count Ten alleges that the Sheriff failed to adequately train his officers and intervene to stop the misconduct of McDarby and the John Doe employees in violation of the Fourth, Fifth, and Fourteenth Amendments. Doc. 72 ¶ 263. The Sheriff argues that Plaintiff fails to sufficiently allege a connection between office customs, policies, or procedures and any constitutional violations, and that his unsupported conclusory allegations, factual deductions, and legal conclusions are facially insufficient. Doc. 80 at 6–10. Plaintiff disagrees and argues that he will be able to deduce more evidence and establish causal evidence through discovery. Doc. 90 at 3–4.

A plaintiff may bring a § 1983 claim against a municipal defendant for deprivation of a federal right pursuant to an official policy, practice, or custom. *Riebsame v. Prince*, 267 F.Supp.2d 1225, 1233 (M.D. Fla. 2003). However, beyond simply alleging that such a policy exists, he must also allege that a course of action was "consciously chosen" or "officially sanctioned or ordered." *Id.* Thus, inadequate law enforcement training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the

police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989). To establish a municipality's "deliberate indifference," a plaintiff must put forward some evidence that the municipality was aware of the need to train or supervise its employees in a particular area. *Gold,* 151 F.3d at 1350–51.

Establishing notice of a need to train or supervise is difficult. *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami, FL,* 637 F.3d 1178, 1189 (11th Cir. 2011) A plaintiff may demonstrate notice by showing a "widespread pattern of prior abuse" or even a single earlier constitutional violation. *Gold,* 151 F.3d at 1351. But he must also demonstrate that constitutional violations were likely to recur without training. *Id.* at 1352 n.12. In some cases, the need for training is so obvious that deliberate indifference can be established even without an earlier violation or pattern of abuse. *Brown,* 520 U.S. at 409. Still, it must have been obvious that the municipality's failure to train or supervise its employees would result in a constitutional violation. *Id.* In addition to notice, a plaintiff must also establish that the city "made a deliberate choice" not to train its employees. *Gold,* 151 F.3d at 1350.

Here, Plaintiff argues that the Sheriff had notice because his Deputies arrested Plaintiff in 2015 and 2017. Doc. 72 ¶¶ 264–265. Plaintiff does not give any detail regarding the 2015 arrest, but states the 2017 arrest was based on a traffic violation. *Id.* ¶ 267. These incidents, taken as true, fail to establish a pattern of similar conduct sufficient to put the Sheriff on notice of the misconduct alleged in this case. Plaintiff has not plausibly alleged that the Sheriff had fair warning or notice that Deputy McDarby's interview and written report would constitute a pattern of unconstitutional

conduct. *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). Furthermore, Plaintiff's unsupported conclusory allegations, unwarranted factual deductions, and legal conclusions are insufficient to state a claim. Plaintiff fails to allege prior sufficiently similar civil rights violations, let alone "obvious, flagrant, rampant" violations that would have put the Sheriff on notice of the need for correction. *Holloman v. Harland,* 370 F.3d 1252, 1294 (11th Cir. 2004). On these grounds, Count Ten will be dismissed without prejudice.

### Fourth Amendment Malicious Prosecution

Counts Eleven, Twelve, Thirteen, Fourteen, and Fifteen are Fourth Amendment malicious prosecution claims against Victor, Kennedy, McDarby, John Does I-X, and Holder.  Doc. 72 at 65–78.  Defendants argue that Plaintiff fails to allege that they were the legal cause of the original proceeding or that there was an absence of probable cause. Doc. 79 at 10–13; Doc. 82 at 11–13.

To establish his claim, Plaintiff must both allege that Defendants violated his Fourth Amendment right to be free from unreasonable seizures and that the elements of the common law tort of malicious prosecution were met. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2002). Under Florida law, a cause of action for malicious prosecution consists of the following six elements: that (1) an original criminal or civil judicial proceeding against the plaintiff was commenced or continued; (2) the defendant was the legal cause of the proceeding against the plaintiff; (3) the termination of the proceeding constituted a bona fide termination in favor of the plaintiff; (4) there was an absence of probable cause for the proceeding; (5) there was malice on the part of the defendant, and (6) the plaintiff suffered damage as a result of

the proceeding. *Alamo Rent-A-Car v. Mancusi,* 632 So.2d 1352, 1354 (Fla. 1994); *see also DeMartini v Town of Gulf Stream,* 942 F.3d 1277, 1309 (11th Cir. 2019).

Counts Eleven through Fifteen will be dismissed because Plaintiff fails to plausibly allege facts to support that the proceeding against him lacked probable cause. Although Plaintiff alleges repeatedly that the proceedings against him were instituted "absent probable cause," these allegations are nothing more than legal conclusions that the Court is not required to accept as true, even at this stage. *Iqbal*, 556 U.S. at 677–78.

A defendant can establish probable cause by showing that it had "a reasonable belief, based on the facts and circumstances known to [it], in the validity of the claim[s]." *DeMartini,* 942 F.3d at 1301 (quoting *Mee Indus. v. Dow Chem. Co.,* 608 F.3d 1202, 1211, 1218 (11th Cir. 2010). Whether probable cause exists is generally determined based on the facts known at the time the underlying action was initiated, not some later point in time. *See United States v. Irurzun,* 631 F.2d 60, 62 (5th Cir. 1980).

Thus, to state a plausible claim for malicious prosecution, Plaintiff must plausibly allege that Defendants lacked probable cause to bring the perjury claims against him. Instead, Plaintiff merely recites the chronology of events (which ended with the charges being dismissed) and adds conclusory claims of conspiracy and an absence of probable cause. In order for his malicious prosecution claim to survive dismissal, however, Plaintiff must meet minimal pleading standards and provide sufficient factual allegations which, if accepted as true, would "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at

570).  The Fourth Amended Complaint, as it stands, does not. For example, Count Eleven states that the Defendants "acting in concert, reached an agreement to falsely accuse Plaintiff of making a false statement . . . to have him arrested without probable cause, maliciously prosecuted, and potentially imprisoned for up to five years if convicted." Doc. 72 ¶ 275. These are legal conclusions that the Court is not required to accept as true. Thus, the Court will allow Plaintiff to amend these counts, if he so chooses, to allege a factual basis for the absence of probable cause and include sufficient allegations to support the Complaint's legal conclusions. *See Wittenberg v. Judd,* No. 8:17-CV-467-RAL-AEP, 2017 WL 1399817, at *5 (M.D. Fla. Apr. 19, 2017).

**Count Sixteen**

Count Sixteen is a state law negligent supervision claim against Sheriff Chronister in his official capacity. Doc. 72 at 82. Sheriff Chronister argues that his office is entitled to sovereign immunity, and that neither he nor McDarby owed Plaintiff a duty. Doc. 80 at 19. Even if the Court were to find that he owed a duty of care to Plaintiff, the Sheriff argues that the challenged acts were "discretionary" and thus cannot lead to governmental liability. *Id.* at 20. Finally, he argues that Plaintiff's remaining claims are conclusory and lack sufficient factual detail to survive the motion to dismiss. *Id.* at 21–22. Plaintiff responds that his Complaint states plausible claims for relief, but fails to respond to the Sheriff's specific arguments. *See* Doc. 90.

Sovereign immunity "protects the state from burdensome [lawsuits that] interfere [] [with] the performance of its governmental functions and preserves its

27

control over state funds, property and instrumentalities." *Davis v. State, Dep't of Corr.,* 460 So. 2d 452, 461 (Fla. Dist. Ct. App. 1984) (Ervin, C.J., dissenting). "In Florida, sovereign immunity is the rule, rather than the exception." *Pan-Am Tobacco Corp. v. Dep't of Corr.,* 471 So. 2d 4, 5 (Fla. 1984). However, the Florida legislature has waived sovereign immunity from tort suits to the extent set out in Fla. Stat. § 768.28. This waiver extends to any state "agencies or subdivisions." *Cauley v. City of Jacksonville,* 403 So. 2d 379, 384 (Fla. 1981).

The Sheriff's office is thus entitled to sovereign immunity against Plaintiff's tort claims subject to applying § 768.28. When a Florida governmental entity is sued for negligence, a court first determines whether, pursuant to § 768.28, a private person would have a duty of care and be similarly liable to the Plaintiff. *Lewis v. St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). Whether a defendant owes a plaintiff a duty of care is a question of law for the trial court, and Courts have typically found four grounds to find such a duty: (1) legislation; (2) case law; (3) judicial precedent; or (4) a duty arising from the general facts of the case. *See, e.g., Clay Elec. Coop., Inc. v. Johnson,* 873 So.2d 1182, 1185 (Fla. 2003). Sheriff Chronister argues that Plaintiff does not establish that he or McDarby owed him a duty of care. He contends that McDarby's witness interview and report of that interview do not establish a duty of care, and that Florida Courts have found that the statutory waiver of sovereign immunity does not create a cause of action for allegedly "negligent police work." Doc. 80 at 19. Plaintiff's response simply states that "Chronister and the others had a duty not to violate Plaintiff's fundamental rights." Doc. 90 at 2.

To the contrary, based on the law and allegations in the complaint, the Court finds that Plaintiff was not owed a duty of care, and his claim thus fails. Plaintiff's Complaint and his Response to the Motion to Dismiss fail to cite to legislation, case law, or any other authority that would support a finding that the Sheriff owed Plaintiff a duty of care, as opposed to the duty owed to the public at large, based on the facts of this case. Plaintiff claims that the Sheriff's failure to train HCSO employees resulted in his unlawful arrest, the fabrication of evidence to justify his arrest, and the failure to disclose exculpatory information. Doc. 72 at 82. However, Plaintiff fails to cite any grounds for his argument that the Sheriff owed him a duty of care, and the general facts of the case are not enough to establish that a duty existed. [8] Additionally, Defendant is correct that there is no common law duty for either a private person or a governmental entity to prevent the misconduct of third persons. *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah,* 468 So. 2d 912, 918 (Fla. 1985). Therefore, Count Sixteen fails to state a plausible claim for relief.

Moreover, even if a duty of care existed, the challenged act of failure to train, which Plaintiff appears to allege, is discretionary, and the Sheriff cannot be held liable. An act is discretionary when it: (1) involves a basic government policy, program or objective; (2) is essential to the realization or accomplishment of that policy, program, or objective; (3) requires the basic policy evaluations, judgments, and expertise on the

---

[8] *See Clay Elec. Co-op., Inc,* 873 So. 2d 1182, 1185 (Fla. 2003) (finding that a duty arose "from the general facts of the case" where the parties relied on an alleged contract between the parties to establish a legal duty).

part of the governmental agency involved; and (4) the agency involved possesses the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision. *Trianon Park,* 468 So. 2d at 918. Plaintiff contends that the Sheriff failed to train the deputies. The development of policies and procedures related to the training of officers is a discretionary, planning-level function, that is immune from suit. The only factual allegations against McDarby are that he conducted an interview at the request of Detective Victor and drafted a report. Doc. 72 ¶¶ 5, 87, 364–365. Plaintiff fails to provide any coherent counterargument, and the remainder of his allegations in this count are conclusory. Thus, this count will be dismissed. Further, it will be dismissed with prejudice. Leave to amend is not needed when it would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Here, further amendment of the claim would be futile because Plaintiff was not owed a duty of care.[9]

**Count Seventeen**

Count Seventeen is a "State Law Claim for Respondeat Superior" Against the City. Doc. 72 at 84. Plaintiff alleges the City failed to train and discipline its employees on truthfully representing the facts of an interaction with an arrestee, disclosure of evidence, and reliance on statements by incentivized informants. *Id.* ¶ 333. The City argues that this count should be dismissed because the concept of

---

[9] In this Count, Plaintiff also requests punitive damages in the amount of $100,000 against the Sheriff. Doc. 72 at 84. However, Plaintiff's request for punitive damages against the Sheriff is improper, and due to be stricken, because punitive damages are not allowed against a government entity. *Colvin v. McDougall,* 62 F.3d 1316, 1319 (11th Cir. 1995) (holding that a Plaintiff may not receive a punitive damages award against a Florida Sheriff's Department); *see also* Fla. Stat. § 768.28(5)(a).

respondeat superior is not a cause of action, and the City is not vicariously responsible for employees who act maliciously and willfully. Doc. 81 at 9. Plaintiff fails to respond.

The Court agrees that respondeat superior does not constitute an independent cause of action. Therefore, Count Seventeen is due to be dismissed with prejudice. *See Colite Int'l Inc. v. Robert L. Lipton, Inc.,* No. 05-60046-CIV-DIMITROULEAS, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006) ("Plaintiffs' counts for respondeat superior liability should be dismissed with prejudice, since no such cause of action exists for respondeat superior.").

### Count Eighteen

Count Eighteen is a state-law claim against the City for negligent training and supervision. Doc. 72 ¶¶ 342–350. The City argues that sovereign immunity precludes this claim and that Plaintiff fails to challenge the implementation or operation of the City's training program as it relates to the officers in this case. Doc. 81 at 9–10. As to negligent supervision, the City argues that Plaintiff fails to allege that it had any notice of misconduct by Officer Victor or Officer Kennedy that would have caused it to investigate, reassign or discharge them, and that the Complaint's conclusory allegations are insufficient to survive a motion to dismiss. *Id.* at 10. Plaintiff fails to respond to the City's specific arguments and states generally that the Court should reject Defendant's arguments. Doc. 89 at 5.

Liability for negligent supervision or retention arises only when an employee acts outside the scope of employment. *See Buckler v. Israel,* 680 F. App'x 831, 834 (11th Cir. 2017); *Yule v. Ocean Reef Cmty. Ass'n,* No. 19-10138-CIV, 2020 WL 3051505, at *9

(S.D. Fla. June 8, 2020). Doss pleads that Kennedy and Victor worked for the City and "act[ed] at all times within the scope of their employment in committing the misconduct described in this complaint." Doc. 72 ¶¶ 23, 340, 382. These allegations shield the City from liability as a matter of law. *See Santillana v. Fla. State Ct. Sys.,* No. 609CV-2095-PCF-KRS, 2010 WL 271433, at *11 (M.D. Fla. Jan. 15, 2010); *Thomas v. City of Jacksonville,* No. 3:13-CV-737-TJC-MCR, 2017 WL 3316478, at *10 (M.D. Fla. Aug. 3, 2017).

In Count Eighteen, Plaintiff also alleges that the City is liable for Negligent Training. Doc. 72 ¶¶ 344–347. Specifically, he claims that the City failed to train Tampa Police Officers regrading proper perjury investigations, relying on statements by incentivized informants, and protocol around writing accurate police reports and providing discovery to defendants. *Id.* The City claims that this claim is precluded by sovereign immunity and due to be dismissed because it is based on a discretionary act, and the fact that Plaintiff fails to challenge the implementation or operation of the City's training program as it related to the individual officers in this case. Doc. 81 at 9–10. An act is "discretionary" when all of the following conditions have been met:

> (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action require[s] the exercise of basic policy evaluation[s], judgment[s], and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possess[es] the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision.

*Trianon Park,* 468 So.2d at 918 (internal quotations omitted); *see also Kaisner v. Kolb,* 543 So.2d 732, 737 (Fla. 1989).

The Court agrees with the City that its decisions regarding the content of a police training program are discretionary acts that meet these conditions. *Lewis,* 260 F.3d at 1266 ("A city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning."). Furthermore, Plaintiff only challenges the content of the City's training program, rather than challenging the way the program was implemented or operated. Where a Plaintiff merely challenges the content of a training program, rather than the City's implementation or operation of the program, the city is afforded sovereign immunity. *Mercado,* 407 F.3d at 1162. Therefore, Plaintiff's negligent training claim will be dismissed.

Generally, the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). But dismissal with prejudice is proper "when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999). Leave to amend is not needed when it would be futile. *Foman,* 371 U.S. at 182. Here, Doss cannot amend Count Eighteen to conform with the law. Officers Victor and Kennedy were undeniably employed as police officers in the course of the investigation of Plaintiff. Even assuming they somehow exceeded their lawful authority, the acts they performed were squarely within the scope of their employment. *McGhee v. Volusia Cnty.,* 679 So. 2d 729, 732 (Fla. 1996). No amendment can change the preclusive effect of these underlying facts. *See, e.g.,*

*Bright v. City of Tampa,* No. 8:16-CV-1035-EAK-MAP, 2017 WL 5248450, at *8 (M.D. Fla. May 17, 2017) (dismissing negligent supervision claim with prejudice where the alleged conduct was within the scope of a police officer's duties). Amendment of Plaintiff's negligent training claim would also be futile because it is clearly based on a discretionary act for which the City enjoys sovereign immunity—the content of its police training program. As such, Count Eighteen will be dismissed with prejudice.

**Count Nineteen**

Count Nineteen is a state law claim for malicious prosecution against Holder, Victor, Kennedy, and McDarby. In support of this count, Plaintiff alleges that "Defendant Gregory P. Holder maliciously caused the institution of criminal proceedings against Plaintiff" and recruited Victor to arrest and prosecute Plaintiff without probable cause. Doc. 72 ¶¶ 352, 361.

Defendants argue that Plaintiff fails to allege the required elements of a malicious prosecution claim. Doc. 79 at 13–14; Doc. 82 at 12–13. Specifically, they argue that he fails to plausibly allege the second element of his claim: that Defendants were "the legal cause of the original proceeding" against him. *Id.* at 12. Under Florida law, a claim for malicious prosecution requires a plaintiff to establish that the defendant was the legal cause of the proceeding against the plaintiff, and the failure to establish any element of a malicious prosecution claim is fatal. *Alamo,* 632 So.2d at 1354.

Plaintiff's malicious prosecution claim fails for two reasons. First, as described with regard to Counts Eleven through Fifteen (Plaintiff's Fourth Amendment

malicious prosecution claims), Plaintiff fails to plausibly allege that Defendants lacked probable cause to bring the perjury proceeding. Additionally, in this count, Plaintiff alleges that "Defendant Gregory P. Holder maliciously caused the institution of criminal proceedings against Plaintiff." Doc. 72 ¶ 352. Holder, as discussed earlier, is entitled to judicial immunity. As to the other Defendants named in this count, Plaintiff's claim is deficient because he alleges that Holder alone was the cause of the proceeding against him. Based on Plaintiff's *pro se* status and request for leave to amend, he will be allowed one final opportunity to replead this claim, if he chooses.

**Count Twenty**

Count Twenty is an intentional infliction of emotional distress ("IIED") claim. Doc. 72 ¶¶ 370–380. Plaintiff asserts that Defendants' actions were extreme, outrageous, and caused him psychological pain and suffering. *Id.* ¶¶ 371, 379. Defendants argue that Plaintiff fails to adequately allege any of the required elements of this claim. Doc. 79 at 15–17; Doc. 80 at 16–18; Doc. 82 at 14–16. Plaintiff responds that he suffered severe distress and anxiety during the time that charges were pending against him. Doc. 86 at 14–15; Doc. 88 at 4–5.

To establish a claim for IIED, a plaintiff must demonstrate that: 1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe. *See Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277 (Fla. 1985); *Johnson v. Thigpen,* 788 So. 2d 410, 412-413 (Fla. 1st DCA 2001). Florida courts have defined "outrageous" to mean "conduct . . . so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Johnson*, 788 So.2d at 412–413.

Whether a defendant's conduct is outrageous and utterly intolerable in a civilized community is a matter of law for the court to decide. *Id.* The standard in Florida for outrageous conduct is extremely high. *McCarson,* 467 So. 2d at 278; *see also Frias v. Demings,* 823 F. Supp. 2d 1279, 1288–89 (M.D. Fla. 2011). Thus, courts allow IIED claims to proceed in "extremely rare circumstances." *Gonzalez–Jimenez de Ruiz v. United States,* 231 F. Supp. 2d 1187, 1199 (M.D. Fla. 2002)). Cases where courts have permitted a plaintiff to move forward with an IIED claim against law enforcement officers have involved egregious behavior outside of an officer's discretionary authority. *See Tillman v. Orange County, Fla.,* 519 Fed. App'x. 632, 632 (11th Cir. 2013) ("Under Florida law, arrestee stated claim for intentional infliction of emotional distress against deputy sheriffs and detective who allegedly falsified charging affidavits and whose deception led to arrestee's malicious prosecution"); *Williams v. City of Minneola,* 575 So. 2d 683, 683 (Fla. 5th DCA 1991) (upholding claim where police officers displayed grotesque photographs and videotape of a family member's autopsy to non-police officers, allegedly for entertainment purposes).

Applying this standard to the instant facts and construing the evidence in the light most favorable to Doss, his allegations are insufficient to establish a claim for IIED, as a matter of law, against any Defendant. The plaintiff must show that the defendant's actions were "so extreme in degree as to go beyond all possible bounds of

decency." *Von Stein v. Brescher,* 904 F.2d 572, 584 (11th Cir. 1990). None of the Defendants' actions in this case meet this definition, and the Court will thus dismiss Count Twenty with prejudice, as leave to amend would be futile. *Foman*, 371 U.S. at 182.

### Count Twenty-One

Count Twenty-One alleges that the City is obligated to indemnify its employees for the conduct alleged in the Amended Complaint. Doc. 72 at 95–96. The City responds that there is no such requirement and that it is only authorized to pay judgments under conditions set forth by the Florida legislature. Doc. 81 at 10. Further, it argues that if Plaintiff successfully proves that Det. Victor and Officer Kennedy intentionally violated his rights or committed state torts, the City would be precluded from paying the judgment, and that Plaintiff does not have standing to bring a claim for indemnification anyway. *Id.* at 11. Plaintiff fails to reply to the substance of this argument. *See* Doc. 89.

The City is correct. Even if the City were "responsible for paying any judgment entered against the Police Officer Defendants," as Plaintiff argues (Doc. 72 ¶ 383), Plaintiff lacks standing to bring this claim. To establish standing in federal court, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable court ruling. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

Here, Plaintiff fails to plausibly allege that he would suffer an injury in fact if the Police Officer Defendants were ordered to pay damages and the City failed to indemnify them. Nor does he respond to the City's standing argument. Therefore, Plaintiff fails to establish that he has standing to assert this claim. It is thus due to be dismissed, without prejudice, for lack of standing.

## IV.   CONCLUSION

The Fourth Amended Complaint is largely conclusory, short on specific factual allegations, and contradicted by Plaintiff's attached exhibit. As set forth above, several Defendants are immune from suit, and numerous claims are due to be dismissed with prejudice. Thus, Defendants' motions will be granted, and the Fourth Amended Complaint will be dismissed. It is not clear to the Court that Plaintiff can state any federal claim. However, the Court will allow Plaintiff one final opportunity to amend his complaint.[10] In so doing, Plaintiff should be mindful of Rule 8's dictate that a claim for relief contains "a short and plain statement showing that the pleader is entitled to relief," *See* Rules 8(a)(2) and 11, Fed. R. Civ. P.

Accordingly, it is **ORDERED**:

1. All claims against Defendant Gregory P. Holder are **DISMISSED with prejudice** based on judicial immunity.

---

[10] Plaintiff is advised that an amended complaint supersedes the original in its entirety. Therefore, reference to a prior pleading or another document is improper. Once Plaintiff files a Fifth Amended Complaint, the original pleading or pleadings will no longer serve any function in this case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

2. All claims against Defendant Deputy John Walter McDarby, in his individual capacity, **are DISMISSED without prejudice based on qualified immunity.**

3. Counts 2, 3, 4, 5, 6, 7, and 8 (Plaintiff's False Arrest Claims) are time-barred and **DISMISSED with prejudice.** Count 1 is also **DISMISSED with prejudice** to the extent it is based on a theory of false arrest.

4. Count 1 is **DISMISSED without prejudice** to the extent that Plaintiff's claim is based on a theory of malicious prosecution.

5. Defendant Sheriff Chad Chronister's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. 80) is **GRANTED** as follows: Count 10 is **DISMISSED without prejudice**; Count 16 is **DISMISSED with prejudice.**

6. Defendant City of Tampa's Motion to Dismiss (Doc. 81) is **GRANTED** as follows: Count 9 is **DISMISSED without prejudice**; Counts 17 and 18 are **DISMISSED with prejudice**; Count 21 is **DISMISSED without prejudice for lack of standing.**

7. Counts 11, 12, 13, 14, and 15 (Plaintiff's Malicious Prosecution Claims) are **DISMISSED without prejudice.**

8. Count 19 (Plaintiff's State-Law Malicious Prosecution Claim) is **DISMISSED without prejudice.**

9. Count 20 (Plaintiff's Intentional Infliction of Emotional Distress Claim) is **DISMISSED with prejudice.**

10. Plaintiff's claims against Deputy McDarby, Detective Victor and Officer Kennedy, in their official capacities, are **DISMISSED** as redundant.

11. Plaintiff's request for punitive damages is **DENIED**, as plaintiff cannot get punitive damages from the Sheriff or City of Tampa.

12. Plaintiff is granted one final opportunity to amend his complaint. The amended complaint shall be filed on or before **October 19, 2023**. Failure to file an amended complaint within the time provided will result in this action being dismissed.

13. The stay of discovery is lifted.

**DONE** and **ORDERED** in Tampa, Florida on September 28, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties