## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SURGRET URANIA DOSS,

     Plaintiff,

v.                                Case No: 8:22-cv-129-CEH-AAS

GREGORY P. HOLDER, MICHAEL
R. VICTOR, PAT KENNEDY, JOHN
WALTER MCDARBY, CITY OF
TAMPA, CHAD CHRONISTER,
JOHN DOES I-X,

     Defendants.

_____

## <u>ORDER</u>

This matter comes before the Court on Defendant Sheriff Chad Chronister's

Motion to Dismiss (Doc. 108); Defendant Deputy John Walter McDarby's Motion to

Dismiss (Doc. 109); Defendant Gregory P. Holder's Motion to Dismiss (Doc. 110);

Defendant City of Tampa's Motion to Dismiss (Doc. 111); and Defendants Pat

Kennedy and Michael R. Victor's Motion to Dismiss (Doc. 112). Plaintiff, Surgret U.

Doss, filed responses in opposition. Docs. 115, 117, 118, 122.

The Defendants argue for dismissal of Plaintiff's claims on several grounds,

including judicial immunity, qualified immunity, and failure to state a claim. The

Court, having considered the motions and being fully advised in the premises, will

grant the motions as detailed below. All of Plaintiff's federal law claims will be

dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims, which will be dismissed without prejudice.

## I.    FACTUAL BACKGROUND[1]

Plaintiff Surgret U. Doss ("Plaintiff" or "Doss"), who proceeds *pro se*, filed a Fifth Amended Complaint (Doc. 106) on January 8, 2024. The allegations giving rise to his claims are as follows.

### Plaintiff's Properties

The Hillsborough County Clerk of Court regularly conducts public foreclosure auctions. Doc. 106 ¶ 18. Between 2015 and 2018, an individual otherwise uninvolved in the case bought four properties from such auctions and ultimately transferred ownership of those properties to Plaintiff. *Id.* ¶¶ 18–20. In 2016, Plaintiff moved into one of the properties himself. *Id.* ¶ 23.

At some point in time, foreclosure proceedings were initiated as to each of the properties, and Plaintiff filed motions seeking intervenor status as an interested party "without success." *Id.* ¶ 24. Plaintiff further filed actions in the Second District Court of Appeal ("DCA") seeking relief as to two of the properties, which led to him filing an Emergency Motion to stay a writ of possession on January 31, 2017, in the Second DCA. *Id.* ¶ 26. According to Plaintiff, after his "Motion to maintain" one of the

---

[1] The statement of facts is derived from the Fifth Amended Complaint (Doc. 106), the allegations of which the Court must accept as true in ruling on the instant motions to dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.* S.A., 711 F.2d 989, 994 (11th Cir. 1983).

properties was denied, he filed an Application for Determination of Civil Indigent Status (the "Application") with a court clerk, who approved it. *Id.* ¶ 27. Plaintiff alleges that he submitted the Application "solely to have the 2nd DCA waive fees and review."[2] *Id.* ¶ 28.

**Perjury Referral and Subsequent Investigation**

The case in which Plaintiff filed an application for determination of indigency was presided over by (then-Judge) Gregory Holder, a defendant in this case. *Id.* ¶ 30.

On February 9, 2017, Judge Holder reported Plaintiff to law enforcement (specifically to Defendant Tampa Police Department ("TPD") Detective Michael R. Victor) for possible perjury based on the Application, which Judge Holder alleged was a sworn document in which Plaintiff stated he was indigent, did not own any real property, and had no source of income. *Id.* Victor's General Offense Report notes that Holder checked the Property Appraiser's website, discovered that Plaintiff in fact owned property, and called Victor to investigate potential fraud in connection with the Application. *Id.* ¶¶ 31–32.

Then, Victor, Defendant TPD Officer Pat Kennedy, and Defendant Hillsborough County Sheriff's Office Deputy John Walter McDarby agreed to "work

---

[2] Plaintiff filed a copy of the "Application for Determination of Civil Indigent Status" on the docket in connection with his last complaint. *See* Doc. 72-1 at 204–205. Although he does not attach it (or any other exhibits) to the instant Complaint, as Defendant McDarby argues (Doc. 109 at 3), the Court is entitled to take judicial notice of Plaintiff's previous filings, including Court records, pursuant to Fed. Rs. Evid. 201(b), 201(c). *Silva-Martinez v. Florida D.O.C.,* 808 Fed. Appx. 846 (11th Cir. 2020); *Grayson v. Warden, Ala. Dep't.,* 869 F.3d 1204 (11th Cir. 2017). Plaintiff does not respond in opposition to this argument, nor does he cast doubt on the authenticity of the Application that he previously submitted as an exhibit.

together" to charge Plaintiff with a felony "despite not having proof" of Plaintiff's false statements. *Id.* ¶ 33. They went to one of Plaintiff's properties to question his tenants about who they paid rent to, although they never interviewed Plaintiff himself. *Id.* ¶¶ 34–38. According to Plaintiff, instead of "talking to [him]," Defendants agreed to use his civil indigency application to charge him with perjury despite having no "proof or eyewitness testimony." *Id.* ¶ 38.

**Perjury Proceeding and Dismissal**

On May 26, 2017, Victor filed a Criminal Report Affidavit ("CRA") against Plaintiff claiming that he filed false documents under penalty of perjury. *Id.* ¶ 39. The CRA accused Plaintiff of knowingly filing the Application using false information to attest to the fact that he was indigent and neither owned property nor had a source of income. *Id.* ¶ 40. Plaintiff claims that Victor filed the CRA without "proof." *Id.* ¶ 41. In his Complaint, Plaintiff next describes the Application for Civil Indigence itself, asserting that it did not present the questions "Are you Indigent?" or "Do You Own Property?" *Id.* ¶¶ 42–43.

On June 16, the State Attorney's Office charged Plaintiff with Perjury under Florida Statute 837.02(1), on the grounds that he made a false statement under oath. *Id.* ¶ 48. On June 27, Plaintiff turned himself in at the Hillsborough County Jail. *Id.* ¶ 49. After several proceedings were held and Plaintiff filed discovery motions, the charges against him were dismissed on January 28, 2018. *Id.* ¶¶ 51–56.

Plaintiff claims that he recently learned of allegedly exculpatory *Brady* information that was withheld from him. *Id.* ¶¶ 57–63. He states that this information "would have been free as a part of the Discovery process" in his criminal case, but that the City of Tampa now asks for over $10,000 to turn over the emails and text messages. *Id.* Plaintiff believes the undisclosed communications contain derogatory references to him and asks that the Court compel "all Parties to provide Plaintiff's Discovery requests in this case without fees" because Defendants had an obligation to produce the material under *Brady* during his criminal case. *Id.*[3]

### a. Procedural Background

Plaintiff filed his initial complaint on January 14, 2022. Doc. 1. On May 3, he filed an Amended Complaint. Doc. 16. On August 15, Plaintiff filed an unopposed motion for leave to amend (Doc. 24), which was granted on September 20. Doc. 45. On October 17, Plaintiff filed a Third Amended Complaint, followed by two unopposed motions for leave to amend (Docs. 64, 65). The Court granted his request to file another amended complaint. Doc. 71. On November 30, 2022, Plaintiff filed his Fourth Amended Complaint. Doc. 72.

---

[3] Plaintiff also filed an "Affidavit and Declaration" six days after he filed the Operative Complaint. *See* Doc. 107. The Court has not considered the Affidavit and Declaration in analyzing the issues raised in the motions to dismiss. Ordinarily, on a motion to dismiss, the Court does not consider anything beyond the face of the complaint and documents attached thereto. *Fin. Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1368 (11th Cir. 1997)). The Court may consider documents that are central to the allegations in the complaint, if the authenticity of the documents is not in dispute.

Defendants moved to dismiss the claims against them, and the Court granted the Motions on September 28, 2023. *See* Doc. 97. Plaintiff's claims against Defendant Holder were dismissed with prejudice based on judicial immunity. *Id.* at 8–11. Plaintiff's claims predicated on a theory of false arrest were dismissed with prejudice as time-barred. *Id.* at 11–13. His remaining claims against Defendant McDarby were dismissed, without prejudice, based on qualified immunity. *Id.* at 13–16. Plaintiff's conspiracy claim was dismissed without prejudice for failure to plausibly allege a conspiracy, his *Monell* claim against the City of Tampa was dismissed for failure to state a claim, and so was his 42 U.S.C. § 1983 failure to train claim against Defendant Sheriff Chronister. *Id.* at 16–22. Plaintiff's Fourth Amendment Malicious Prosecution Claims were dismissed without prejudice for failure to plausibly allege an absence of probable cause. *Id.* at 25–26. Finally, Plaintiff's other remaining state law claims were also dismissed, some with prejudice, others with leave to amend. *Id.* at 26–40.

### b. Plaintiff's Claims and Defendants' Motions

Now, across eleven counts, Plaintiff asserts federal and state-law claims against six Defendants. His federal-law claims are "Fourth Amendment Claims for Conspiracy" under 42 U.S.C. § 1983 against Defendants Victor, Kennedy, and McDarby[4] (Count One); "Fourth Amendment Claims for Malicious Prosecution" under 42 U.S.C. § 1983 against Defendant Victor (Count Two); Failure to Intervene under 42 U.S.C. § 1983 against Defendants Victor, Kennedy, and McDarby (Count

---

[4] It is unclear whether Plaintiff meant to name Defendant Holder in this count, as discussed *infra*.

Three); Failure to Adequately Train against the City of Tampa under 42 U.S.C. § 1983 (Count Four) and Failure to Adequately Train against Sheriff Chronister under 42 U.S.C. § 1983 (Count Five).

Plaintiff also brings state-law claims for Malicious Prosecution against Defendants Victor and Holder (Counts Six and Seven); Intentional Infliction of Emotional Distress against Victor (Count Eight); "Respondent Superior" (Count Nine); Negligence against Defendant Chronister (Count Ten) and Negligent Retention[5] against the City of Tampa (Count Eleven).[6]

Defendants move to dismiss on the grounds that certain of them are immune from suit, certain claims are time-barred, and because Plaintiff fails to state a claim in his remaining Counts. They seek dismissal with prejudice. After careful consideration, the Court concludes: (1) the Court previously found that Defendant Holder is protected by judicial immunity against Plaintiff's claims, and dismissed the claims against him with prejudice; (2) Plaintiff repleads a number of other claims previously dismissed with prejudice–they too will be dismissed again; (3) McDarby is entitled to qualified immunity, and the federal law claims against him will be dismissed with prejudice; (4) the remaining federal-law counts each fail to state a claim—and as amendment would be futile, they will be dismissed with prejudice. Finally, the Court

---

[5] Plaintiff titles this claim negligent retention. But he refers to negligent supervision in paragraph 111 of Doc. 106. The Court previously dismissed Plaintiff's negligent supervision claim against the City of Tampa with prejudice. This claim will be treated as one for negligent retention.
[6] Plaintiff appears to mislabel this Count as (a duplicate) Count Ten. Doc. 106 at 32.

will decline supplemental jurisdiction over any remaining state law claims. Therefore, the claims in Counts Six, Ten, and Eleven are dismissed without prejudice.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Although a *pro se* litigant's pleadings are held to a less stringent standard, they must still meet minimal pleading standards. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Olsen v. Lane*, 832 F.Supp. 1525, 1527 (M.D. Fla. 1993).

III.    DISCUSSION

**Claims Already Dismissed with Prejudice**

The Court previously dismissed all claims against Defendant Holder with prejudice based on judicial immunity.[7] Doc. 97 at 8–11. These included claims for 14th Amendment conspiracy to commit false arrest under 42 U.S.C. § 1985; 14th Amendment conspiracy to commit false arrest under 42 U.S.C. § 1985; False Arrest (4th Amendment Violation); Fourth Amendment malicious prosecution; state law malicious prosecution; and intentional infliction of emotional distress. *Id.* at 6.

Nevertheless, the operative complaint again, based on the same allegations, asserts claims against Holder in Counts One and Seven. Doc. 106 at 13–16, 25–28. Against other defendants, Plaintiff also repleads a claim for respondeat superior (Count Nine) against the City of Tampa that was previously dismissed with prejudice.[8] Doc. 97 at 30–34. This improper repleading of claims previously dismissed with prejudice—without any apparent justification—is enough to warrant dismissal alone.

---

[7] As a reminder, then-Judge Gregory Holder presided over Hillsborough Circuit Court Case No. 15-CA-71, which involved one of Plaintiff's quitclaimed properties. Doc. 72 ¶¶ 40, 61–80. Construing the allegations in the operative complaint liberally, Plaintiff alleges in the operative complaint that Holder conspired with the other Defendants to "maliciously cause[] Plaintiff's criminal proceeding without probable cause," as a result of which "Plaintiff was unlawfully seized in violation of his civil rights under the United States Constitution." Doc. 106 at 13.

[8] In Count Eleven, plaintiff references negligent supervision, a claim that was previously dismissed with prejudice.

*Kautz v. Residence Inn by Marriott, LLC,* No. 8:14-CV-988-T-24-MAP, 2014 WL 4416012, at *1 (M.D. Fla. Sept. 5, 2014); *see also Darko v. City of Chicago, Illinois,* No. 21-CV-6467, 2024 WL 2209675, at *5 (N.D. Ill. May 15, 2024). Nevertheless, as described below, each of the claims is also fatally deficient on the merits and subject to dismissal without leave to amend.

The Court will begin with the claim in Count One. *Id.* at 13–15. This Count alleges Fourth Amendment Conspiracy under 42 U.S.C. § 1983, but it is unclear whether Plaintiff meant to name Holder.

On the one hand, as Defendant notes, Plaintiff does not list Holder in the "Parties" section of his complaint, although he clearly brings a state law claim for malicious prosecution against him in Count Seven. Doc. 110 at 2. Nor does he list Holder in the heading of Count One, which reads "42 U.S.C. § 1983 – Fourth Amendment Claims for Conspiracy Against Defendants Victor, Kennedy, McDarby." Doc. 106 at 13. On the other hand, the allegations related to Count One mention Holder's alleged actions (*Id.* ¶ 66) and state that Plaintiff seeks relief against Defendants Victor, McDarby, *Holder*, and Kennedy. *Id.* at 15.

Plaintiff's response does not indicate whether he intended to name Holder as a defendant in this count. *See* Doc. 118. However, Plaintiff does argue that Holder's "ex parte communication with Defendant Michael Victor" is a "foundation for a conspiracy to falsely accuse Plaintiff of certain acts." *Id.* at 2. For the sake of thoroughness, the Court will assume Plaintiff meant to name Holder in Count One.

Holder argues for dismissal of all claims against him in this latest complaint based on judicial immunity and res judicata. Doc. 110 at 3–7. He first argues that Plaintiff's claims again stem from acts performed in his official judicial capacity that, broadly, fell within his judicial capacity. *Id.* at 4–5. Further, he argues that res judicata bars the nearly identical claims that were already dismissed with prejudice. *Id.* at 5–7.

Plaintiff fails to respond to the res judicata arguments. *See* Doc. 118. Instead, he rehashes his argument from the last set of motions to dismiss, including regarding whether Holder is shielded by judicial immunity. *Id.* at 1–3. Further, Plaintiff argues that certain public records related to his earlier criminal state court case should have been provided free of charge. *Id.* at 7. Plaintiff fails to explain how that is relevant to the instant case or claim. Plaintiff has not alleged a claim under the Freedom of Information Act or the Florida Public Records Law.

Resolution of these claims is simple. The Court already dismissed all claims against Judge Holder, with prejudice, based on judicial immunity. Plaintiff attempts to replead claims based on the same conduct—but the allegations and analysis remain the same. Holder is entitled to judicial immunity, and the claim is again due to be dismissed. Because the claim against Holder is again dismissed based on judicial immunity, the Court need not address the res judicata argument.

Judges are entitled to absolute judicial immunity from damages for acts taken in their judicial capacity unless they acted in the "clear absence of all jurisdiction." *Bolin v. Story,* 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted). In *Stump v. Sparkman,* 435 U.S. 349, 356–62, the Supreme Court recognized a two-part test to be

used in determining whether a judge is absolutely immune from potential civil liability. The reviewing court must ask whether the judge was acting in a judicial capacity while dealing with Plaintiff, and whether the judge acted in the "clear absence of all jurisdiction." *Id.* at 356–57, 360. Only in circumstances where a judge acted in the "clear absence of all jurisdiction" or dealt with Plaintiff in a non-judicial capacity can the judge face civil liability for actions taken. *See id.* at 356–62. This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction. *Id.* at 356–57.

The claims against Holder stem from his referral of Plaintiff to law enforcement and questioning of Plaintiff during a case management conference. Doc. 106 ¶¶ 30–33, 86–93. As the Court previously found (Doc. 97 at 8–11) Defendant Holder acted in his judicial capacity when he referred Plaintiff's case to law enforcement for investigation and questioned Plaintiff in court. Holder's acts were within his judicial capacity and "part of the ordinary judicial function," and Holder did not act in the "complete absence of all jurisdiction" as a judge. He is entitled to judicial immunity and the claims against him (Count One and Count Seven) are dismissed with prejudice.

In his response, Doss asks that the Court dismiss his complaint without prejudice if it "identifies shortcomings." Doc. 118 at 7. Given that the claims against Holder were already dismissed with prejudice, amendment would be futile and the claim is dismissed with prejudice.

The claims against Holder in Counts One and Seven are not the only ones subject to dismissal with prejudice for a second time. Plaintiff's claims against other Defendants in Counts Eight and Nine were likewise already dismissed with prejudice. They too will be dismissed again.

First, Count Eight is a claim for intentional infliction of emotional distress ("IIED") against Victor. Doc. 106 at 28–30. In his previous complaint, Plaintiff brought IIED claims against all Defendants. *See* Doc. 97 at 35–37. The Court found, however, that his allegations were insufficient to establish a claim for IIED, as a matter of law, against any Defendant, and therefore dismissed the Count with prejudice. *Id.* at 37. [9] Here, Plaintiff brings the same claim against Victor based on the same background facts. In a conclusory fashion, he alleges that "[t]he actions, omissions, and conduct of Defendant Victor were extreme and outrageous. Moreover, Victor abused power and authority when he knowingly filed a fabricated CRA without probable cause or supporting evidence." Doc. 106 at 28 ¶ 96. Again, none of Victor's actions "were so extreme in degree as to go beyond all possible bounds of decency" *Von Stein v. Brescher,* 904 F.2d 572, 584 (11th Cir. 1990). Therefore, the Court will

---

[9] The Court found as follows:

> [Plaintiff's] allegations are insufficient to establish a claim for IIED, as a matter of law, against any Defendant. The plaintiff must show that the defendant's actions were "so extreme in degree as to go beyond all possible bounds of decency." *Von Stein v. Brescher,* 904 F.2d 572, 584 (11th Cir. 1990). None of the Defendants' actions in this case meet this definition, and the Court will thus dismiss Count Twenty with prejudice, as leave to amend would be futile. *Foman*, 371 U.S. at 182.

dismiss Count Eight with prejudice, as leave to amend would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1968).

In Count Nine, a claim for "Respondent [sic] Superior," Plaintiff seeks to hold the City of Tampa liable for the torts of its agents. Doc. 106 at 30. The Court previously dismissed Plaintiff's substantively identical claim for a simple reason—because "respondeat superior does not constitute an independent cause of action." Doc. 97 at 31 (citing *Colite Int'l Inc. v. Robert L. Lipton, Inc.,* No. 05-60046-CIV-DIMITROULEAS, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006)). Plaintiff again brings the same claim. Respondeat superior is still not an independent cause of action. Count Nine is again dismissed with prejudice.

**Qualified Immunity**

Deputy McDarby seeks dismissal of Counts One and Three based on qualified immunity. Doc. 109 at 16–19. He argues that Plaintiff failed to sufficiently allege a constitutional violation in support of his Fourth Amendment conspiracy claim in Count One or his § 1983 failure to intervene claim in Count Three. *Id.* at 18. Even if Plaintiff had alleged a constitutional violation, McDarby argues that he cannot satisfy the second prong, under which he must show that the law was "clearly established." *Id.* at 18–19.

Plaintiff disagrees, generally arguing that the claims against McDarby should survive. Doc. 88 at 4. In response, he appears to argue that McDarby acted outside of his discretionary authority. *Id.* at 7 (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004). In *Kingsland*, however, the Eleventh Circuit did not discuss the

issue of discretionary authority, except for in its recitation of the legal standard. *Id.* Moreover, the Florida state appellate case Plaintiff cites does not discuss qualified immunity and instead addresses state law claims against a bank for false imprisonment, malicious prosecution, and other causes of action. *Harris v. Lewis State Bank,* 482 So.2d 1378, 1380–81 (Fla. 1st DCA 1986). Plaintiff essentially fails to provide a substantive response to McDarby's qualified immunity argument.

Qualified immunity is a defense to federal claims only. *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995). "Qualified immunity protects police officers from suit in their individual capacities for discretionary actions performed in the course of their duties." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1318 (11th Cir. 2010). The Supreme Court has thus "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). As such, a court may grant a motion to dismiss on qualified immunity grounds where the complaint fails to allege the violation of a clearly established constitutional right. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

To receive qualified immunity, "an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks omitted). "A governmental official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144

(11th Cir. 2017). If a defendant establishes that he was acting within discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate," *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) (internal quotation marks omitted). The plaintiff must establish that qualified immunity is inappropriate by showing that "(1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct," *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, although Plaintiff offers a conclusory argument to the contrary, it is clear from the allegations in the complaint that Deputy McDarby acted in his discretionary authority as a law enforcement officer when he questioned a witness at one of Plaintiff's properties (Doc. 106 at 8) and wrote a report (*id.* at 21–22).

And just as the Court held in its previous order, Plaintiff again fails to sufficiently allege that McDarby violated a clearly established constitutional right as to Counts One or Three. Plaintiff alleges McDarby was "recruited" by Det. Victor and plotted with him to charge Plaintiff with a felony in the absence of any proof. Doc. 106 at 7. He alleges that Defendants went to an apartment he owned and "asked the tenants to whom they paid their rent." *Id.* at 8. He states that they then agreed to "use" Plaintiff's application for determination of civil indigent status to charge Plaintiff with felony perjury. *Id.* Count One alleges that McDarby's actions constituted a violation of Plaintiff's Fourth Amendment "right not to be arrested" and Count Three alleges

that McDarby "failed to take any action to intervene to prevent the misconduct of Defendant Victor when he recruited them to help conduct a bogus investigation that would allow him to Direct-File a fabricated CRA." *Id.* at 18.

In his response, Plaintiff fails to cite any relevant case law that would apply to the facts of this case and alert McDarby that his actions would violate Plaintiff's clearly established constitutional rights. Further, construing Plaintiff's complaint liberally and drawing all inferences in his favor, he does not allege facts from which it can be said that McDarby's conduct was so egregious as to violate Plaintiff's constitutional rights. Nor are there any broad statements of principle or law that would give McDarby fair notice that his actions would violate a clearly established constitutional right.

Plaintiff fails to show that under "clearly established" law, any of McDarby's actions amounted to a constitutional violation. *See Spivey v. Elliott,* 41 F.3d 1497, 1499 (11th Cir. 1995). The claims against McDarby will again be dismissed.

Plaintiff, in each of his responses, seeks leave to amend in the event of dismissal.[10]  Doc. 115 at 9. However, leave to amend is not needed when it would be futile. *Foman,* 371 U.S. at 182. Here, Plaintiff's *Fifth* Amended Complaint, filed after the Court has already once dismissed the federal claims against McDarby based on qualified immunity and provided guidance on the law, comes no closer to rebutting McDarby's assertion of qualified immunity and stating a claim. Therefore, leave to

---

[10] Additionally, Plaintiff requests an evidentiary hearing in responding to McDarby's motion to dismiss. *See* Doc. 115 at 8. However, no evidentiary hearing is needed.

amend would be futile and Counts One and Three (as against McDarby) will be dismissed with prejudice.[11]

**Failure to State a Claim**

*Count One*

As described above, the Court has dismissed Count One with prejudice as to Defendants Holder (based on judicial immunity) and McDarby (based on qualified immunity). Count One also asserts claims against Victor and Kennedy. Doc. 106 at 13. Plaintiff alleges they, along with McDarby, conspired to cause his criminal proceeding "without probable cause," as a result of which he was arrested in violation of his constitutional rights. *Id.* at 13. Plaintiff further claims that they relied on Judge Holder's false allegation of perjury to deprive him of his right to not be arrested and seized. *Id.* at 13–14. Plaintiff argues that the state criminal case against him lacked probable cause and terminated in his favor without a conviction. *Id.* at 15.

First, the Court notes that Plaintiff's Fourth Amended Complaint (the previous one) brought a claim for 14th Amendment Conspiracy against all the defendants under theories of malicious prosecution and false arrest. The Court dismissed that claim with prejudice as to Judge Holder based on judicial immunity (Doc. 97 at 8–11), with prejudice to the extent it was based on a theory of false arrest because it was time-barred (*id.* at 13), and without prejudice to the extent it was based on a theory of

---

[11] Later in his Motion, McDarby argues that the statute of limitations has run on the claims against him. Doc. 109 at 19–21. As both Counts against McDarby are due to be dismissed based on qualified immunity, there is no need to rule on the statute of limitations argument.

malicious prosecution because the conspiracy allegations were impermissibly conclusory, vague, and general (*id.* at 18–20).

Victor and Kennedy, the remaining Defendants as to this count, argue it should be dismissed for failure to plausibly allege a conspiracy, based on the intra-corporate conspiracy doctrine, and because there was arguable probable cause to charge Plaintiff, which would doom his malicious prosecution claim. Doc. 112 at 12–13. They argue that Plaintiff merely speculates that Defendants conspired together but does not allege sufficient facts to make this allegation plausible. *Id.* at 13.

In response, Plaintiff restates his version of the facts and argues that Defendants failed to comply with a number of discovery requests and thereby concealed thousands of emails of *Brady* material in his criminal case. Doc. 117 at 2. Further, he argues in a conclusory manner that Victor and Kennedy "played roles" in the conspiracy against him and that their motion should be denied. *Id.* at 2–3. Additionally, Plaintiff argues that the intra-corporate conspiracy doctrine should not apply to bar his claims because he sufficiently alleges a conspiracy between Victor/Kennedy and the other Defendants (who were not employees of the Tampa Police Department.) *Id.* at 12–13.

Plaintiff fails to state a claim in Count One against Kennedy and Victor. Moreover, leave to amend would be futile. Therefore, Count One will be dismissed with prejudice.

To establish his claim for conspiracy under 42 U.S.C. § 1983, Plaintiff must allege that there was: (1) a conspiracy; (2) for the purpose of depriving him of his rights;

(3) an overt act in furtherance of the object of the conspiracy; and (4) that he sustained injury. *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971).

A complaint containing conclusory, vague, and general allegations of conspiracy must be dismissed as insufficient. *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990); *Kearson v. Southern Bell Telephone & Telegraph Co.,* 763 F.2d 405, 407 (11th Cir. 1985). Instead, the complaint must plausibly allege that Defendants reached an agreement or understanding to commit the acts. *Bendiburg,* 909 F.2d at 468; *see also Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir. 1988); *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir. 1984).

And "the linchpin of conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). Thus, "[c]onclusory allegations of an agreement, without any factual basis to make the allegations plausible, are insufficient to state a conspiracy claim." *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019) (citing *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016)); *see also Gaffney v. Rives,* No. 8:22-CV-1613-CEH-SPF, 2023 WL 6049253, at *9 (M.D. Fla. Sept. 15, 2023), *reconsideration denied,* 2023 WL 7928093 (Nov. 16, 2023).

Plaintiff's conspiracy claim is deficient several times over. First, as the claims against McDarby and Holder are already dismissed with prejudice, it is doubtful Plaintiff could possibly allege a conspiracy. This is because, as Defendant correctly argues, Victor and Kennedy were both Tampa Police Department officers at all relevant times, and thus Plaintiff's assertion that Kennedy and Victor conspired

together would be barred by the doctrine of intra-corporate conspiracy. Doc. 106 at 4 ¶¶ 14–15, 102.

This legal doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor" and applies to public and governmental entities, such as police departments. *Dickerson v. Alachua Cnty. Comm'n,* 200 F.3d 761, 767 (11th Cir. 2000). This basis alone would suffice for dismissal.

Moreover, even if Plaintiff could somehow bypass this doctrine (such as by plausibly alleging another conspirator), the allegations against Victor and Kennedy are conclusory and again fall short of alleging a plausible conspiracy.

Plaintiff alleges Kennedy, Victor, and McDarby investigated Judge Holder's allegations regarding Plaintiff's application for determination of indigency. Doc. 106 at 7–8. Thereafter, Victor direct-filed a Criminal Report Affidavit with the Hillsborough County State Attorney's Office claiming that Plaintiff perjured himself. *Id.* at 8–9. However, he still puts forth only conclusory and general allegations regarding the substance of the conspiracy, which Plaintiff asserts was a plot to have him charged with perjury "without probable cause."

For example, the bulk of the allegations regarding Victor assert that the information on the CRA was "fabricated," that neither Victor nor Kennedy ever "submitted proof" Plaintiff stated he did not own property, was indigent, or of Plaintiff's income, and that Victor's investigation was "bogus." Doc. 106 ¶¶ 44-47, 50, 87. However, the specific factual allegations: that Victor went to the Tuscanny

property to speak with tenants, "initiated, continued, and pursued" judicial proceedings against him, but failed to interview or reach out to Plaintiff (*Id.* ¶¶ 34, 77, 82, 87) do not lend support to the claim that there was any underlying conspiracy.

Plaintiff's allegations that Victor, Kennedy, (and the other Defendants, who were already dismissed) conspired are on their face conclusory, vague, and general. Moreover, with only Victor and Kennedy left as Defendants, this claim is barred by the intra-corporate conspiracy doctrine. Thus, Plaintiff fails to state a claim. *Bendiburg,* 909 F.2d at 468; *Fullman,* 739 F.2d at 556–57. Granting leave to amend yet again would be futile. Count One will be dismissed with prejudice. *Foman,* 371 U.S. at 182.

*Count Two*

Count Two is a Fourth Amendment malicious prosecution claim against Victor. Doc. 106 at 16–18.

The Court previously dismissed this claim (which was alleged against each of the Defendants) because Plaintiff failed to plausibly allege that the proceeding against him lacked probable cause. Doc. 97 at 26. Although Plaintiff's complaint was full of repeated allegations that the proceedings lacked probable cause, the Court noted that it was not required to accept legal conclusions as true, even on a motion to dismiss— which was all that had been provided. *Id.* Plaintiff was given leave to amend his complaint to allege a factual basis for the absence of probable cause and include sufficient allegations to support his legal conclusions. *Id.* at 26. Additionally, the Court pointed Plaintiff to Fed. R. Civ. P. 11, because he attached the Application for Civil

Indigence as an exhibit and at the same time alleged an absence of probable cause for the perjury proceeding. *Id.* at 7 n.4.

Victor argues that Plaintiff again fails to state a claim. Doc. 112 at 1, 6–12. In particular, he argues that Plaintiff fails to plausibly allege an absence of probable cause for the original proceeding.[12]

Plaintiff's response addresses each element of his malicious prosecution claim, arguing that he has sufficiently pled them, including that there was an absence of probable cause for the original proceeding. Doc. 117 at 6–12. As to that element, he argues that there was no probable cause for the perjury proceedings because: (1) Victor and Kennedy failed to present evidence establishing probable cause during the investigation, charging, or arrest; (2) because they did not interview Plaintiff about his

---

[12] Defendant Victor also argues that if the Criminal Report Affidavit was supported by arguable probable cause, he would be entitled to qualified immunity. Doc. 112 at 7. However, his Motion focuses on Plaintiff's failure to state a claim. *Id.* at 7–12. And the Court notes that, on the last round of motions to dismiss, Victor and Kennedy argued for dismissal of this claim based on failure-to-state-a-claim grounds (Doc. 82 at 12–14) and the Court dismissed it, with leave to amend, based on Plaintiff's failure to plausibly allege several elements (Doc. 97 at 25–27). Therefore, the Court will rule on Victor's Fed. R. Civ. P. 12(b)(6) arguments, rather than the less developed qualified immunity argument.

Similarly, other Courts in this Circuit have opted not to rule on qualified immunity arguments when those arguments were not fully developed and supported with citation to caselaw. *Rivera v. Marin R,* No. 23-CV-62034, 2024 WL 3298989, at *4 (S.D. Fla. May 16, 2024), *report and recommendation adopted*, 2024 WL 2931030 (June 11, 2024); *see Resol. Tr. Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . Rather, the onus is upon the parties to formulate arguments." (internal citation omitted)); *Burt v. City of Pleasant Grove, Ala.,* No. 2:20-CV-01973-ACA, 2021 WL 4171346, at *13 (N.D. Ala. Sept. 14, 2021) (refusing to consider qualified-immunity argument as "perfunctory" and not fully developed).

properties; and (3) as will be described below, because the Application did not affirmatively ask certain questions. *Id.* at 6–9.

To establish his claim, Plaintiff must plausibly allege both that Defendant violated his Fourth Amendment right to be free from unreasonable seizures and that the elements of the common law tort of malicious prosecution were met. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2002). Under Florida law, a cause of action for malicious prosecution consists of the following six elements: that (1) an original criminal or civil judicial proceeding against the plaintiff was commenced or continued; (2) the defendant was the legal cause of the proceeding against the plaintiff; (3) the termination of the proceeding constituted a bona fide termination in favor of the plaintiff; (4) there was an absence of probable cause for the proceeding; (5) there was malice on the part of the defendant, and (6) the plaintiff suffered damage as a result of the proceeding. *Alamo Rent-A-Car v. Mancusi,* 632 So.2d 1352, 1354 (Fla. 1994); *see also DeMartini v Town of Gulf Stream,* 942 F.3d 1277, 1309 (11th Cir. 2019).

Count Two will be dismissed because Plaintiff again fails to plausibly allege that the perjury proceeding against him lacked probable cause. Although Plaintiff alleges repeatedly that the proceedings against him were instituted "absent probable cause," these allegations are nothing more than legal conclusions that the Court is not required to accept as true, even at this stage. *Iqbal*, 556 U.S. at 677–78. Additionally, Plaintiff fails to allege facts to support that Defendant Victor was the legal cause of the proceeding against the Plaintiff.

A defendant had probable cause if it had "a reasonable belief, based on the facts and circumstances known to [it], in the validity of the claim[s]." *DeMartini,* 942 F.3d at 1301 (quoting *Mee Indus. v. Dow Chem. Co.,* 608 F.3d 1202, 1211, 1218 (11th Cir. 2010). Whether there was probable cause is generally determined based on the facts known at the time the underlying action was initiated, not some later point in time. *See United States v. Irurzun,* 631 F.2d 60, 62 (5th Cir. 1980).

Thus, to state a claim, Plaintiff must plausibly allege that Defendant lacked probable cause to submit the CRA which resulted in the State Attorney filing the perjury claim against him. Instead, Plaintiff merely recites the chronology of events (which ended with the charges being dismissed) and adds conclusory claims of conspiracy and an absence of probable cause. Doc. 106 at 16–18. For example, his allegations include that "Victor, acting under color of law, maliciously caused Plaintiff's criminal proceeding without probable cause," and that the proceedings were pursued "absent probable cause." *Id.* ¶¶ 74–85.

However, repeatedly alleging that Defendant lacked probable cause is not a shortcut to plausibly stating a claim in the face of a Rule 12(b)(6) challenge. To survive dismissal, Plaintiff's Complaint must meet minimal pleading standards and provide sufficient factual allegations which, if accepted as true, would "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 570).

As Defendant Victor persuasively argues, based on the Application for Civil Indigence Plaintiff submitted, he fails to plausibly allege an absence of probable cause.

Doc. 112 at 6–12.[13] Defendant first cites the CRA, filed by Plaintiff with an earlier complaint, that contained the following statement of facts to establish probable cause (Doc. 112-1 at 2):

> [Doss] willfully and knowingly filed a sworn document (application for determination of civil indigent status) using false/fraudulent information to attest to the fact he was indigent and did not own real property or have a source of income. The def knowingly filed this sworn document, which he signed under penalty of perjury with the Clerk of Court (Hillsborough County). During the investigation and courtroom testimony the def did own real property and did have a source of income by collecting rent from his tenants. The Def purchased this residence via quitclaim deed on 3/1/2016 from David Acevedo and has owned it since. The Def's willful actions by completing this sworn document with false information and filing it with the Hillsborough County Clerk of Court clearly confirm that he knowingly committed perjury. The Def also filed court motion with the Clerk of Court confirming ownership in legal process (Bankruptcy).

Victor argues that, after comparing the CRA to Plaintiff's Application for Indigence, one can only conclude that there was probable cause for the charge against Plaintiff. Doc. 112 at 8–12.

As Defendant argues, it is undisputed that the Application contained a space for Plaintiff to report his net income as well as the value of certain categories of assets he might own, including "Homestead Real Property" and "Non-homestead real property/real estate." *See* Doc. 72-1 at 204–205. The Application also required Plaintiff to attest that the information [he] provided was true and accurate to the best

---

[13] To be clear, Defendant argues that Plaintiff fails to plausibly allege an absence of probable cause or an absence of arguable probable cause, with the latter being relevant to the standard for qualified immunity. Doc. 112 at 6–8. Because the Court focuses its analysis on the elements of Plaintiff's cause of action (Fourth Amendment Malicious Prosecution), an absence of probable cause is the relevant standard.

of his knowledge. *Id.* at 205. On that application, Plaintiff hand-wrote "0" for the value of the homestead real property and non-homestead real property/real estate that he owned. *Id.* at 204.

At the same time, however, public records (previously filed by Plaintiff as exhibits) reflect his ownership interests in four properties. Doc. 72-1 at 17–33. Not only that, but the operative complaint clearly states that Plaintiff owned four properties. Doc. 106 at 5 ¶ 18.

Plaintiff admits to owning four properties at the time that he filled out the Application, in which he entered "0" as the value of his homestead and non-homestead property and real estate, and presents no additional context or information. His argument for why the perjury charge against him lacked probable cause, to the extent the Court can parse it, is a technical one based on the wording of the Application. Specifically, Plaintiff alleges in the operative Complaint that the Application does not affirmatively ask an individual "Are you Indigent?" and "Do You Own Property?" Doc. 106 ¶¶ 42–43. Plaintiff's core argument is thus there was no probable cause for the perjury charge because the wording of the questions on the Application was not to his liking. [14] Moreover, in his response, he argues that

_____

[14] Specifically, Plaintiff argues in opposition to the Motion to Dismiss that:

> As to the unsubstantiated claim by Defendants Victor and Holder that Plaintiff claimed not to own any real property, if they used the Application to justify the allegation, they fall short of being sensical as that question does not appear on the page. Furthermore, there was no proof that the property in question, at the time, Tuscanny was eligible to be considered an asset. ("And 'asset' is defined as 'property of a debtor, but the term does not include ... [p]roperty to the extent

Defendants never "engage[d] in any discussion with him," including by inquiring about Plaintiff's state of mind, "background, and other relevant aspects." Doc. 117 at 7. He states that "all that was required from Victor or Kennedy was to engage in a meaningful conversation with the Plaintiff, who, it should be noted, made efforts to reach out to Victor." *Id.* at 8.

Plaintiff's various misgivings and complaints about the investigation and criminal case against him are not enough to state a claim for Fourth Amendment Malicious Prosecution. To survive Defendant's Motion to Dismiss, Plaintiff must plausibly allege that Victor lacked "a reasonable belief, based on the facts and circumstances known to [him], in the validity of the claim[s]." *DeMartini,* 942 F.3d at 1301. Taking the factual allegations in the complaint as true, except as may be contradicted by the exhibits, i.e., CRA and Application for Determination of Civil Indigent Status, and drawing all reasonable inferences in favor of Plaintiff, he has failed to plead this element. Instead, Plaintiff includes a myriad of legal conclusions in his complaint and responses, including that the CRA was "fabricated" (Doc. 106 ¶¶ 50, 84–87, 96), and that the investigation lacked probable cause (*Id.* ¶¶ 76, 77, 78, 79).

---

it is encumbered by a valid lien.'") *2- Bal Bay Props., LLC v. Asset Mgmt. Holdings*, LLC, 291 So. 3d 617, 620 (Fla. Dist. Ct. App. 2020). It is inarguable that there were "some type of liens" on the properties. But, beyond that it appears that Defendants, including TAMPA and Sheriff Chronister, hopes this Court provides cover for the parties responsible for depriving Plaintiff of his four properties without providing him due process of law.

In addition, he vaguely argues that the questions on the Application regarding property were not direct enough.

This is simply not enough to state a claim. Plaintiff's allegations that the perjury prosecution lacked probable cause rely on boilerplate language and legal conclusions that the Court is not required to accept as true, especially in the face of contrary exhibits that are central to Plaintiff's claim. Thus, the Court will dismiss Count Two. As Plaintiff has already had a chance to amend his malicious prosecution claim to "allege a factual basis for the absence of probable cause and include sufficient allegations to support the Complaint's legal conclusions," Doc. 97 at 27 (citing *Wittenberg v. Judd,* No. 8:17-CV-467-RAL-AEP, 2017 WL 1399817, at *5 (M.D. Fla. Apr. 19, 2017)), and has failed to remedy these deficiencies, granting leave to amend again would be futile. *Foman,* 371 U.S. at 182. Therefore, Count Two will be dismissed with prejudice.

*Count Three*

Count Three alleges Failure to Intervene pursuant to 42 U.S.C. § 1983 against Victor, Kennedy, and McDarby. Doc. 106 at 18–20. The claims against McDarby have been dismissed based on qualified immunity, so that leaves Victor and Kennedy.

Plaintiff alleges that they "failed to take any action to intervene to prevent the misconduct of Defendant Victor when he recruited them to help conduct a bogus investigation that would allow him to Direct-File a fabricated CRA." Doc. 106 at 18. He argues that this conduct was based on the policies and practices of Defendants City of Tampa and Sheriff Chronister, and that Victor and Kennedy had a duty to intervene

to prevent the others from violating Plaintiff's rights, and had the opportunity to do so. *Id.* at 19 ¶¶ 90–91.

Kennedy and Victor move to dismiss this Count. Doc. 112 at 13–14. They argue that although an officer has a duty to intervene to prevent constitutional violations such as excessive force if he can do so, such a claim has not been extended to any situation outside of the context of excessive force. *Id.* They argue that there is no clearly established law that establishes a duty for any officer to intervene in investigations or probable cause determinations, and that there was arguable probable cause for the prosecution against Plaintiff. *Id.* at 14. Therefore, Victor and Kennedy assert that they are entitled to qualified immunity. *Id.* Plaintiff responds, non-specifically, that the Count should not be dismissed. *See* Doc. 117.

Plaintiff's claim is inconsistent with the law of this circuit, so the Court will address its merits. Defendants are correct that in this Circuit, failure-to-intervene claims have only been recognized in limited circumstances. First, the Eleventh Circuit has long recognized a duty to intervene in excessive-force cases. *See Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir. 1986). No such allegation has been made in this case. Additionally, the Eleventh Circuit has recognized, but "taken a decidedly more circumscribed view" of an officer's duty to intervene in the false arrest context. *Rebalko*

*v. City of Coral Springs,* No. 19-60569-CIV, 2020 WL 6446042 (S.D. Fla. Nov. 3, 2020).[15]

Here, Plaintiff's allegations do not fit either accepted theory of a failure to intervene claim—instead, he alleges that "Kennedy and McDarby failed to take any action to intervene to prevent the misconduct of Defendant Victor when he recruited them to help conduct a bogus investigation that would allow him to Direct-File a fabricated CRA." Doc. 106 at 18 ¶ 87.

First, a failure to intervene claim against Victor cannot logically stand up, because it was his own action—the filing of the CRA—that Plaintiff argues should have been stopped. Plaintiff cites no circumstances in which a defendant was held liable for failure to intervene against *himself* and the Court knows of no such circumstances.

Next, the claim is deficient as a matter of law. There is no "attendant obligation to intervene" except for in the case of excessive force or certain circumscribed types of false arrest cases, neither of which are implicated here. *Rivera v. Marin R,* No. 23-CV-62034, 2024 WL 3298989, at *4 (S.D. Fla. May 16, 2024), *report and recommendation adopted,* 2024 WL 2931030 (June 11, 2024). Therefore, Count Three will be dismissed. Because Plaintiff's allegations cannot support a failure to intervene claim under 42

---

[15] Additionally, relevant here, the Eleventh Circuit has held that non-arresting officers have no duty to investigate the basis for another officer's arrest. *Wilkerson v. Seymour,* 736 F.3d 974, 980 (11th Cir. 2013).

U.S.C. § 1983 as a matter of law, the Court finds that amendment would be futile and will dismiss this claim with prejudice. *Foman,* 371 U.S. at 182.

*Count Four*[16]

In Count Four, Plaintiff brings a claim for Failure to Adequately Train under 42 U.S.C. § 1983 against the City of Tampa, alleging that the City failed to train Tampa Police Department ("TPD") officers on methods for investigating felony perjury, writing police reports, and determining probable cause. Doc. 106 at 20–21 ¶¶ 93–99. He states that proper training "might have" helped Victor and Kennedy not to violate Plaintiff's rights in charging him with perjury, and that he "knows of other incidents where Officer Victor was untruthful when preparing a Police report that alleged someone committed a crime." *Id.* ¶¶ 96–97.

The City argues that Plaintiff fails to state a claim because he: (1) fails to allege a pattern that put the City on notice of constitutional violations; (2) alternatively, fails to demonstrate that the City had such notice based on a theory of obvious need; and (3) fails to allege plausible facts that would allow the Court to infer that the City is liable for the alleged misconduct. Doc. 111 at 4–8. Plaintiff's response (but not the Complaint) discusses unspecified newspapers articles and the exoneration of Robert Duboise, a man exonerated after being sentenced to death,[17] to argue that the City has

---

[16] Plaintiff improperly seeks punitive damages for this Claim against the City, as he did in his previous Complaint. Here, as was the case last time, this request will be denied. *See* Doc. 97 at 40.

[17] *See DuBoise v. City of Tampa,* No. 8:21-CV-2328-SDM-CPT, 2022 WL 4761097, at *1 (M.D. Fla. Oct. 3, 2022).

a policy or practice of violating constitutional rights. *See* Doc. 122. He then switches gears to argue about "unreleased" public records that "likely contain" negative remarks about him and asks that the Court order the City to release these records and grant him time to review them.[18] *Id.* at 4–8. Additionally, Plaintiff states that he "relies on information reasonably believed to have been offered in good faith by the attorneys in *Robert Duboise v. Tampa*, Case 8:21-cv-02328-SDM-CPT. Plaintiff will not attach the exhibits but reserves the right to use this information and add the attorneys to his witness list." *Id.* at 6.

To state a Section 1983 claim against a municipality, a plaintiff must allege that his constitutional injury was caused by the execution of a governmental entity's official custom or policy. *Sheffield v. City of Sarasota,* No. 8:15-cv-319-JSM-TBM, 2015 WL 1346421, at *6 (M.D. Fla. Mar. 24, 2015) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). "But a municipal employer is not vicariously liable under Section 1983 for injuries caused solely by its employees." *Id.* (citing *Monell,* 436 U.S. at 691–94; *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004)). "A plaintiff can only impose Section 1983 liability on a municipality if the plaintiff can show (1) that her constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that right, and (3) that the policy or custom caused the constitutional violation." *Id.* (citing *McDowell,* 392 F.3d at 1289).

---

[18] It is unknown if Plaintiff has requested any such records from the City. On September 28, 2023, the Court lifted the stay of discovery in this case.

The allegations in Plaintiff's response regarding the case of Robert Duboise, together with the allegations in his Complaint regarding other unnamed incidents Plaintiff "knows of," (Doc. 106 at 20–21, *see* Doc. 122) are insufficient to establish a pattern and put the City on notice of constitutional violations. *Depew v. City of St. Mary's Ga,* 787 F.2d 1496, 1499 (11th Cir. 1986). Even if these incidents could establish a pattern, they are not substantially similar to the facts at hand, and thus cannot form the basis for a *Monell* claim. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). None of these cases involve an investigation related to perjury or a court proceeding, nor are any of them otherwise substantially similar to the facts here. Thus, Plaintiff fails to plausibly allege that the City had prior notice of a constitutional issue.

As Plaintiff fails to allege a pattern of incidents prior to 2017, he must allege that the City had notice of unconstitutional conduct on a theory of obvious need. This method of proving "patently obvious" failure to train encompasses a "narrow range of circumstances where the consequences of the failure to equip law enforcement with the specific tools to handle recurring situations, would be highly predictable." *Board of County Commissioners v. Brown*, 520 U.S. 397, 409 (1997).  As the Court stated in its previous Order, training officers on how to properly conduct perjury investigations does not fit within the "limited circumstances" in which this theory applies, and Plaintiff thus fails to state a plausible *Monell* claim for failure to train or supervise against the City. *See e.g., Gold v. City of Miami*, 151 F. 3d 1346, 1352 (11th Cir. 1998) (holding that training officers to use handcuffs is not an obvious training need)). As

granting leave to amend again would be futile, this Count will be dismissed with prejudice. *Foman,* 371 U.S. at 182.

*Count Five*

Pursuant to 42 U.S.C. § 1983, Count Five alleges that Sheriff Chronister failed to adequately train Deputy McDarby "regarding methods for assisting other agencies with investigating felony perjury in an official proceeding and writing accurate police reports." Doc. 106 ¶ 101. Plaintiff alleges that Chronister failed to institute proper policies regarding determination of probable cause in felony perjury cases and on "what to do if [HCSO employees] witness another agency officer violating a citizen's civil rights." *Id.* ¶¶ 103–104. He argues that having such policies might have stopped Deputy McDarby from violating Plaintiff's "constitutional rights when he stood by and said nothing" about Plaintiff being wrongfully charged with perjury. *Id.* ¶ 105.

First, the Court notes that Chronister includes a cursory argument for dismissal of Count Five based on the statute of limitations. Doc. 108 at 22–23. He argues that based on the date of McDarby's alleged actions, and the four-year statute of limitations for civil rights actions in Florida, Plaintiff failed to timely file his initial complaint in this action. Plaintiff does not respond to this argument.

"A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *United States ex rel. Hunt v. Cochise Consultancy, Inc.,* 887 F.3d 1081, 1085 (11th Cir. 2018) (citation omitted). Here, Defendant argues that Plaintiff had a "complete and present cause of action" on June 28, 2017, when he turned himself in, and thus

must have filed this suit by June 28, 2021. Doc. 108 at 22–23. However, he fails to discuss the elements of Plaintiff's claim and establish that, on the "face of the complaint," Count Five must be dismissed. Therefore, the Court declines to dismiss Count Five as time-barred.

Chronister also argues that Count Five does not state a claim because Plaintiff did not sufficiently allege a causal connection between the Sheriff's customs, policies, or procedures and any of McDarby's alleged constitutional violations. Doc. 108 at 6. Moreover, he argues that a plaintiff must plausibly allege that the course of action was consciously chosen, officially sanctioned, or ordered, whereas Plaintiff only puts forward vague and conclusory allegations regarding deficient training or the existence of an official policy. *Id.* Further, Chronister argues that Plaintiff provides no examples of similar constitutional violations by other employees that would have made him aware of deficient training or policies, nor does he cite a widespread pattern of prior abuse. *Id.* at 7. Thus, Chronister argues that he could not have had fair warning or notice that McDarby's alleged conduct would be unconstitutional, and that Plaintiff presents little more than unsupported conclusory allegations, unwarranted factual deductions, and legal conclusions in support of his claim. Plaintiff does not respond to these arguments.

A plaintiff may bring a § 1983 claim against a municipal defendant or governmental agency for deprivation of a federal right pursuant to an official policy, practice, or custom. *Riebsame v. Prince*, 267 F.Supp.2d 1225, 1233 (M.D. Fla. 2003). However, beyond simply alleging that such a policy exists, he must also allege that a

course of action was "consciously chosen" or "officially sanctioned or ordered." *Id.* Thus, inadequate law enforcement training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989). To establish "deliberate indifference," a plaintiff must put forward some evidence that the municipality or governmental agency was aware of the need to train or supervise its employees in a particular area. *Gold,* 151 F.3d at 1350–51.

Establishing such notice of a need to train or supervise is difficult. *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami, FL,* 637 F.3d 1178, 1189 (11th Cir. 2011). A plaintiff may demonstrate notice by showing a "widespread pattern of prior abuse" or even a single earlier constitutional violation. *Gold,* 151 F.3d at 1351. But he must also demonstrate that constitutional violations were likely to recur without training. *Id.* at 1352 n.12. In some cases, the need for training is so obvious that deliberate indifference can be established even without an earlier violation or pattern of abuse. *Brown,* 520 U.S. at 409. Still, it must have been obvious that the failure to train or supervise the employees would result in a constitutional violation. *Id.* In addition to notice, a plaintiff must also establish that the City or governmental agency "made a deliberate choice" not to train its employees. *Gold,* 151 F.3d at 1350.

The Court dismissed this same claim without prejudice after the last round of motions to dismiss. Doc. 97 at 23–25. Dismissal was warranted because Plaintiff's allegations, taken as true, failed to establish a pattern of similar conduct sufficient to

put the Sheriff on notice of the misconduct alleged in this case. *Id.* at 24. Plaintiff had alleged in that previous complaint that the Sheriff had notice based on two incidents in which Plaintiff had previously been arrested. *Id.* However, Plaintiff failed to provide further detail establishing any similarity between the instant case and those arrests and ultimately put forward only "conclusory allegations, unwarranted factual deductions, and legal conclusions" in support of his claim. *Id.* at 24–25.

In the Operative Complaint, Plaintiff removes all his allegations regarding previous incidents or arrests. *Compare* Doc. 106 at 21–22 *with* Doc. 72 at 62–65. Now, Plaintiff simply alleges that Chronister failed to adequately train his Deputies in a number of respects, which led to Plaintiff's rights being violated. Doc. 106 at 21–22.

Thus, the Court agrees with Chronister that Plaintiff failed to plausibly allege that he should have been aware of the need for additional training or policies, failed to cite any examples of allegedly similar constitutional violations, and failed to allege a "widespread pattern of prior abuse" that would have put Chronister on notice of constitutional violations like those alleged in this case. Plaintiff has not plausibly alleged that the Sheriff had fair warning or notice that Deputy McDarby's interview and written report would constitute a pattern of unconstitutional conduct. *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). Further, Plaintiff's unsupported conclusory allegations, unwarranted factual deductions, and legal conclusions are insufficient to state a claim. Plaintiff fails to allege prior sufficiently similar civil rights violations, let alone "obvious, flagrant, rampant" violations that would have put the Sheriff on notice of the need for correction. *Holloman v. Harland,* 370 F.3d 1252, 1294 (11th Cir. 2004).

On these grounds, Count Five will be dismissed for failure to state a claim. Moreover, despite the Court's guidance on the law regarding this claim, Plaintiff's Fifth Amended Complaint is further afield of stating a plausible claim than it was last time. Therefore, allowing further amendment would be futile, and Count Five will be dismissed with prejudice. *Foman,* 371 U.S. at 182.

## IV.   CONCLUSION

For the reasons stated above, each of Plaintiff's federal law claims (Counts One through Five) are due to be dismissed with prejudice. Additionally, Plaintiff's claims in Counts Seven, Eight, and Nine are due to be dismissed with prejudice, as they were previously dismissed with prejudice.[19]

Plaintiff's remaining claims in Count Six (Malicious Prosecution), Count Ten (Negligence), and Count Eleven (Negligent Retention) arise under Florida law. Doc. 106 at 23, 31–33. The resolution of those claims will require analysis of Florida Law. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Accordingly, the Court will decline to exercise its

---

[19] Separately, Plaintiff requests in the Operative Complaint (Doc. 106 at 13 ¶ 63) and repeatedly in his responses to the instant motions for the Court to compel Defendants to turn over discovery from his criminal case and/or documents pursuant to public records requests he has submitted. A review of the docket indicates that Plaintiff has not filed a motion to compel discovery in this case.

supplemental jurisdiction over these remaining claims.[20] *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Counts Six, Ten, and Eleven will be dismissed without prejudice.

The Fifth Amended Complaint is conclusory, short on specific factual allegations, and fails to state a plausible claim. As set forth above, several Defendants are immune from suit, and Plaintiff's federal-law claims against the other Defendants are due to be dismissed with prejudice, as granting leave to amend would be futile. Thus, Defendants' motions will be granted, and the Fifth Amended Complaint will be dismissed, without leave to amend.

Accordingly, it is **ORDERED:**

1. Defendants' Motions to Dismiss (Docs. 108, 109, 110, 111, 112) are **GRANTED**.

2. All claims against Defendant Gregory P. Holder are, again, **DISMISSED with prejudice** based on judicial immunity. The claims against Defendant Gregory P. Holder should not have been repleaded.

---

[20] The period of limitations for any claim asserted under subsection (a) [establishing supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Section 1367(d) "protects plaintiffs who choose to assert supplemental state-law claims in a federal action. If the court declines to exercise supplemental jurisdiction over those claims, the plaintiff may assert them in a new action in state court without fear of being barred by the statute of limitations. This obviously protects plaintiff when state law might not have provided for tolling during the pendency of the federal-court case." 13D Charles Alan Wright et al., *Federal Practice & Procedure* § 3567.4, 458–59 (3d ed. 2008).

3. Counts Eight (Intentional Infliction of Emotional Distress against Defendant Michael R. Victor) and Nine (Respondeat Superior against Defendant City of Tampa) are, again, **DISMISSED with prejudice** for failure to state a claim. These counts should not have been repleaded.

4. All claims against Defendant Deputy John Walter McDarby **are DISMISSED with prejudice** based on qualified immunity**.**

5. Count One (Fourth Amendment Conspiracy) is **DISMISSED with prejudice** for failure to state a claim.

6. Count Two (Fourth Amendment Malicious Prosecution) is **DISMISSED with prejudice** for failure to state a claim.

7. Count Three (Failure to Intervene) as against Defendants Michael R. Victor and Pat Kennedy is **DISMISSED with prejudice** for failure to state a claim.

8. Count Four (Failure to Train) against Defendant City of Tampa is **DISMISSED with prejudice** for failure to state a claim.

9. Count Five (Failure to Train) against Defendant Sheriff Chad Chronister is **DISMISSED with prejudice** for failure to state a claim.

10. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims in Counts Six, Ten, and Eleven. Counts Six, Ten, and Eleven are **DISMISSED without prejudice.**

11. The Clerk is directed to enter **JUDGMENT** on Count One in favor of Defendants Michael R. Victor, Pat Kennedy, John Walter McDarby, Gregory P. Holder and against Plaintiff Surgret Urania Doss.

12. The Clerk is directed to enter **JUDGMENT** on Count Two in favor of Defendant Michael R. Victor and against Plaintiff Surgret Urania Doss.

13. The Clerk is directed to enter **JUDGMENT** on Count Three in favor of Defendants Michael R. Victor, Pat Kennedy, and John Walter McDarby and against Plaintiff Surgret Urania Doss.

14. The Clerk is directed to enter **JUDGMENT** on Count Four in favor of Defendant, City of Tampa and against Plaintiff Surgret Urania Doss.

15. The Clerk is directed to enter **JUDGMENT** on Count Five in favor of Defendant Chad Chronister and against Plaintiff Surgret Urania Doss.

16. The Clerk is directed to enter **JUDGMENT** on Count Seven in favor of Defendant Gregory P. Holder and against Plaintiff Surgret Urania Doss.

17. The Clerk is directed to enter **JUDGMENT** on Count Eight in favor of Defendant Michael R. Victor and against Plaintiff Surgret Urania Doss.

18. The Clerk is directed to enter **JUDGMENT** on Count Nine in favor of Defendant City of Tampa and against Plaintiff Surgret Urania Doss.

19. The Clerk is further directed to terminate any pending motions and deadlines and close this case.

**DONE** and **ORDERED** in Tampa, Florida on September 24, 2024.

Charlene Edwards Honeywell
United States District Judge


Copies furnished to:

Counsel of Record
Unrepresented Parties